1   Michele A. Powers (SBN 174779)
2   *michele.powers@alston.com*
    ALSTON & BIRD LLP
3   333 South Hope Street
4   Los Angeles, California 90071
    Telephone: (213) 576-1030
5   Facsimile: (213) 576-1100

6
    James B. Baldinger (Florida Bar No. 869899)
7   *jbaldinger@carltonfields.com*
8   Stacey K. Sutton (Florida Bar No. 289530)
    *ssutton@carltonfields.com*
9   David B. Esau (Florida Bar No. 650331)
10  *desau@carltonfields.com*
    CARLTON FIELDS, P.A.
11  525 Okeechobee Blvd, Suite 1200
12  West Palm Beach, FL 33401-6350
    Telephone: (561) 659-7070
13  Facsimile: (561) 659-7368

14  Attorneys for Plaintiffs
15  AT&T Mobility LLC and AT&T Intellectual
    Property II, L.P.

16              UNITED STATES DISTRICT COURT

17           CENTRAL DISTRICT OF CALIFORNIA

                                    CV09-06131 CAS (CWx)

18  AT&T MOBILITY LLC and AT&T    )   Case No.
19  INTELLECTUAL PROPERTY II, L.P.,  )
                                    )   **COMPLAINT FOR:**
20        Plaintiffs,               )   Breach of Contract; Trademark
                                    )   Infringement under 15 U.S.C. §
21  v.                              )   1114 and 15 U.S.C. § 1125(a);
                                    )   Federal Trademark Dilution under
22  C-TECH WHOLESALE, INC.; and HASSAN )  15 U.S.C. § 1125(c); Violation of
23  CHAALAN,                        )   Cal. Bus & Prof. Code §§ 14200 *et*
                                    )   *seq.* and 17200 *et seq.*; Contributory
24        Defendants.               )   Trademark Infringement; Tortious
                                    )   Interference with Business
25                                  )   Relationships and Prospective
26                                  )   Advantage; Tortious Interference
                                    )   with Contract; Conspiracy to Induce
27  _____ )

28

CARLTON FIELDS,
P.A.
ATTORNEYS AT LAW
MIAMI

LEGAL02/31470534v1

1
2
3

)  Breach of Contract; Civil
)  Conspiracy; and Unjust Enrichment
)
)  **JURY TRIAL DEMANDED**

4       Plaintiffs,  AT&T  MOBILITY  LLC  and  AT&T  INTELLECTUAL

5   PROPERTY II, L.P. ("AT&T") sue Defendants C-TECH WHOLESALE, INC.

6   AND HASSAN CHAALAN (collectively "Defendants"), and state:

7                    **PARTIES, JURISDICTION, AND VENUE**

8       1.      Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331 and

9   1338 because AT&T's claims for violations of the United States Trademark Act (15

10  U.S.C. § 1051 *et seq.*), arise under federal law.   This Court has supplemental

11  jurisdiction over AT&T's state law claims pursuant to 28 U.S.C. § 1367 because

12  those claims are so related to the federal claims that they form part of the same case

13  or controversy.

14      2.      The Defendants are subject to the personal jurisdiction of this Court

15  pursuant to section 410.10 of the California Code of Civil Procedure because they

16  do business and/or reside in Los Angeles County, California, breached contracts

17  that were to be performed, in whole or in part, in the State of California, and

18  committed tortious acts within the State of California.

19      3.      Venue is proper in the Central District of California pursuant to 28

20  U.S.C. §§ 1391(a) and (b), and 28 U.S.C. §1400, because the Defendants reside in

21  this District, a substantial part of the events or omissions giving rise to the claims

22  occurred in this District, the impact of Defendants' misconduct occurred in this

23  District, and the Defendants are subject to personal jurisdiction in this District.

24      4.      This is an action for damages in excess of $75,000.00, exclusive of

25  interest, costs, and attorneys' fees.

26      5.      AT&T Mobility LLC is a Delaware limited liability company, with its

27  headquarters located in Atlanta, Georgia.

28

1    6.    AT&T Intellectual Property II, L.P. is a Nevada limited partnership,
2  with its headquarters located in Atlanta, Georgia.

3    7.    C-Tech Wholesale, Inc. is a California corporation with its principal
4  place located in Cypress, California.

5    8.    Hassan Chaalan is a citizen of the State of California, residing in
6  Cypress, California.    Upon information and belief, Chaalan has conducted
7  business, and continues to conduct business, in the State of California.

8                                    **BACKGROUND**

9    9.    This is an action for damages and injunctive relief arising out of
10  Defendants' unlawful business enterprises that willfully infringe on AT&T's
11  trademark rights, and other rights related to AT&T's prepaid wireless service and
12  AT&T's specially manufactured devices for use on that prepaid service  (referred
13  to herein as "GoPhones").

14    10.    As set forth in greater detail below, Defendants are engaged in, and
15  knowingly facilitate and encourage others to engage in, unlawful business
16  practices involving the unauthorized and unlawful bulk purchase and resale of
17  GoPhones and related components and accessories, unauthorized and unlawful
18  computer unlocking of GoPhones, alteration of proprietary software computer
19  codes installed in the GoPhones, and purchasing and selling of the GoPhones and
20  accessories for profit (the "Illicit Bulk Resale Scheme").

21    11.    Defendants perpetrate their Illicit Bulk Resale Scheme by acquiring
22  large quantities of GoPhones from retail stores, and by soliciting others
23  ("Runners") to purchase GoPhones in large quantities for the benefit of
24  Defendants.

25    12.    AT&T GoPhones are sold in "clam shells," which are hard plastic
26  containers that are sealed, and that each include a GoPhone handset, accessories
27  (the SIM card, battery, charger, User Guide), and the manufacturer's warranty,
28  among other things.

13.     Defendants remove the AT&T GoPhones' original packaging, accessories, copies of the written warranties, ownership manuals, User Guide, and SIM card, and resell the GoPhone handsets, locked or unlocked, domestically and overseas for substantial profit.  Upon information and belief, Defendants are also profiting from the illicit sale of other GoPhone materials, including the SIM cards.

14.     Defendants acquire the GoPhones with the knowledge and intent that the GoPhones will not be activated for use on the AT&T wireless network as required by the terms of the GoPhone contracts.  Instead, the GoPhones are computer-hacked.  The purpose of this hacking, known as "unlocking," is to disable software installed in the GoPhones by the manufacturers at the request and expense of AT&T, which enables the use of the GoPhones exclusively on AT&T's wireless system.  The purpose of the software is to allow AT&T to offer the GoPhones at a discount to the consumer while protecting AT&T's subsidy investment in the GoPhone.  The illegally unlocked GoPhones are trafficked and resold as new by Defendants, at a premium, under AT&T trademarks.

15.     AT&T permits its legitimate customers to unlock their GoPhones upon request and if certain conditions are satisfied, including prior activity on the GoPhones.  Defendants and others who seek to improperly unlock GoPhones for the purpose of illicitly profiting from their fraudulent resale are prohibited from doing so.

16.     In an effort to prevent these unlawful business practices, AT&T's retailers have, under AT&T's direction, implemented policies limiting the number of GoPhones an individual may purchase.  Defendants, through their Illicit Bulk Resale Scheme, have taken steps to circumvent these policies by, among other things, employing large numbers of Runners to make multiple purchases of GoPhones on behalf of the Defendants.

17.     Defendants' conduct, together with that of currently unknown actors engaging in schemes similar to that of Defendants, is causing AT&T to suffer

1  millions of dollars in losses and has caused immediate and irreparable injury to

2  AT&T and to the AT&T and GoPhone trademarks.

3      18.    All conditions precedent to filing this action have been performed,

4  waived or excused.

5      19.    AT&T has retained the undersigned attorneys to represent it in this

6  action, and has agreed to pay its attorneys a reasonable fee for their services.

7                    **AT&T'S BUSINESS MODEL**

8      20.    AT&T, formerly Cingular Wireless, is one of the largest wireless

9  carriers in the United States, with more than 72 million subscribers who use the

10  nation's largest digital voice and data network.  AT&T is dedicated to providing

11  customers with wireless technology designed to enrich their lives.  In addition,

12  AT&T provides wireless service to 95 percent of the Fortune 100 companies and

13  has more than 80 percent of the Fortune 500 companies and more than 1,200

14  federal, state, and local government agencies as customers.

15      21.    AT&T's GoPhone service enables its customers to prepay for their

16  wireless service by purchasing airtime to be used in connection with specially

17  manufactured wireless phones.  Customers purchase airtime for their AT&T

18  GoPhones online or through airtime cards.  In addition to being available through

19  AT&T online and in its stores, AT&T GoPhones and airtime cards are sold by

20  major national retailers.

21      22.    The AT&T GoPhone business model is based upon AT&T's ability to

22  deliver an affordable product to its consumers.  Therefore, AT&T generally

23  subsidizes its customers' acquisition of the GoPhones by selling them for

24  substantially less than the GoPhones' overall cost to AT&T.  In addition, as an

25  incentive for GoPhone customers, AT&T provides customers purchasing and

26  activating their GoPhones with free usage on AT&T's wireless network by

27  enclosing a PIN code in the clam shell, to be used with the activation of new

28  GoPhone service.  AT&T recoups these subsidies through the sale of prepaid

airtime that is required to receive service on the GoPhones.  AT&T is able to offer its GoPhones at affordable prices only if the phones are used as intended on the AT&T service network.

23.    Manufacturers that produce GoPhones for AT&T install proprietary software, requested and paid for by AT&T, into the AT&T GoPhones.  The AT&T software locking devices prevent AT&T GoPhones from being activated on another wireless network.

## AT&T'S TRADEMARK RIGHTS

24.    AT&T Intellectual Property II, L.P. owns the following United States Trademark Registrations:

Incontestable United States Trademark Registration No. 1,556,587 for GO PHONE, used in connection with "cellular telephones" in International Class 9, issued on September 19, 1989 and based on a first use date of October 8, 1987;

Incontestable United States Trademark Registration No. 2,048,570 for GO PHONE, used in connection with "telecommunications services, namely electronic transmission of messages, voice messages, information and data, paging services; electronic audio and/or audiovisual voice messaging services, namely the recording, storage and subsequent transmission of audio and/or audiovisual voice messages in digital format" in International Class 38, issued on April 1, 1997 and based on a first use date of May 1, 1994;

United States Trademark Registration No. 2,911,779 for GOPHONE, used in connection with "Telecommunications services, namely wireless transmission, uploading and downloading of voice, data, images, audio, video, signals, software, information, games, ring tones, and messages; wireless telephone services; providing wireless calling plans; wireless voice messaging services; call forwarding services; wireless text and numeric digital messaging services; electronic mail services; paging services; facsimile transmission services; Internet service provider and online service provider services, namely, providing multiple user access to a global computer

information network, the Internet, wide area networks, local area networks, and private computer information networks; telecommunication services that allow users to perform electronic business transactions via wireless telephones, personal digital assistants, handheld computers, and mobile data receivers and through a global computer information network, the Internet, wide area networks, local area networks and private computer information networks; wireless roaming services; telecommunications consulting; telematics services; telemetry services" in International Class 38, issued on December 14, 2004 and based on a first use date of April 30, 2003; and

United States Trademark Registration No. 2,911,780 for GOPHONE, used in connection with "computer software for use in the telecommunications industry, namely, computer software for the activation, billing and operation of wireless telecommunications services; telecommunications equipment and electronic communications products, namely, PC card for connecting cellular phones to computers to act as wireless modems cable for connecting cellular phones to computers to act as wireless modems, batteries, battery chargers, wireless modems, antennas, carrying cases for wireless handheld devices, hands-free kits including microphones, earphones, and headset adapters, faceplates, telephones that provide multiple-user access to a global computer network and related accessories, wireless application protocol (WAP) receivers and transmitters, GPRS protocol receivers and transmitters, digital telephones; wireless handheld devices, namely, handheld computers; wireless telephones; cellular telephones; global positioning satellites; handheld radios; radio, analog, digital and electronic pagers; telephone calling cards, including pre-paid telephone calling cards, magnetically encoded; computer software for use by telecommunication subscribers and user manuals and instruction books sold as a unit, namely, computer software for connecting users to a global computer network, accessing information downloaded from a global computer network, data compression, computer telephony, providing access to electronic messaging services, creating, sending and receiving electronic messages and multimedia applications; computer software for use over computer networks, namely, network management software, data delivery software, network utility software, server operating system software; protocol software, namely, software for the implementation

of communications protocols; client server software, namely, computer software for use in interfacing between host computers, servers and web browsers; computer software, namely, operating system programs, device drivers, applications software, application development tool programs, network management software, data delivery software, network utility software; middleware, namely, software that mediates between a computer's operating system and its application software; e-commerce software to allow users to perform electronic business transactions via a global computer network; user interface software for searching, selecting, browsing, viewing, managing, organizing and navigating content delivered via a global computer network; computer software for searching, selecting, browsing, viewing, managing, organizing and navigating a global computer network-based interactive databases; personal digital assistants; transceivers; network interface cards; digital audio and video recorders; cameras, subscriber identity module (SIM) cards" in International Class 9, issued on December 14, 2004 and based on a first use date of April 30, 2003.

25.     Plaintiffs also have the right to use the following marks in commerce:

Incontestable United States Trademark Registration No. 1,298,084 for AT&T, used in connection with "telecommunications services and transmission of data via satellite and telecommunications link" in International Class 38, issued on September 25, 1984 and based on a first use date of August 1, 1983;

Incontestable United States Trademark Registration No. 1,353,769 for AT&T, used in connection with "telephones" in International Class 9, issued on August 13, 1985 and based on a first use date of December 23, 1983;

Incontestable United States Trademark Registration No. 1,970,579 for AT&T, used in connection with "telecommunications services, namely location independent personal telecommunications services comprising mobile, voice, data, and facsimile services" in International Class 38, issued on April 23, 1996 and based on a first use date of August 27, 1995;

1
2
3
4
5
6
7
8
9
10
11

Incontestable United States Trademark Registration No. 2,076,846 for AT&T, used in connection with "telecommunications products, namely, telephones; telephone systems, comprised of a handset and console unit with console features, namely, standard telephone functions, one-touch dialing, call progress monitoring, group listening, clock/calendar and alarm, electronic display, and modules for features, namely, automatic dialing, call restriction, stored message recall, and custom calling, also known as telesystems; cordless telephones; speakerphones, also known as hand free telephone apparatus; mobile telecommunication equipment comprising a control telephone unit, transceiver and antenna; mobile telephones and component parts thereof; telephone installation apparatus, namely, phonemounts, dual outlet adaptors, telephone outlets, modular jacks, wire junctions and plug-in converters" in International Class 9, issued on July 8, 1997 and based on a first use date of July 1983;

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Incontestable United States Trademark Registration No. 2,110,288 for AT&T, used in connection with "telecommunications service, namely, long distance and international voice, text, facsimile, video and data telecommunications services; frame relay telecommunications services; telecommunications network management services, comprised of activation of telecommunication networks, putting network protocols in order and network extensions; virtual network telecommunications services; electronic mail and voice mail and messaging services; packet services; computer aided transmission of messages and images; audio and video teleconferencing services; private line voice, text, facsimile, video and data telecommunications services; transmission of voice, text facsimile, video and data via satellite, terrestrial and undersea telecommunications links; television transmission services; 800 telecommunications services; 900 telecommunications services; switched voice data, video and multimedia services; Asynchronous Transfer Mode (ATM) services; Very Small Aperture Satellite Terminal (VSAT) Service; telecommunications transponder leasing services; and location independent personal communications services comprising mobile, voice, data and facsimile services" in International Class 38, issued on November 4, 1997 and based on a first use date of August 1, 1993;

United States Trademark Registration No. 3,068,918 for AT&T, used in connection with "telecommunications hubs and switches; wireline router; wireless routers; standalone wireless access points; integrated routers which include a modem; digital subscriber line modems otherwise known as DSL modems, cable modems and satellite modems that interface directly with digital subscriber lines otherwise known as DSL, satellite data or cable broadband data services; network interface card adaptors otherwise known as NIC adapters; print servers; RJ 45 data transmission cables; telephone line filters; telecommunications couplers; telecommunications modular plugs; corded and cordless wireline teleconferencing telephones" in International Class 38, issued on March 14, 2006 and based on a first use date of June 1, 2005; and

The stylized AT&T and GOPHONE marks, which are used in connection with telecommunications products and services, as depicted below:





26.    Plaintiff AT&T Intellectual Property II, L.P's aforementioned registered trademarks and aforementioned trademark rights as described in Paragraphs 24 and 25 (hereinafter collectively referred to as "Plaintiffs' Trademark Rights") constitute the lawful, valued, subsisting property of Plaintiff AT&T Intellectual Property II, L.P., and as a result of the high quality of Plaintiffs' products, services, sales, promotion and advertising thereof, the marks have become an intrinsic and essential part of the valuable goodwill and property of Plaintiffs, and are well known and established to customers and the trade as symbols identifying and distinguishing Plaintiffs' products and services, and

signifying distinctive services of exceptional quality.  True and correct copies of the certificates of registration issued by the United States Patent and Trademark Office for the registered GOPHONE, GO PHONE and AT&T trademarks are attached as **Exhibit A**

## TERMS AND CONDITIONS REGARDING
## THE USE OF AT&T PAY AS YOU GO GOPHONES

27.     AT&T GoPhones are sold subject to terms and conditions ("Terms and Conditions") which conspicuously restrict and limit the sale and use of the GoPhones.  A copy of the Terms and Conditions is attached as **Exhibit B**.  These Terms and Conditions are set forth in printed inserts that are included in the packaging of every AT&T GoPhone and are posted on AT&T's website.  Certain Terms and Conditions are also printed on the outside of every GoPhone Package.  The Terms and Conditions and language on the GoPhone Packaging constitute a valid binding contract.

28.     Limitations set out in the Terms and Conditions are intended to restrict the use of AT&T GoPhones to AT&T's service.  However, a legitimate AT&T customer may request that AT&T unlock his or her phone, and will receive assistance with unlocking the GoPhone if certain conditions are satisfied, including prior activity on the GoPhone.

## DEFENDANTS' MISCONDUCT

29.     AT&T has discovered that, although large quantities of its GoPhones are being purchased at retailers throughout the United States, a significant number of these GoPhones are not being activated for use on the AT&T network.

30.     Once an AT&T GoPhone has been unlocked, it is operable on other wireless networks.  AT&T no longer has a revenue source to recoup the invested subsidy on that GoPhone.  Instead, entities and individuals such as Defendants are purchasing and fraudulently reselling AT&T GoPhones in bulk quantities.  The GoPhones are taken out of their original packaging, "unlocked," all accessories,

warranties, and manuals are removed, and the GoPhones are shipped overseas and sold. Defendants undertake these actions for profit, not for the sole purpose of lawfully connecting to a wireless telephone communication network.

31. Upon information and belief, Defendants are knowingly and willfully engaged in a large enterprise that traffics in and resells and unlocks AT&T GoPhones, or AT&T GoPhones that they know, or reasonably should know, will be unlocked and resold under the AT&T trademarks as new for a substantial profit.

32. Upon information and belief, Defendants have purchased and/or sold large quantities of AT&T GoPhones through various co-conspirators. Defendants profit from and traffic in the purchase and fraudulent sale of AT&T GoPhones and related activation materials.

33. Upon information and belief, Defendants and their agents, owners, and/or directors are participating in and profiting from the Illicit Bulk Resale Scheme and have actively solicited conspirators to purchase large quantities of AT&T GoPhones from various retailers and to sell those phones and activation materials to them.

34. Upon information and belief, Defendants and their co-conspirators are directly, or are knowingly facilitating others who are, bulk purchasing AT&T GoPhones at retail stores or online, unlocking the AT&T GoPhones, improperly repackaging the AT&T GoPhone handsets in violation of AT&T's Trademark Rights, removing all warranties and manuals, and trafficking and reselling the unlocked, altered, and repackaged AT&T GoPhones to end consumers or to co-conspirators who sell the GoPhones to end consumers for profit. Defendants are bulk selling and shipping AT&T GoPhones to presently unknown co-conspirators, inside and outside of the United States, for profit with the intent and knowledge that the GoPhones are, or will be, unlocked.

/ / /

/ / /

**SUBSTANTIAL HARM CAUSED BY DEFENDANTS' MISCONDUCT**

35.    Defendants' actions substantially harm AT&T by depriving AT&T of the opportunity to recoup its losses on the sale of its AT&T GoPhones and to earn revenues by providing wireless service to legitimate AT&T GoPhone consumers.

36.    Because the Defendants often remove the GoPhones from their original packaging, they do not carry the manufacturer's warranty.  Accordingly, GoPhones differ materially from the genuine AT&T GoPhones sold by authorized AT&T retailers, all of which carry a manufacturer's warranty.

37.    In addition, removing the GoPhones from the original packaging and manipulating the software are material alterations that irreparably harm AT&T because they deprive AT&T of the means to control the quality of its product.

38.    The conduct of Defendants, their unknown co-conspirators, and others who engage in the unlawful bulk purchasing, unlocking, and sale of unlocked and altered AT&T GoPhones has also resulted in a shortage of available AT&T GoPhones, thereby causing harm to AT&T and its relationship with retailers and consumers because AT&T is not able to supply retailers with sufficient handsets to satisfy the demand from legitimate consumers.  As a result, AT&T is losing potential consumers to other wireless competitors.

39.    Defendants' actions substantially harm AT&T and consumers who ultimately purchase AT&T handsets that have been improperly unlocked. Consumers of the improperly unlocked phones are misled about the source, sponsorship, and origin of their wireless phone.

40.    The process of improperly unlocking and reselling an AT&T GoPhone voids the manufacturer's warranty on the device.  In addition, these unlocked repackaged AT&T GoPhones are sold without the original manufacturer's warranty documentation.  Both consumers and AT&T are harmed when an AT&T GoPhone that has been altered or sold by Defendants or their co-conspirators is submitted for warranty repair.  Because the warranty is voided on

unlocked GoPhones or GoPhones sold without warranty documentation, consumers who purchase AT&T GoPhones from Defendants or their co-conspirators are unable to obtain warranty service in the event they experience problems with their GoPhones. As a result, AT&T's reputation suffers further.

41. In addition, Defendants' improper and unauthorized resale of AT&T GoPhones for use on other networks but still bearing the AT&T, GO PHONE and GOPHONE trademarks may result in calls by confused consumers to AT&T's customer relations department. AT&T incurs substantial costs associated with such calls and its reputation is further damaged because AT&T may be unable to assist those consumers, because Defendants' actions voided the warranties and because Defendants sold the GoPhones for use on another provider's network. These problems do not exist for legitimate AT&T customers.

42. Defendants' conduct has also resulted in the dilution of AT&T's trademark rights, substantial harm to AT&T's business reputation and goodwill, and a greater likelihood of confusion, mistake, and deception about the source of origin of AT&T products the Defendants unlawfully sold and about the relationship between AT&T and Defendants.

## CIVIL PROCEEDINGS IN OTHER FEDERAL COURTS

43. Federal courts have recognized that conduct similar or identical to Defendants' conduct in trafficking GoPhone handsets violates existing civil laws. TracFone Wireless, Inc. ("TracFone"), T-Mobile USA, Inc. ("T-Mobile"), Nokia Corporation ("Nokia"), and Virgin Mobile USA, LLC ("Virgin Mobile") have also filed various independent lawsuits in numerous federal courts across the country against other defendants similarly engaged in the practice of defrauding legitimate consumers by bulk purchasing prepaid wireless telephones and hacking, repackaging, and reselling the altered prepaid wireless phones for profit.

44. Federal courts have recognized that conduct similar or identical to Defendants' conduct in trafficking GoPhone handsets violates existing civil laws.

AT&T, TracFone, T-Mobile, Nokia, and Virgin Mobile have obtained Final Judgments and Permanent Injunctions in these cases, copies of which are attached hereto as **Exhibit D**.

## COUNT ONE

### BREACH OF CONTRACT

### (Against all Defendants)

AT&T reasserts the allegations set forth in paragraphs 1 through 44 above, as though fully set forth herein.

45.    By purchasing AT&T GoPhones, Defendants acknowledged and agreed to the Terms and Conditions included with each GoPhone as printed on the package and as contained in the printed inserts packaged with the GoPhones.

46.    The Terms and Conditions constitute a valid binding contract between AT&T and Defendants.

47.    AT&T has performed or tendered performance in accordance therewith.

48.    Defendants have breached the Terms and Conditions by, *inter alia,* purchasing AT&T GoPhones with the intent that such phones will not be activated and used on AT&T's service, but instead with the intent to unlock, repackage, and/or resell the phones and/or related materials, including the GoPhones User Guides and GoPhone SIM cards, and by otherwise using the GoPhones for a fraudulent purpose.

49.    AT&T has suffered damages as a result of Defendants' breach of the Terms and Conditions.

/ / /

/ / /

/ / /

/ / /

/ / /

## COUNT TWO

## INFRINGEMENT OF FEDERALLY REGISTERED TRADEMARKS

## 15 U.S.C. § 1114 [§32 of the Lanham Act]

## (Against all Defendants)

AT&T reasserts the allegations set forth in paragraphs 1 through 44 above, as though fully set forth herein.

50.    Defendants' and/or their co-conspirators' aforementioned conduct constitutes use of the federally registered GOPHONE, GO PHONE, and AT&T marks (hereinafter referred to as the "GOPHONE Marks") without authorization in connection with their conspiracy to sell and offer for sale unlocked, altered AT&T GoPhones, which downstream customers will discover have been altered from their original state such that they are materially different from the goods sold by AT&T and do not include the warranties, accessories, manuals and related items that constitute part of the AT&T GoPhone package.

51.    Defendants' and/or their co-conspirators' repackaging of Plaintiff AT&T Intellectual Property II, L.P.'s trademarked products without authorization or notice to the consumer is in direct violation of Plaintiff AT&T Intellectual Property II, L.P.'s trademark rights.

52.    Defendants' and/or their co-conspirators' use of the GOPHONE Marks in connection with the sale of unlocked, altered AT&T GoPhones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' altered products, and the relationship between AT&T and Defendants.

53.    Defendants' and/or their co-conspirators' unauthorized use of the GOPHONE Marks is likely to continue in the future, all to the great and irreparable damage to the business, reputation, and goodwill of AT&T.

54.    Defendants' and/or their co-conspirators' use of the GOPHONE Marks in connection with the unlocked, altered AT&T GoPhones, which do not

include warranties, manuals, accessories and related items made part of the AT&T GoPhone package, constitutes a misappropriation of the distinguishing and identifying GOPHONE Marks that were created as a result of significant effort and expense. Defendants' and/or their co-conspirators' use of the GOPHONE Marks evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendants have some connection, association or affiliation with AT&T, and thus constitutes false designation of origin and is likely to mislead the trade and public into believing that Defendants' products and services originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by AT&T.

55.    Defendants and/or their co-conspirators, in committing the foregoing acts in commerce, have damaged, and will continue to damage, AT&T and the reputation and goodwill of AT&T, and each has unjustly enriched and will continue to unjustly enrich him, her or itself at the expense of AT&T. Plaintiff AT&T Intellectual Property II, L.P. is without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendants are enjoined from committing and continuing to commit such acts.

56.    Defendants' and/or their co-conspirators' aforesaid acts constitute willful infringement of Plaintiff AT&T Intellectual Property II, L.P.'s federally registered trademarks in violation of 15 U.S.C. § 1114.

## COUNT THREE

## FEDERAL TRADEMARK DILUTION

### (Against all Defendants)

AT&T reasserts the allegations set forth in paragraphs 1 through 44 above, as though fully set forth herein.

57.    Due to Plaintiff AT&T Intellectual Property II, L.P. and its predecessor-in-interest's prominent and lengthy use and promotion of the distinctive GOPHONE Marks, the GOPHONE Marks are famous and acquired

such fame well prior to the acts of Defendants and/or Defendants' co-conspirators, which are complained of herein.

58.    Defendants' and/or Defendants' co-conspirators' sale of unlocked, altered AT&T GoPhones is likely to dilute the distinctive quality of the Plaintiff AT&T Intellectual Property II, L.P.'s GOPHONE Marks in violation of the Federal Anti-dilution Act of 1995, 15 U.S.C. § 1125(c).

59.    Defendants' and/or Defendants' co-conspirators' adoption and continued use of the GOPHONE Marks was knowing, willful and intended to trade on Plaintiff AT&T Intellectual Property II, L.P.'s reputation and goodwill.  As such, Defendants' and/or Defendants' co-conspirators' unauthorized use of the GOPHONE Marks has enabled them to earn profits to which they are not in equity and good conscience entitled to and have unjustly enriched themselves at Plaintiff AT&T Intellectual Property II, L.P.'s expense and damage.

60.    Defendants' and/or Defendants' co-conspirators' aforesaid conduct has caused and will continue to cause irreparable injury to Plaintiff AT&T Intellectual Property II, L.P. and to the goodwill associated with its GOPHONE Marks.  Plaintiff AT&T Intellectual Property II, L.P. has no adequate remedy at law and will continue to be irreparably injured unless and until this Court permanently enjoins Defendants' misconduct.

## COUNT FOUR

### FEDERAL TRADEMARK INFRINGEMENT

### AND FALSE ADVERTISING

### 15 U.S.C. § 1125 (a)(1)(A) and (B) [§43(a) of the Lanham Act]

### (Against all Defendants)

AT&T reasserts the allegations set forth in paragraphs 1 through 44 above, as though fully set forth herein.

61.    Defendants' and/or their co-conspirators' aforementioned conduct constitutes use of Plaintiffs' Trademark Rights without authorization in connection

with their conspiracy to sell and offer for sale unlocked, altered AT&T GoPhones, which downstream customers will discover have been altered from their original state and do not include the warranties, accessories, manuals, and related items that constitute part of the AT&T GoPhone package.

62.    Defendants' and/or their co-conspirators' repackaging of Plaintiff AT&T's trademarked products without authorization or notice to the consumer is in direct violation of Plaintiff AT&T Intellectual Property II, L.P.'s trademark rights.

63.    Defendants' and/or their co-conspirators' use of Plaintiffs' Trademark Rights in connection with the sale of unlocked, altered AT&T GoPhones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' altered products, and the relationship between AT&T and Defendants.

64.    Defendants' and/or their co-conspirators' unauthorized use of Plaintiffs' Trademark Rights is likely to continue in the future, all to the great and irreparable damage to the business, reputation, and goodwill of AT&T.

65.    Defendants' and/or their co-conspirators' use of Plaintiff AT&T Intellectual Property II, L.P.'s trademark rights in connection with the altered AT&T GoPhones, which do not include warranties, manuals, accessories, and related items made part of the AT&T GoPhone package, constitutes a misappropriation of the distinguishing and identifying trademark rights that were created as a result of significant effort and expense.  Defendants' and/or their co-conspirators' use of Plaintiffs' Trademark Rights evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendants have some connection, association or affiliation with AT&T, and thus constitutes false designation of origin and is likely to mislead the trade and public into believing that Defendants' products and services originate

1    from, are affiliated with, or are sponsored, authorized, approved or sanctioned by

2    AT&T.

3        66.    Defendants and/or Defendants' co-conspirators, in committing the

4    foregoing acts in commerce, have damaged, and will continue to damage, AT&T

5    and the reputation and goodwill of AT&T, and each has unjustly enriched and will

6    continue to unjustly enrich him, her or itself at the expense of AT&T.  AT&T is

7    without an adequate remedy at law to redress such acts, and will be irreparably

8    damaged unless Defendants are enjoined from committing and continuing to

9    commit such acts.

10       67.    Defendants' and/or Defendants' co-conspirators' use of Plaintiffs'

11   trademark rights in commercial advertising or promotion misrepresents the nature,

12   characteristics, and/or qualities of their infringing products.

13       68.    Defendants' and/or Defendants' co-conspirators activities constitute

14   false designation of origin, false descriptions and representations, and false

15   advertising in commerce in violation of § 43(a) of the Lanham Act, 15 U.S.C.

16   §1125(a)(1)(A) and (B).

17       69.    AT&T is entitled to appropriate relief as prayed for hereinafter,

18   including preliminary and permanent injunctive relief.

19       70.    Defendants and/or Defendants' co-conspirators knew or should have

20   known that AT&T has the right to use AT&T Intellectual Property II, L.P.'s

21   trademark rights and that Defendants had no legal right to use Plaintiff AT&T

22   Intellectual Property II, L.P.'s trademark rights on their infringing products.

23   Defendants and/or Defendants' co-conspirators are engaged in and continue to

24   engage in the alleged activities knowingly, willfully and deliberately, so as to

25   justify the assessment of exemplary damages and an award of Plaintiffs' lost

26   profits, Defendants' and/or Defendants' co-conspirators profits, and Plaintiffs'

27   attorneys' fees.

28   / / /

**COUNT FIVE**

**VIOLATION OF CALIFORNIA**

**BUSINESS & PROFESSIONS CODE §17200** *et seq.*

**(Against all Defendants)**

AT&T reasserts the allegations set forth in paragraphs 1 through 44 above, as though fully set forth herein.

71.    Defendants' conduct in purchasing and inducing others to purchase the GoPhones, disabling or unlocking, inducing others to disable or unlock, and/or assisting others to disable or unlock the GoPhones, and reselling and/or assisting others to resell the GoPhones as new for activation on other wireless networks are acts of unfair competition within the meaning of California Business & Professions Code section 17203.   AT&T is informed and believes that the Defendants will continue to perform said acts unless the court orders the Defendants to cease and desist.

72.    Defendants' conduct violates California Business & Professions Code section 17200 *et seq.* because Defendants' conduct is unlawful, violating, among other things, 15 U.S.C. §§ 1114 and 1125 of the Federal Trademark Act, and California Business & Professions Code § 14200, *et seq.*

73.    Defendants' conduct violates California Business & Professions Code section 17200 *et seq.* because Defendants' conduct is unfair.

74.    AT&T has lost money and property as a proximate result of Defendants' unfair competition and unlawful acts and is entitled to restitution in an amount to be proven of the money and property lost.

75.    AT&T has been injured and will continue to be irreparably injured unless the unlawful and unfair conduct of Defendants is enjoined by this Court. AT&T seeks a permanent injunction enjoining the Defendants, and the Defendants' agents, servants, and employees, and all persons and entities acting

1  under or in concert with them, to cease and desist from the acts set forth in this

2  complaint.

3  ## COUNT SIX

4  ## CONTRIBUTORY TRADEMARK INFRINGEMENT

5  ## (Against all Defendants)

6  AT&T reasserts the allegations set forth in paragraphs 1 through 44 above, as

7  though fully set forth herein.

8  76.   By misappropriating and using Plaintiff AT&T Intellectual Property

9  II, L.P.'s trademark rights in connection with the Illicit Bulk Resale Scheme,

10  Defendants and/or Defendants' co-conspirators knowingly aided and enabled

11  distributors and/or sellers of their products to market them to members of the

12  general public in a way that infringes Plaintiff AT&T Intellectual Property II,

13  L.P.'s trademark rights by placing in the hands of distributors and/or sellers an

14  instrument of consumer deception.

15  77.   Defendants' and/or Defendants' co-conspirators' unlawful,

16  unauthorized, and unlicensed sale of the unlocked AT&T GoPhones has

17  contributed to the creation of express and implied misrepresentations that the

18  AT&T GoPhones, as sold by Defendants and/or Defendants' co-conspirators, were

19  created, authorized or approved by AT&T, and include warranties.

20  78.   Upon information and belief, Defendants' and/or Defendants' co-

21  conspirators' conduct leads to post-sale confusion by causing consumers who

22  purchase AT&T GoPhones altered by Defendants and/or Defendants' co-

23  conspirators to believe that they are purchasing handsets approved by AT&T and

24  containing original warranties.

25  79.   Defendants' and/or Defendants' co-conspirators' conduct constitutes

26  contributory infringement in violation of the Trademark Act.  Defendants' and/or

27  Defendants' co-conspirators' conduct is intentional, malicious and willful.

28

CARLTON FIELDS,
P.A.
ATTORNEYS AT LAW
MIAMI

15554721.1                                    - 22 -

## COUNT SEVEN

## TORTIOUS INTERFERENCE WITH BUSINESS

## RELATIONSHIPS AND PROSPECTIVE ADVANTAGE

### (Against all Defendants)

AT&T reasserts the allegations set forth in paragraphs 1 through 44 above, as though fully set forth herein.

80.    A business relationship, and an expectancy of business relationships, exists between AT&T and retailers of AT&T GoPhones and prepaid airtime minutes.

81.    A business relationship, and an expectancy of business relationships, exists between AT&T and the purchasers and prospective purchasers of its AT&T GoPhones and service.

82.    There is a high probability of future economic benefit to AT&T as a result of these current and prospective business relationships.

83.    Defendants and/or Defendants' co-conspirators have knowledge of and have intentionally, willfully, and unjustifiably interfered with, and/or have knowingly facilitated a conspiracy to interfere with, these current and prospective business relationships between AT&T, authorized retailers who sell AT&T products, and legitimate AT&T customers.

84.    Specifically, but without limitation, Defendants and/or Defendants' co-conspirators knew that AT&T had business relationships with retailers of AT&T GoPhones to provide said retailers with sufficient quantities of AT&T GoPhones for said retailer's legitimate consumers' purchase of these GoPhones for use exclusively on AT&T's network.    Defendants' and/or Defendants' co-conspirators' deliberate actions in the Illicit Bulk Resale Scheme have resulted in substantial numbers of GoPhones that are never activated on AT&T service and have further caused shortages of available AT&T GoPhones, thereby substantially harming AT&T and its relationship with retailers because AT&T is unable to

1    supply retailers with sufficient GoPhones to satisfy the demands from legitimate

2    consumers.  Moreover, Defendants and/or Defendants' co-conspirators knew that

3    AT&T had business relationships with legitimate consumers of AT&T GoPhones.

4    Further, Defendants and/or Defendants' co-conspirators knew that AT&T

5    GoPhones are designed for the exclusive use by AT&T customers on AT&T's

6    wireless network.  Defendants and/or Defendants' co-conspirators also knew that

7    AT&T had business relationships with legitimate consumers of AT&T prepaid

8    airtime minutes to ensure the proper function and use of AT&T GoPhones.

9        85.    Defendants and/or Defendants' co-conspirators are intentionally

10   interfering with these relationships through improper means and in violation of the

11   law.

12       86.    Defendants and/or Defendants' co-conspirators engaged in these acts

13   of interference with a conscious desire to prevent the relationships from occurring,

14   or Defendants and/or Defendants' co-conspirators knew that the interference was

15   certain or substantially certain to occur as a result of their conduct.

16       87.    AT&T has been proximately damaged and continues to be damaged

17   as a result of Defendants' and/or Defendants' co-conspirators' interference.

18                                **COUNT EIGHT**

19                  **TORTIOUS INTERFERENCE WITH CONTRACT**

20                             **(Against all Defendants)**

21       AT&T reasserts the allegations set forth in paragraphs 1 through 44 above, as

22   though fully set forth herein.

23       88.    The original purchasers of the GoPhones that were ultimately sold to

24   Defendants and/or Defendants' co-conspirators entered into a valid, binding

25   contract with AT&T pursuant to the terms set forth on the packaging of the

26   handset.  In accordance with those terms, the original purchasers of the GoPhones

27   agreed to activate the phones for use on AT&T wireless service and abide by all

28   restrictions on and protections of AT&T's intellectual property.

CARLTON FIELDS,
P.A.
ATTORNEYS AT LAW
MIAMI

15554721.1                                    - 24 -

89.    Defendants' and/or Defendants' co-conspirators' actions complained of herein were made with full knowledge and awareness of the contractual provisions restricting the use of the GoPhones and AT&T's intellectual property.

90.    Defendants and/or Defendants' co-conspirators have engaged in intentional acts designed to induce a breach or disruption of the contractual relationship without legitimate justification.

91.    AT&T has suffered damages as a result of Defendants' and/or Defendants' co-conspirators' conduct.

92.    Defendants' and/or Defendants' co-conspirators' conduct constitutes tortious interference with contract under the common law of the State of California.    Defendants' and/or Defendants' co-conspirators' conduct was intentional, malicious, and willful, such that an award of punitive damages is appropriate.

<u>COUNT NINE</u>

**DILUTION OF AT&T'S MARKS IN VIOLATION OF**

**CALIFORNIA BUSINESS & PROFESSIONS CODE § 14200,** *et seq.*

**(Against all Defendants)**

AT&T reasserts the allegations set forth in paragraphs 1 through 44 above, as though fully set forth herein.

93.    AT&T is in the business of, and has earned a reputation for, providing its customers with high quality prepaid wireless telephone service.

94.    The AT&T GoPhones that Defendants and/or their co-conspirators altered and resold as new are branded with AT&T's Marks.

95.    Defendants' conduct in selling, or knowingly facilitating the sale of, altered GoPhones has injured, and is likely to injure, AT&T's business reputation and has diluted, and is likely to dilute, the distinctive quality of AT&T's Marks, trade names, labels, products and/or services, in violation of Cal. Bus. & Prof. Code § 14200, *et seq.*, and will continue to do so unless enjoined.

96.    Defendants acted without consent from AT&T and Defendants' conduct has resulted in substantial harm to AT&T as more particularly set forth above.

97.    AT&T requests permanent injunctive relief against Defendants pursuant to Cal. Bus. & Prof. Code § 14200, *et seq.*

## COUNT TEN

### CONSPIRACY TO INDUCE BREACH OF CONTRACT

### (Against all Defendants)

AT&T reasserts the allegations set forth in paragraphs 1 through 44 above, as though fully set forth herein.

98.    AT&T had valid and existing contracts with Runners and other original purchasers of the GoPhones ("Purchasers").

99.    Defendants had knowledge of the contracts between AT&T and Purchasers, and intended to, and in fact did, induce Purchasers to breach their contracts with AT&T.

100.    The breach of the contracts was proximately caused by Defendants' misconduct.

101.    AT&T suffered damages as a result.

## COUNT ELEVEN

### CIVIL CONSPIRACY

### (Against all Defendants)

AT&T reasserts the allegations set forth in paragraphs 1 through 44 above, as though fully set forth herein.

102.    An agreement and conspiracy existed and continues to exist between and among the Defendants and other co-conspirators to unlawfully bulk purchase, traffic, and resell unlawfully unlocked and altered AT&T GoPhones under Plaintiff AT&T Intellectual Property II, L.P's trademark rights, which results in federal common law and statutory trademark infringement, unfair competition under

California Business & Professions Code, contributory trademark infringement, tortious interference with business relationships and prospective advantage, and tortious interference with contract, among other statutory violations and torts.

103.   Defendants and/or Defendants' co-conspirators knowingly agreed to engage, and did engage, in one or more overt acts in pursuit of the conspiracy as set forth with more particularity in this Complaint.

104.   AT&T has been proximately damaged by the conspiracy and Defendants' actions in furtherance thereof.

## COUNT TWELVE

### UNJUST ENRICHMENT

### (Against all Defendants)

AT&T reasserts the allegations set forth in paragraphs 1 through 44 above, as though fully set forth herein.

105.   By bulk purchasing the AT&T GoPhones at less than the manufacturer cost of the GoPhones for use on wireless networks other than AT&T's wireless network, Defendants and/or Defendants' co-conspirators have obtained benefits from AT&T which have led to significant financial gain to Defendants and/or Defendants' co-conspirators through their resale of the bulk purchased AT&T GoPhones.

106.   Defendants and/or Defendants' co-conspirators have acquired the benefits voluntarily and with full knowledge of the benefits.

107.   Defendants and Defendants' co-conspirators have retained the benefits under such circumstances that make it unjust and inequitable for the retention of such benefits without paying AT&T the value of the benefits acquired.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs AT&T MOBILITY LLC and AT&T INTELLECTUAL PROPERTY II, L.P. respectfully request that this Court enter final judgment and permanent injunctive relief in favor of Plaintiffs and against

Defendants as follows:

(a)     Awarding AT&T its compensatory, consequential, statutory, special, treble, and punitive damages including, without limitation, its lost profits, loss of goodwill and damage to its reputation, as provided by law, together with pre- and post-judgment interest;

(b)     Awarding to AT&T restitution of all money and property unlawfully and unfairly taken by Defendants' through their unfair and unlawful conduct;

(c)     Awarding AT&T permanent injunctive relief against Defendants, enjoining Defendants from engaging in the unlawful practices described in this Complaint;

(d)     Requiring Defendants, pursuant to the Lanham Act, to deliver their entire inventory of phones bearing or infringing any of the Marks or a confusingly similar copy thereof, to AT&T;

(e)     Awarding AT&T its reasonable attorneys' fees and costs of this action; and

(f)     Granting such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all triable issues.

Dated:  August 21, 2009

MICHELE A. POWERS
**ALSTON & BIRD LLP**

JAMES B. BALDINGER
STACEY K. SUTTON
DAVID B. ESAU
**CARLTON FIELDS, P.A**.

_/s/Michele A. Powers_
MICHELE A. POWERS

*Attorneys for Plaintiffs*
*AT&T Mobility LLC, and*
*AT&T Intellectual Property II, L.P.*

EXHIBIT A

EXHIBIT

tabbies

A

Int. Cl.: 9

Prior U.S. Cl.: 21

**United States Patent and Trademark Office**

Reg. No. 1,556,587
Registered Sep. 19, 1989

## TRADEMARK
### PRINCIPAL REGISTER

## GO PHONE

MCCAW CELLULAR COMMUNICATIONS, INC. (DELAWARE CORPORATION)
ATTN: LEGAL DEPARTMENT
5400 CARILLON POINT
KIRKLAND, WA 98033

  FOR: CELLULAR TELEPHONES, IN CLASS 9 (U.S. CL. 21).

FIRST USE 10-8-1987; IN COMMERCE 10-8-1987.
  NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "PHONE", APART FROM THE MARK AS SHOWN.

  SER. NO. 697,206, FILED 11-23-1987.

G. T. GLYNN, EXAMINING ATTORNEY

Int. Cls.: 35 and 38

Prior U.S. Cls.: 100, 101, 102 and 104

**United States Patent and Trademark Office**

Reg. No. 2,048,570

Registered Apr. 1, 1997

## SERVICE MARK
### PRINCIPAL REGISTER

## GO PHONE

MCCAW CELLULAR COMMUNICATIONS, INC. (DELAWARE CORPORATION)
5400 CARILLON POINT
KIRKLAND, WA 98033

FOR: BILLING SERVICES IN THE TELE-COMMUNICATIONS FIELD THROUGH THE USE OF INDIVIDUALIZED RATE PLANS, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 5–1–1994; IN COMMERCE 5–1–1994.

FOR: TELECOMMUNICATIONS SERVICES, NAMELY ELECTRONIC TRANSMISSION OF MESSAGES, VOICE MESSAGES, INFORMA-TION AND DATA, PAGING SERVICES, FAC-SIMILE TRANSMISSION SERVICES; ELEC-TRONIC AUDIO AND/OR AUDIOVISUAL VOICE MESSAGING SERVICES, NAMELY THE RECORDING, STORAGE AND SUBSE-QUENT TRANSMISSION OF AUDIO AND/OR AUDIOVISUAL VOICE MESSAGES IN DIGI-TAL FORMAT, IN CLASS 38 (U.S. CLS. 100, 101 AND 104).

FIRST USE 5–1–1994; IN COMMERCE 5–1–1994.

OWNER OF U.S. REG. NOS. 1,556,587 AND 1,557,669.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "PHONE", APART FROM THE MARK AS SHOWN.

SER. NO. 74–553,392, FILED 7–22–1994.

KEVIN ELSE, EXAMINING ATTORNEY

Int. Cl.: 38

Prior U.S. Cls.: 100, 101, and 104

Reg. No. 2,911,779

**United States Patent and Trademark Office**

Registered Dec. 14, 2004

## SERVICE MARK
### PRINCIPAL REGISTER

## GOPHONE

AT&T WIRELESS SERVICES, INC. (DELAWARE CORPORATION)
7277 164TH AVENUE NE
REDMOND, WA 98052

FOR: TELECOMMUNICATIONS SERVICES, NAMELY WIRELESS TRANSMISSION, UPLOADING AND DOWNLOADING OF VOICE, DATA, IMAGES, AUDIO, VIDEO, SIGNALS, SOFTWARE, INFORMATION, GAMES, RING TONES, AND MESSAGES; WIRELESS TELEPHONE SERVICES; PROVIDING WIRELESS CALLING PLANS; WIRELESS VOICE MESSAGING SERVICES; CALL FORWARDING SERVICES; WIRELESS TEXT AND NUMERIC DIGITAL MESSAGING SERVICES; ELECTRONIC MAIL SERVICES; PAGING SERVICES; FACSIMILE TRANSMISSION SERVICES; INTERNET SERVICE PROVIDER AND ONLINE SERVICE PROVIDER SERVICES, NAMELY, PROVIDING MULTIPLE USER ACCESS TO A GLOBAL COMPUTER INFORMATION NETWORK, THE INTERNET, WIDE AREA NETWORKS, LOCAL AREA NETWORKS, AND PRIVATE COMPUTER INFORMATION NET-

WORKS; TELECOMMUNICATION SERVICES THAT ALLOW USERS TO PERFORM ELECTRONIC BUSINESS TRANSACTIONS VIA WIRELESS TELEPHONES, PERSONAL DIGITAL ASSISTANTS, HANDHELD COMPUTERS, AND MOBILE DATA RECEIVERS AND THROUGH A GLOBAL COMPUTER INFORMATION NETWORK, THE INTERNET, WIDE AREA NETWORKS, LOCAL AREA NETWORKS AND PRIVATE COMPUTER INFORMATION NETWORKS; WIRELESS ROAMING SERVICES; TELECOMMUNICATIONS CONSULTING; TELEMATICS SERVICES; TELEMETRY SERVICES, IN CLASS 38 (U.S. CLS. 100, 101 AND 104).

FIRST USE 4-30-2003; IN COMMERCE 4-30-2003.

OWNER OF U.S. REG. NOS. 1,556,587 AND 2,048,570.

SN 78-249,353, FILED 5-13-2003.

GWEN STOKOLS, EXAMINING ATTORNEY

Int. Cl.: 9

Prior U.S. Cls.: 21, 23, 26, 36, and 38

United States Patent and Trademark Office

Reg. No. 2,911,780
Registered Dec. 14, 2004

## TRADEMARK
### PRINCIPAL REGISTER

# GOPHONE

AT&T WIRELESS SERVICES, INC. (DELAWARE CORPORATION)

7277 164TH AVENUE NE

REDMOND, WA 98052

FOR: COMPUTER SOFTWARE FOR USE IN THE TELECOMMUNICATIONS INDUSTRY, NAMELY, COMPUTER SOFTWARE FOR THE ACTIVATION, BILLING AND OPERATION OF WIRELESS TELE-COMMUNICATIONS SERVICES; TELECOMMUNICATIONS EQUIPMENT AND ELECTRONIC COMMUNICATIONS PRODUCTS, NAMELY, PC CARD FOR CONNECTING CELLULAR PHONES TO COMPUTERS TO ACT AS WIRELESS MODEMS CABLE FOR CONNECTING CELLULAR PHONES TO COMPUTERS TO ACT AS WIRELESS MODEMS, BATTERIES, BATTERY CHARGERS, WIRELESS MODEMS, ANTENNAS, CARRYING CASES FOR WIRELESS HANDHELD DEVICES, HANDS-FREE KITS INCLUDING MICROPHONES, EARPHONES, AND HEADSET ADAPTERS, FACEPLATES, TELE-PHONES THAT PROVIDE MULTIPLE-USER ACCESS TO A GLOBAL COMPUTER NETWORK AND RELATED ACCESSORIES, WIRELESS APPLICATION PROTOCOL (WAP) RECEIVERS AND TRANSMITTERS, GPRS PROTOCOL RECEIVERS AND TRANSMITTERS, DIGITAL TELEPHONES; WIRELESS HANDHELD DEVICES, NAMELY, HAND-HELD COMPUTERS; WIRELESS TELEPHONES; CELLULAR TELEPHONES; GLOBAL POSITIONING SATELLITES; HANDHELD RADIOS; RADIO, ANA-LOG, DIGITAL AND ELECTRONIC PAGERS; TEL-EPHONE CALLING CARDS, INCLUDING PRE-PAID TELEPHONE CALLING CARDS, MAGNETI-CALLY ENCODED; COMPUTER SOFTWARE FOR USE BY TELECOMMUNICATION SUBSCRIBERS AND USER MANUALS AND INSTRUCTION BOOKS SOLD AS A UNIT, NAMELY, COMPUTER SOFTWARE FOR CONNECTING USERS TO A GLOBAL COMPUTER NETWORK, ACCESSING IN-FORMATION DOWNLOADED FROM A GLOBAL COMPUTER NETWORK, DATA COMPRESSION, COMPUTER TELEPHONY, PROVIDING ACCESS TO ELECTRONIC MESSAGING SERVICES, CREAT-ING, SENDING AND RECEIVING ELECTRONIC MESSAGES AND MULTIMEDIA APPLICATIONS; COMPUTER SOFTWARE FOR USE OVER COMPU-TER NETWORKS, NAMELY, NETWORK MAN-AGEMENT SOFTWARE, DATA DELIVERY SOFTWARE, NETWORK UTILITY SOFTWARE, SERVER OPERATING SYSTEM SOFTWARE; PRO-TOCOL SOFTWARE, NAMELY, SOFTWARE FOR THE IMPLEMENTATION OF COMMUNICATIONS PROTOCOLS; CLIENT SERVER SOFTWARE, NAMELY, COMPUTER SOFTWARE FOR USE IN INTERFACING BETWEEN HOST COMPUTERS, SERVERS AND WEB BROWSERS; COMPUTER SOFTWARE, NAMELY, OPERATING SYSTEM PRO-GRAMS, DEVICE DRIVERS, APPLICATIONS SOFT-WARE, APPLICATION DEVELOPMENT TOOL PROGRAMS, NETWORK MANAGEMENT SOFT-WARE, DATA DELIVERY SOFTWARE, NETWORK UTILITY SOFTWARE; MIDDLEWARE, NAMELY, SOFTWARE THAT MEDIATES BETWEEN A COM-PUTER'S OPERATING SYSTEM AND ITS APPLICA-TION SOFTWARE; E-COMMERCE SOFTWARE TO ALLOW USERS TO PERFORM ELECTRONIC BUSI-NESS TRANSACTIONS VIA A GLOBAL COMPU-TER NETWORK; USER INTERFACE SOFTWARE FOR SEARCHING, SELECTING, BROWSING, VIEWING, MANAGING, ORGANIZING AND NA-VIGATING CONTENT DELIVERED VIA A GLOBAL COMPUTER NETWORK; COMPUTER SOFTWARE FOR SEARCHING, SELECTING, BROWSING, VIEWING, MANAGING, ORGANIZING AND NA-VIGATING A GLOBAL COMPUTER NETWORK-BASED INTERACTIVE DATABASES; PERSONAL DIGITAL ASSISTANTS; TRANSCEIVERS; NET-WORK INTERFACE CARDS; DIGITAL AUDIO AND VIDEO RECORDERS; CAMERAS, SUBSCRI-BER IDENTITY MODULE (SIM) CARDS, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 4-30-2003; IN COMMERCE 4-30-2003.

OWNER OF U.S. REG. NOS. 1,556,587 AND 2,048,570.

SN 78-249,357, FILED 5-13-2003.

GWEN STOKOLS, EXAMINING ATTORNEY



EXHIBIT B

Service Agreement | AT&T                                                                  Page 1 of 4

 **at&t**

Print this page

## Service Agreement

By checking "I have read and agree to the service agreement", you will be bound to the following with regard to your use of the GoPhone® service:
1) The Terms of Service, including the binding arbitration clause
2) The "Plan Terms" and other information regarding your Rate Plan contained on the Rate Plan page
3) The terms and conditions and other information regarding features provided on the page where you selected your features. Printed materials containing much of this information will also be provided to you. Go to wireless.att.com learn-popups-return-policy-popup.jsp for information about the 30 day return policy.

**GOPHONE TERMS OF SERVICE:** "AT&T" or "we," "us" or "our" refers to AT&T Mobility LLC, acting on behalf of its FCC-licensed affiliates doing business as AT&T. "You" or "your" refers to the person or entity that is the customer of record. These GoPhone Terms of Service is an agreement between AT&T and you ("Agreement.") PLEASE READ THIS AGREEMENT CAREFULLY TO ENSURE THAT YOU UNDERSTAND EACH PROVISION. **PLEASE NOTE: This Agreement requires the use of arbitration to resolve disputes and otherwise limits the remedies available to you in the event of a dispute.**

**CHARGES:** You are responsible for paying all charges for or resulting from services provided under this Agreement. Charges may include, without limitation: airtime, roamer, recurring monthly service, activation, administrative, returned-check and late payment charges; network and other surcharges; optional feature charges; toll, collect call and directory assistance charges; any other charges or calls charged to your phone number; and applicable taxes, surcharges and governmental fees, whether assessed directly upon you or upon AT&T. AT&T may add its own charges to those charged by third parties. Payment for all charges is made in advance and there is no proration of such charges. You agree to pay for incoming and outgoing calls to and from your phone. AIRTIME AND OTHER MEASURED VOICE USAGE ("CHARGEABLE TIME") IS BILLED IN FULL-MINUTE INCREMENTS AND IS ROUNDED UP TO THE NEXT FULL-MINUTE INCREMENT AT THE END OF EACH CALL FOR CHARGINGPURPOSES. AT&T CHARGES A FULL MINUTE OF AIRTIME USAGE FOR EVERY FRACTION OF THE LAST MINUTE OF AIRTIME USED ON EACH WIRELESS CALL. DATATRANSPORTISBILLEDINFULLKILOBYTEINCREMENTS,AND ACTUAL TRANSPORT IS ROUNDED UP TO THE NEXT FULL KILOBYTE INCREMENT AT THE END OF EACH DATA SESSION FOR CHARGING PURPOSES. AT&T CHARGES A FULL KILOBYTE OF DATA TRANSPORT FOR EVERY FRACTION OF THE LAST KILOBYTE OF DATA TRANSPORT USED ON EACH DATA SESSION. NETWORKOVERHEAD,SOFTWAREUPDATEREQUESTS,ANDRE-SENDREQUESTSCAUSEDBY NETWORK ERRORS CAN INCREASE MEASURED KILOBYTES.If you select a rate plan or additional features that include a predetermined allotment of services (for example,a predetermined amount of airtime, megabytes or text messages), unless otherwise specifically provided as part of such rate plan, any unused allotment of services from one monthly period will not carry over to the next monthly period. Additional charges may apply for detailed information about your usage of services. Charges for usage of services on networks maintained by other carriers may be delayed. Chargeable Time begins for outgoing calls when you press SEND (or similar key) and/or incoming calls when a signal connection from the caller is established with our facilities. Chargeable Time ends after you press END (or similar key), but not until your wireless telephone's signal of call disconnect is received by our facilities and the call disconnect signal has been confirmed.All outgoing calls for which we receive answer supervision or which have at least 30 seconds of Chargeable Time, including ring time, shall incur a minimum of one-minute airtime charge. Answer supervision is generally received when a call is answered; however, answer supervision may also be generated by voicemail systems, private branch exchanges, and interexchange switching equipment. Chargeable Time may include time for us to recognize that only one party has disconnected from the call, time to clear the channels in use, and ring time; however, there will be no charged time for unanswered incoming calls. Chargeable Time may also occur from other uses of our facilities, including by way of example, voicemail deposits and retrievals, and call transfers. **If your wireless phone or other device ("Equipment") is lost or stolen, you will be responsible for all charges incurred on your phone number until you report the theft or loss and provide a police report number to us.** After you report the theft or loss to us, you remain responsible for complying with your other obligations under this Agreement including, but not limited to, payment of any monthly service fees.

**DISPUTES:** WITHIN 100 DAYS OF THE DATE OF ANY EVENT GIVING RISE TO A DISPUTE, YOU MUST NOTIFY US IN WRITING AT AT&T, BILL DISPUTE, SUITE 1400, 5565 GLENRIDGE CONNECTOR, P.O. BOX 16, ATLANTA, GA 30342 ("AT&T"S ADDRESS") OF SUCH DISPUTE, INCLUDING A DISPUTE OVER ANY CHARGES AND ANY SERVICE WE PROVIDED, OR YOU WILL HAVE WAIVED YOUR RIGHT TO DISPUTE THE CHARGE OR SUCH SERVICES AND TO BRING, OR PARTICIPATE IN, ANY LEGAL ACTION RAISING ANY SUCH DISPUTE.

**DISHONORED CHECKS AND OTHER INSTRUMENTS:** We will charge you the lesser of $30.00 or the highest amount allowed by law, whichever is less, for any check or other instrument tendered by you and returned unpaid by a financial institution (including any credit card chargebacks) for any reason. You agree to reimburse us the fees of any collection agency, which may be based on a percentage at a maximum of 33% of the debt, and all costs and expenses, including reasonable attorneys' fees, we incur in such collection efforts.

Exh. B - pg. 34



**CHANGES TO TERMS AND RATES**: We may change any terms, conditions, rates, fees, expenses, or charges regarding your service at any time. We will provide you with notice of such changes (other than changes to governmental fees, proportional charges for governmental mandates, roamer rates or administrative charges) by such means as AT&T determines to be most practicable, including playing a recorded message when you attempt to place a call or attempt to add funds to your account, sending written notice to the address provided at the time of activation, sending an SMS message to your phone, or by such other means as AT&T may determine. You understand and agree that State and Federal Universal Service Fees and other governmentally imposed fees, whether or not assessed directly upon you, may be increased based upon the government"s or our calculations. IF WE INCREASE THE PRICE OF ANY OF THE SERVICES TO WHICH YOU SUBSCRIBE, AS SUCH PRICES ARE SET FORTH IN YOUR RATE PLAN BROCHURE, OR IF WE MATERIALLY DECREASE THE GEOGRAPHICAL AREA IN WHICH YOUR AIRTIME RATE APPLIES (OTHER THAN A TEMPORARY DECREASE FOR REPAIRS OR MAINTENANCE), WE WILL DISCLOSE THE CHANGE IN ADVANCE. If you lose your eligibility for a particular rate plan, we may change your rate plan to one for which you qualify.

**EQUIPMENT**: Your Equipment must be compatible with, and not interfere with, our service, and must comply with all applicable laws, rules and regulations. We may periodically program your Equipment remotely with system settings for roaming service and other features that cannot be changed manually. Roaming service is the use of your Equipment outside our service area. Equipment purchased from AT&T or its authorized dealers is sold exclusively for use with AT&T GoPhone service. It may not function on other wireless networks. By purchasing this Equipment, you agree to activate and use it on GoPhone service.

**TERMINATION**: Either party may terminate this Agreement at any time on advance notice to the other party. AT&T may terminate this Agreement at any time without notice if we cease to provide service in your area. We may interrupt or terminate your service without notice for any conduct that we believe violates this Agreement or any terms and conditions of your rate plan, or if you behave in an abusive, derogatory or similarly unreasonable manner with any of our representatives, or if you fail to make all required payments when due or if we have reasonable cause to believe that your equipment is being used for an unlawful purpose or in a way that may adversely affect our service. If you have more than one account with us, you must keep all accounts in good standing to maintain service. If one account is past due or over its limit, all accounts in your name are subject to interruption or termination and all other available collection remedies.

**SERVICE LIMITATIONS; LIMITATION OF LIABILITY**: Service may be interrupted, delayed or otherwise limited for a variety of reasons, including environmental conditions, unavailability of radio frequency channels, system capacity, priority access by National Security and Emergency Preparedness personnel in the event of a disaster or emergency, coordination with other systems, equipment modifications and repairs, and problems with the facilities of interconnecting carriers. We may block access to certain categories of numbers (e.g. 976, 900 and international destinations) or certain websites in our sole discretion. We may, but do not have the obligation to, refuse to transmit any information through the service and may screen and delete information prior to delivery of that information to you. **There are gaps in service** within the service areas shown on coverage maps, which, by their nature, are only approximations of actual coverage. WE DO NOT GUARANTEE YOU UNINTERRUPTED SERVICE OR COVERAGE. WE CANNOT ASSURE YOU THAT IF YOU PLACE A 911 CALL YOU WILL BE FOUND. Airtime and other service charges apply to all calls, including involuntarily terminated calls. AT&T MAKES NO WARRANTY, EXPRESS OR IMPLIED, OFMERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, SUITABILITY, OR PERFORMANCE REGARDING ANY SERVICES OR GOODS, AND IN NO EVENT SHALL AT&T BE LIABLE, WHETHER OR NOT DUE TO ITS OWN NEGLIGENCE, for any: (a) act or omission of a third party; (b) mistakes, omissions, interruptions, errors, failures to transmit, delays or defects in the service provided by or through us; (c) damage or injury caused by the use of service or Equipment, including use in a vehicle; (d) claim against you by third parties; (e) damage or injury caused by a suspension or termination of service by AT&T; or (f) damage or injury caused by failure or delay in connecting a call to 911 or any other emergency service. Notwithstanding the foregoing, if your service is interrupted for 24 or more continuous hours by a cause within our control, we will issue you, upon request, either a credit equal to a pro-rata adjustment of any recurring charge (if applicable) for the time period your service was unavailable, not to exceed the charges collected for the period of interruption, or an extension of the expiration period. Our liability to you for service failures is limited solely to the credit set forth above. Unless applicable law precludes parties from contracting to so limit liability, and provided such law does not discriminate against arbitration clauses, AT&T shall not be liable for any indirect, special, punitive, incidental or consequential losses or damages you or any third party may suffer by use of, or inability to use, service or Equipment provided by or through AT&T, including loss of business or goodwill, revenue or profits, or claims of personal injuries. To the full extent allowed by law, you hereby release, indemnify, and hold AT&T and its officers, directors, employees and agents harmless from and against anyand all claims of any person or entity for damages of any nature arising in any way from or relating to, directly or indirectly, service provided by AT&T or any person"s use thereof (including, but not limited to, vehicular damage and personal injury), INCLUDING CLAIMS ARISING IN WHOLE OR IN PART FROM THE ALLEGED NEGLIGENCE OF AT&T, or any violation by you of this Agreement. This obligation shall survive termination of your service with AT&T. AT&T is not liable to you for changes in operation, equipment or technology that cause your Equipment or software to be rendered obsolete or require modification. SOME STATES, INCLUDING THE STATE OF KANSAS, DO NOT ALLOW DISCLAIMERS OF IMPLIED WARRANTIES OR LIMITS ON REMEDIES FOR BREACH. THEREFORE, THE ABOVE LIMITATIONS OR EXCLUSIONS MAY NOT APPLY TO YOU. THIS AGREEMENT GIVES YOU SPECIFIC LEGAL RIGHTS, AND YOU MAY HAVE OTHER RIGHTS WHICH VARY FROM STATE TO STATE.

**ACCOUNT ACCESS**: You authorize us to provide information about and to make changes to your account, including adding new service, upon the direction of any person able to provide information we deem sufficient to identify you. An account password will be assigned to you. In order to protect the security of your account, you should change this password as soon as possible after your account is activated. If you do not change your password, your account may not be secure.

**VOICEMAIL SERVICE**: We may deactivate your voicemail service if you do not initialize it within a reasonable period after activation. We will reactivate the service upon your request.

Exh. B - pg. 35

**DISPUTE RESOLUTION BY BINDING ARBITRATION: Please read this carefully. It affects your rights. Summary:** Most customer concerns can be resolved quickly and to the customer's satisfaction by calling our customer service department at 800-331-0500. **In the unlikely event that AT&T's customer service department is unable to resolve a complaint you may have to your satisfaction (or if AT&T has not been able to resolve a dispute it has with you after attempting to do so informally), we each agree to resolve those disputes through binding arbitration or small claims court instead of in courts of general jurisdiction.** Arbitration is more informal than a lawsuit in court. Arbitration uses a neutral arbitrator instead of a judge or jury, allows for more limited discovery than in court, and is subject to very limited review by courts. Arbitrators can award the same damages and relief that a court can award. **Any arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted.** AT&T will pay all costs of arbitration, no matter who wins, so long as your claim is not frivolous. Moreover, in arbitration you are entitled to recover attorneys' fees from AT&T to at least the same extent as you would be in court. In addition, under certain circumstances (as explained below), AT&T will pay you and your attorney a special premium if the arbitrator awards you an amount that is greater than what AT&T has offered you to settle the dispute. **Arbitration Agreement: (1)** AT&T and you agree to arbitrate **all disputes and claims** between us. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to: claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory; claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising); claims that are currently the subject of purported class action litigation in which you are not a member of a certified class; and claims that may arise after the termination of this Agreement. References to "AT&T," "you," and "us" include our respective subsidiaries, affiliates, agents, employees, predecessors in interest, successors and assigns, as well as all authorized or unauthorized users or beneficiaries of services or equipment under this or prior Agreements between us. Notwithstanding the foregoing, either party may bring an individual action in small claims court. **You agree that, by entering into this Agreement, you and AT&T are each waiving the right to a trial by jury or to participate in a class action.** This Agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision. This arbitration provision shall survive termination of this Agreement. **(2)** A party who intends to seek arbitration must first send to the other, by certified mail, a written Notice of Dispute ("Notice"). The Notice to AT&T should be addressed to: General Counsel, AT&T Mobility LLC, 5565 Glenridge Connector, 20th Floor, Atlanta, GA 30342 ("Notice Address"). The Notice must (a) describe the nature and basis of the claim or dispute; and (b) set forth the specific relief sought ("Demand"). If AT&T and you do not reach an agreement to resolve the claim within 30 days after the Notice is received, you or AT&T may commence an arbitration proceeding. During the arbitration, the amount of any settlement offer made by AT&T or you shall not be disclosed to the arbitrator until after the arbitrator determines the amount, if any, to which you or AT&T is entitled. You may download or copy a form Notice and a form to initiate arbitration at: att.com/wirelessarbitrationforms. **(3)** After AT&T receives notice at the Notice Address that you have commenced arbitration, it will promptly reimburse you for your payment of the filing fee. (The filing fee currently is $125 for claims under $10,000, but is subject to change by the arbitration provider. If you are unable to pay this fee, AT&T will pay it directly upon receiving a written request at the Notice Address.) The arbitration will be governed by the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes (collectively, "AAA Rules") of the American Arbitration Association ("AAA"), as modified by this Agreement, and will be administered by the AAA. The AAA Rules are available online at www.adr.org, by calling the AAA at 1-800-778-7879, or by writing to the Notice Address. (You may obtain information, that is designed for non-lawyers, about the arbitration process at att.com/arbitration-information. All issues are for the arbitrator to decide, including the scope of this arbitration provision, but the arbitrator is bound by the terms of this Agreement. Unless AT&T and you agree otherwise, any arbitration hearings will take place in the county (or parish) of your billing address. If your claim is for $10,000 or less, we agree that you may choose whether the arbitration will be conducted solely on the basis of documents submitted to the arbitrator, through a telephonic hearing, or by an in-person hearing as established by the AAA Rules. If your claim exceeds $10,000, the right to a hearing will be determined by the AAA Rules. Except as otherwise provided for herein, AT&T will pay all AAA filing, administration and arbitrator fees for any arbitration initiated in accordance with the notice requirements above. If, however, the arbitrator finds that either the substance of your claim or the relief sought in the Demand is frivolous or brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)), then the payment of all such fees will be governed by the AAA Rules. In such case, you agree to reimburse AT&T for all monies previously disbursed by it that are otherwise your obligation to pay under the AAA Rules. **(4)** If, after finding in your favor in any respect on the merits of your claim, the arbitrator issues you an award that is: (a) equal to or less than the greater of $5,000 OR the maximum claim that may be brought in small claims court in the county of your billing address; AND (b) greater than the value of AT&T's last written settlement offer made before an arbitrator was selected, THEN AT&T will: (a) pay you the greater of: $5,000 OR the maximum claim that may be brought in small claims court in the county of your billing address ("the premium") instead of the arbitrator's award; AND (b) pay your attorney, if any, twice the amount of attorneys' fees your attorney reasonably accrues for investigating, preparing, and pursuing your claim in arbitration ("the attorney premium"). If AT&T did not make a written offer to settle the dispute before an arbitrator was selected, you and your attorney will be entitled to receive the premium and the attorney premium, respectively, if the arbitrator awards you any relief on the merits. The arbitrator may make rulings and resolve disputes as to the payment and reimbursement of fees, expenses, and the premium and the attorney premium at any time during the proceeding and upon request from either party made within 14 days of the arbitrator's ruling on the merits. **(5)** The right to attorneys' fees and expenses discussed in paragraph (4) supplements any right to attorneys' fees and expenses you may have under applicable law. Thus, if you would be entitled to a larger amount under the applicable law, this provision does not preclude the arbitrator from awarding you that amount. However, you may not recover duplicative awards of attorneys' fees or costs. Although under some laws AT&T may have a right to an award of attorneys' fees and expenses if it prevails in an arbitration, AT&T agrees that it will not seek such an award. **(6)** The arbitrator may award injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. **YOU AND AT&T AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.** Further, unless both you and AT&T agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. If this specific proviso is found to be unenforceable, then the entirety of this arbitration provision shall be null and void. **(7)** Notwithstanding any provision in this Agreement to the contrary, we agree that if AT&T makes any change to this arbitration provision (other than a change to the Notice Address) during your Service Commitment, you may reject any such change and require AT&T to adhere to the language in this provision if a dispute between us arises.

**MISCELLANEOUS:** This Agreement, any applicable rate summary sheet, the terms included in the rate brochure(s) describing your

plan and services, terms of service for products and services not otherwise described in this Agreement or the brochure that are posted on a AT&T website and any documents expressly referred to herein or therein, make up the complete agreement between you and AT&T, and supersede any and all prior agreements and understandings relating to the subject matter of this Agreement. If any provision of this Agreement is found to be unenforceable by a court or agency of competent jurisdiction, the remaining provisions will remain in full force and effect. The foregoing does not apply to the prohibition against class or representative actions that is part of the arbitration clause; if that prohibition is found to be unenforceable, the arbitration clause (but only the arbitration clause) shall be null and void. AT&T may assign this Agreement, but you may not assign this Agreement without our prior written consent. The law of the state of your address of record on your account shall govern this Agreement except to the extent that such law is preempted by or inconsistent with applicable federal law.  Your caller identification information (such as your name and phone number) may be displayed on the equipment or bill of the person receiving your call; technical limitations may, in some circumstances, prevent you from blocking the transmission of caller identification information.  You consent to the use by us or our authorized agents of regular mail, predictive or autodialing equipment, email, text messaging, facsimile or other reasonable means to contact you to advise you about our services or other matters we believe may be of interest to you.  In any event, we reserve the right to contact you by any means regarding customer service related notifications, or other such information.  The original version of this Agreement is in the English language. Any discrepancy or conflicts between the English version and any other language version will be resolved with reference to and by interpreting the English version. **Connecticut Customers:** Questions About Your Service:  If you have any questions or concerns about your service, please call Customer Care at: 1-800-331-0500 or dial 611 from your wireless phone.  If you are a Connecticut customer and we cannot resolve your issue, you have the option of contacting the Department of Public Utility Control (DPUC): Online: www.state.ct.us/dpuc; Phone:  800-382-4586; Mail: Connecticut DPUC, 10 Franklin Square, New Britain, CT 06051.

© 2007 AT&T Knowledge Ventures. All rights reserved. AT&T, AT&T logo, GoPhone and GoPhone logo are trademarks of AT&T Knowledge Ventures and/or AT&T affiliated companies. Subsidiaries and affiliates of AT&T Inc. provide products and services under the AT&T brand.

Exh. B - pg. 37

EXHIBIT C



ORIGINAL

EXHIBIT
C

U.S. DISTRICT
NORTHERN DISTRICT OF TEXAS
FILED

MAY - 5 2009

CLERK, U.S. DISTRICT COURT
By _____
Deputy

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

AT&T MOBILITY LLC and AT&T          §
MOBILITY II LLC,                    §
                                    §
      Plaintiffs,                   §
                                    §          CASE NO.: 3:08-cv-00330
v.                                  §
                                    §          **JURY TRIAL DEMANDED**
ARENA TRADING, INC., a Texas        §
Corporation; KHALID TAYOB;          §
RUBINA TARIQ, also known as RUBY    §
TARIQ; RUBYLINK; HAIDER KHOJA;      §
MURAD KHOJA; MEHBOOB KHOJA;         §
MUSKAAN INC., a Texas corporation; WALK §
& TALK WIRELESS; GIDEON GIDANIAN;   §
WESTSIDE COMMUNICATIONS;            §
AMERICAS WIRELESS; JOHN DOES 1-50;  §
XYZ COMPANIES 1-50,                 §
                                    §
      Defendants.

_____

**FINAL JUDGMENT AND PERMANENT INJUNCTION**
**AGAINST DEFENDANTS**

Plaintiffs AT&T Mobility LLC and AT&T Mobility II LLC (collectively "AT&T"),

brought the above-captioned lawsuit against, inter alia, Defendants Gideon Gidanian and

Westside Communications (collectively referred to as "Defendants"), alleging that Defendants

are engaged in an unlawful enterprise involving the acquisition, sale, and alteration of large

quantities of AT&T wireless devices sold for the purpose of use with AT&T's prepaid service

(referred to herein as "GoPhones" or "Phones") purchased from retail outlets, the solicitation and

payment of others to bulk purchase Phones for Defendants' benefit, computer hacking and

erasing or otherwise disabling software installed in the Phones, or selling the Phones to others

who disable the software, and ultimately selling or facilitating the sale of the altered Phones as

new under the AT&T trademarks for unauthorized use outside of the AT&T wireless system for profit and the SIM and/or PIN activation kits that come with the GoPhones to fraudulently obtain free airtime (the "Illicit Bulk Retail Scheme"). Defendants denied all allegations.

AT&T GoPhones are sold subject to terms and conditions ("Terms and Conditions") which conspicuously restrict and limit the sale and use of the GoPhones. These Terms and Conditions are set forth in printed inserts that are included in the packaging with every AT&T GoPhone and are posted on AT&T's website. The Terms and Conditions and language on the GoPhone packaging constitute a valid binding contract.

AT&T asserts that Defendants have violated the Terms and Conditions by, *inter alia*, purchasing AT&T GoPhones with the intent that such phones will not be activated and used on AT&T's service, but instead with the intent to improperly unlock, repackage, and resell the phones, and by otherwise using the GoPhones in violation of the Terms and Conditions.

As a result of Defendants' involvement in the Illicit Bulk Retail Scheme, AT&T asserted claims against Defendants for breach of contract; federal trademark infringement under 15 U.S.C. § 1114 and false advertising under 15 U.S.C. § 1125(a)(1)(A) and (B); unfair competition under Texas common law; contributory trademark infringement; tortious interference with business relationships and prospective advantages; tortious interference with contract; harm to AT&T's business reputation; civil conspiracy; and unjust enrichment.

Based on the respective positions advocated by the parties and having reviewed the Complaint and file and being otherwise duly and fully advised in the premises, it is hereby

**ORDERED, ADJUDGED** and **DECREED** that:

1.    This Court has jurisdiction over all the parties and all of the claims set forth in AT&T's complaint.

2

2.     The Court finds that AT&T has the right to use and enforce said rights in the stylized AT&T and GOPHONE marks, which are used in connection with telecommunications products and services, as depicted below:





AT&T uses the AT&T Marks on and in connection with its telecommunications products and services. The AT&T and GOPHONE marks are valid, distinctive, protectable, famous, have acquired secondary meaning, and are associated exclusively with AT&T.

3.     The Court finds that Defendants' involvement in the Illicit Bulk Retail Scheme, if proven, constitutes breach of contract; federal trademark infringement under 15 U.S.C. § 1114 and false advertising under 15 U.S.C. § 1125(a)(1)(A) and (B); unfair competition under Texas common law; contributory trademark infringement; tortious interference with business relationships and prospective advantages; tortious interference with contract; harm to AT&T's business reputation; civil conspiracy; and unjust enrichment.

4.     The Court finds that the Terms and Conditions and the language on the GoPhone packaging constitute a valid binding contract enforceable against Defendants. The Court finds that (a) facilitating others to use GoPhones in conjunction with service providers other than AT&T, and (b) tampering with or altering, or facilitating or assisting others to tamper with or alter, GoPhones or the GoPhones' software constitute independent breaches of contract for which AT&T is entitled to relief.

3

5.    The Court further finds that Defendants' participation in the Illicit Bulk Retail Scheme, including, *inter alia* the purchase and sale of GoPhones and activation kits, if proven, would cause substantial and irreparable harm to AT&T for which there is no adequate remedy at law, and will continue to cause substantial and irreparable harm to AT&T unless enjoined.

6.    On review and consideration of all relevant factors, AT&T is entitled to damages and injunctive relief on the claims as set forth in the Complaint.

7.    Final judgment is hereby entered against Defendant Westside Communications and in favor of the Plaintiffs AT&T Mobility LLC and AT&T Mobility II LLC, on all claims set forth in AT&T's complaint in the principal amount of THREE MILLION DOLLARS AND ZERO CENTS ($3,000,000.00 (U.S.)), which shall bear interest at the legal rate, for which let execution issue forthwith.

8.    Gideon Gidanian and Westside Communications, and each and all of his and its past and present respective officers, directors, successors, assigns, parents, subsidiaries, affiliates, related companies, predecessors-in-interest, agents, employees, heirs, personal representatives, beneficiaries, relatives, and all other persons or entities acting or purporting to act for him/it or on his/its behalf, including but not limited to any corporation, partnership, proprietorship or entity of any type that is in any way affiliated or associated with any Defendant or any Defendant's representatives, agents, assigns, parent entities, employees, independent contractors, associates, servants, affiliated entities, and any and all persons and entities in active concert and participation with any Defendant who receive notice of this Order, shall be and hereby are PERMANENTLY ENJOINED from:

      a.  purchasing, selling, unlocking, reflashing, altering, advertising, soliciting and/or shipping, directly or indirectly, any handsets of a make and model sold by AT&T

4

as GoPhones, as reflected on the AT&T website (www.att.com) of which Defendants must keep themselves informed and of which they are charged with knowledge, all iPhones, and all "Activation Materials," which consist of SIM Cards, GoPhone airtime cards, PIN numbers, and/or other mechanism, process or materials used to activate service or acquire airtime in connection with a new activation;

b.  accessing, altering, erasing, tampering with, deleting or otherwise disabling the software contained in any GoPhone;

c.  facilitating or in any way assisting other persons or entities who Defendants know or should know are engaged in unlocking GoPhones and/or hacking, altering, erasing, tampering with, deleting or otherwise disabling the software installed in GoPhones;

d.  facilitating or in any way assisting other persons or entities who Defendants know or should know are engaged in any of the acts prohibited under this Permanent Injunction, including, without limitation, the buying and/or selling of unlocked GoPhones; and

e.  knowingly using the AT&T or GoPhone Marks or any mark owned or used by AT&T, or that is likely to cause confusion with AT&T's marks, without AT&T's prior written authorization.

9.  The address of Defendant Gideon Gidanian is 9636 Venice Boulevard, Culver City, California 90232.

10. The address of Defendant Westside Communications, an unregistered company, is 9636 Venice Boulevard, Culver City, California 90232.

Exh. C - pg. 42

11.     The address of Plaintiffs AT&T Mobility LLC and AT&T Mobility II LLC is 5565 Glenridge Connector, Suite 1700, Atlanta, GA 30342.

12.     The Court retains jurisdiction over this matter and the parties to this action in order to enforce any violation of the terms of this Permanent Injunction by a finding of contempt and an order for payment of compensatory damages to AT&T in an amount of $5,000 for each AT&T GoPhone or item of Activation Material that Defendants are found to have purchased sold or unlocked in violation of this Injunction. The Court finds that these amounts are compensatory and will serve to compensate AT&T for its losses in the event Defendants violate the terms of this Order. The Court also retains jurisdiction over this matter and the parties to this action to enforce the terms of the parties' settlement agreement and to award damages in Plaintiffs' favor against Defendant Gideon Gidanian.

13.     The Court hereby finds, pursuant to Fed. R. Civ. P. 54(b), that there is no just reason for delay and orders that Judgment shall be entered against Defendants as set forth herein.

DONE AND ORDERED in Dallas County, Texas, this 5ᵗʰ day of May, 2009.

_____
UNITED STATES DISTRICT JUDGE

Copies furnished to:

All Counsel of Record

6

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AT&T MOBILITY LLC and AT&T MOBILITY II LLC, | § § § | |
| Plaintiffs, | § § | CASE NO.: 3:08-cv-00330-P |
| v. | § § | JURY TRIAL DEMANDED |
| ARENA TRADING, INC., a Texas Corporation; KHALID TAYOB; RUBINA TARIQ, also known as RUBY TARIQ; RUBYLINK; HAIDER KHOJA; MURAD KHOJA; MEHBOOB KHOJA; MUSKAAN INC., a Texas corporation; WALK & TALK WIRELESS; GIDEON GIDANIAN; WESTSIDE COMMUNICATIONS; AMERICAS WIRELESS; JOHN DOES 1-50; XYZ COMPANIES 1-50, | § § § § § § | |
| Defendants. | | |

---

## FINAL JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANTS

Plaintiffs AT&T Mobility LLC and AT&T Mobility II LLC (collectively "AT&T"), brought the above-captioned lawsuit against Defendants, Khalid Tayob and Arena Trading, Inc. (collectively referred to as "Defendants"), alleging that Defendants are engaged in an unlawful enterprise involving the acquisition, sale, and alteration of large quantities of AT&T and GoPhone® branded wireless telephones ("GoPhones" or "Phones") and associated SIM cards and activation kits, purchased from retail outlets, the solicitation and payment of others to bulk purchase Phones for Defendants' benefit, computer-hacking and erasing or otherwise disabling software installed in the Phones, or selling the Phones to others who disable the software, and ultimately selling or facilitating the sale of the altered Phones as new under the AT&T

trademarks for unauthorized use outside of the AT&T wireless system for profit, as well as the fraudulent activation and sale of associated GoPhone SIM cards and PIN kits for the unlawful acquisition of free airtime (the "Illicit Bulk Retail Scheme").

AT&T GoPhones are sold subject to terms and conditions ("Terms and Conditions") which conspicuously restrict and limit the sale and use of the GoPhones. These Terms and Conditions are set forth in printed inserts that are included in the packaging with every AT&T GoPhone and are posted on AT&T's website. The Terms and Conditions and language on the GoPhone packaging constitute a valid binding contract.

AT&T asserts that Defendants have violated the Terms and Conditions by, *inter alia*, purchasing AT&T GoPhones with the intent that such phones will not be activated and used on AT&T's service, but instead with the intent to improperly unlock, repackage, and resell the phones, and by otherwise using the GoPhones.

As a result of Defendants' alleged involvement in the Illicit Bulk Retail Scheme, AT&T asserted claims against Defendants for breach of contract; federal trademark infringement; federal trademark dilution; federal trademark infringement and false advertising under 15 U.S.C. § 1125(a)(1)(A) and (B); unfair competition under Texas common law; contributory trademark infringement; tortious interference with business relationships and prospective advantage; tortious interference with contract; harm to AT&T's goodwill and business reputation; civil conspiracy; and unjust enrichment.

Based on the respective positions advocated by the parties and having reviewed the Complaint and file and being otherwise duly and fully advised in the premises, it is hereby **ORDERED, ADJUDGED** and **DECREED** that:

1.    This Court has jurisdiction over all the parties and all of the claims set forth in AT&T's Amended Complaint.

2.    The Court finds that AT&T has the right to use and enforce said rights in the stylized AT&T and GOPHONE marks, which are used in connection with telecommunications products and services, as depicted below:





AT&T uses the AT&T Marks on and in connection with its telecommunications products and services. The AT&T and GOPHONE marks are valid, distinctive, protectable, famous, have acquired secondary meaning, and are associated exclusively with AT&T.

3.    The Court finds that Defendants' involvement in the Illicit Bulk Retail Scheme constitutes breach of contract; federal trademark infringement; federal trademark dilution; federal trademark infringement and false advertising under 15 U.S.C. § 1125(a)(1)(A) and (B); unfair competition under Texas common law; contributory trademark infringement; tortious interference with business relationships and prospective advantage; tortious interference with contract; harm to AT&T's goodwill and business reputation; civil conspiracy; and unjust enrichment.

3

4.      The Court finds that the Terms and Conditions and the language on the GoPhone packaging constitute a valid binding contract enforceable against Defendants. The Court finds that (a) facilitating others to use GoPhones in conjunction with service providers other than AT&T, and (b) tampering with or altering, or facilitating or assisting others to tamper with or alter, GoPhones or the GoPhones' software constitute independent breaches of contract for which AT&T is entitled to relief.

5.      The Court further finds that Defendants' participation in the Illicit Bulk Retail Scheme has caused substantial and irreparable harm to AT&T for which there is no adequate remedy at law, and will continue to cause substantial and irreparable harm to AT&T unless enjoined.

6.      On review and consideration of all relevant factors, AT&T is entitled to damages and injunctive relief on the claims as set forth in the Amended Complaint.

7.      Final judgment is hereby entered, jointly and severally, against Defendants Khalid Tayob and Arena Trading, Inc. and in favor of the Plaintiffs AT&T Mobility LLC and AT&T Mobility II LLC, on all claims set forth in AT&T's Amended Complaint in the principal amount of FIVE MILLIONS DOLLARS AND ZERO CENTS ($5,000,000.00 (U.S.)), which shall bear interest at the legal rate, for which let execution issue forthwith.

8.      If, after the Judgment is entered, it is discovered that the parties to this action have violated the terms of this Permanent Injunction, the Court will order the payment of compensatory damages to AT&T in the amount of Five Thousand Dollars and No Cents ($5,000.00 (U.S.)) for each AT&T phone and/or item of GoPhone-related materials or accessories purchased, sold, unlocked, reflashed, altered, advertised, solicited and/or shipped. The Court finds that these amounts are compensatory and reasonable estimations of the

4

minimum damages suffered by AT&T for such a breach and will serve to compensate AT&T for its losses in the event a Defendant violates the terms of this Permanent Injunction.

9.      Khalid Tayob and Arena Trading, Inc., and each and all of his and its past and present respective officers, directors, successors, assigns, parents, subsidiaries, affiliates, related companies, predecessors-in-interest, agents, employees, heirs, personal representatives, beneficiaries, relatives, and all other persons or entities acting or purporting to act for him/her/it or on his/her/its behalf, including but not limited to any corporation, partnership, proprietorship or entity of any type that is in any way affiliated or associated with any Defendant or any Defendant's representatives, agents, assigns, parent entities, employees, independent contractors, associates, servants, affiliated entities, and any and all persons and entities in active concert and participation with any Defendant who receive notice of this Order, shall be and hereby are PERMANENTLY ENJOINED from:

> a. purchasing, selling, unlocking, reflashing, altering, advertising, soliciting and/or shipping, directly or indirectly, any AT&T GoPhones or GoPhone-related materials or accessories, including activation kits, PIN numbers, user guides, and SIM cards;
>
> b. purchasing, selling, unlocking, reflashing, altering, advertising, soliciting and/or shipping, directly or indirectly, any AT&T wireless handset that Defendants know or should know bears any AT&T or GoPhone Trademark, any other trademark owned or used by AT&T. Unless expressly authorized by AT&T in writing, Defendants are enjoined from purchasing and/or selling, directly or indirectly, all models of GoPhones currently offered for sale by AT&T or that may be offered for sale in the future, as listed and updated from time to time on AT&T's website:

5

http://www.att.com, regardless of whether such devices are in or out of their original packaging, or whether "locked," "unlocked," or otherwise modified in any way by any person;

c.  accessing, altering, erasing, tampering with, deleting or otherwise disabling the software contained in any GoPhone;

d.  facilitating or in any way assisting other persons or entities who Defendants know or should know are engaged in unlocking GoPhones and/or hacking, altering, erasing, tampering with, deleting or otherwise disabling the software installed in GoPhones;

e.  facilitating or in any way assisting other persons or entities who Defendants know or should know are engaged in any of the acts prohibited under this Permanent Injunction, including, without limitation, the buying and/or selling of unlocked GoPhones; and

f.  knowingly using the AT&T or GoPhone Marks or any mark owned or used by AT&T, or that is likely to cause confusion with AT&T's marks, without AT&T's prior written authorization.

10.  The address of Defendant Khalid Tayob is 3412 Walington Drive, Apt. 2529, Plano, Texas 75093–7447.

11.  The address of Defendant Arena Trading, Inc. is 4659 Westgrove Drive, Addison, Texas 75001-3298.

12.  The address of Plaintiffs AT&T Mobility LLC and AT&T Mobility II LLC is 5565 Glenridge Connector, Suite 1700, Atlanta, GA 30342.

6

Exh. C - pg. 49

13.    The Court retains jurisdiction over this matter and the parties to this action in order to enforce any violation of the terms of this Permanent Injunction by a finding of contempt and an order for payment of compensatory damages to AT&T in accordance with paragraph 8 of this Judgment.

14.    The prevailing party in any proceeding to enforce compliance with the terms of this Permanent Injunction shall be entitled to an award of its attorneys' fees and costs.

15.    Defendants waive their right of appeal from the entry of this Final Judgment.

16.    The Court hereby finds, pursuant to Fed. R. Civ. P. 54(b), that there is no just reason for delay and orders that Judgment shall be entered against Defendants as set forth herein.

DONE AND ORDERED in Dallas, Texas, this 4th day of May, 2009.

_____
JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE

7

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AT&T MOBILITY LLC and AT&T MOBILITY II LLC, | § § § | |
| Plaintiffs, | § § | Civil Action No. 3:08-CV-198-M |
| v. | § § | |
| WIRELESS EXCLUSIVE USA, LLC, a Texas Limited Liability Company; MOIZ KHOJA; THE CONNECTION COMMUNICATIONS, INC., a Texas Corporation; CQ COMMUNICATIONS, INC., a New York Corporation; COLLETTE A. QUINTERO; HOBBY WIRELESS, LLC, a Maryland Limited Liability Company; SHARJEEL SURANI; JOHN DOES 1-50; XYZ COMPANIES 1-50, | § § § § § § § § § § § | |
| Defendants. | § | |

FINAL JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANTS
WIRELESS EXCLUSIVE USA, LLC, MOIZ KHOJA, THE CONNECTION
COMMUNICATIONS, INC., AND SHARJEEL SURANI

Plaintiffs AT&T Mobility LLC and AT&T Mobility II LLC (collectively "AT&T"),

brought the above-captioned lawsuit against Defendants Wireless Exclusive USA, LLC, Moiz

Khoja, The Connection Communications, Inc., and Sharjeel Surani (collectively referred to as

"Defendants"), alleging that Defendants are engaged in an unlawful enterprise involving the

acquisition, sale, and alteration of large quantities of AT&T handsets intended for use with

AT&T's prepaid services (herein referred to as "GoPhones" or "Phones") and associated SIM

cards and activation kits, purchased from retail outlets, the solicitation and payment of others to

bulk purchase Phones for Defendants' benefit, computer-hacking and erasing or otherwise

disabling software installed in the Phones, or selling the Phones to others who disable the

1

software, and ultimately selling or facilitating the sale of the altered Phones as new under the AT&T trademarks for unauthorized use outside of the AT&T wireless system for profit, as well as the fraudulent activation and sale of associated GoPhone SIM cards and PIN kits for the unlawful acquisition of free airtime (the "Illicit Bulk Retail Scheme").

AT&T GoPhones are sold subject to terms and conditions ("Terms and Conditions") which conspicuously restrict and limit the sale and use of the GoPhones. These Terms and Conditions are set forth in printed inserts that are included in the packaging with every AT&T GoPhone and are posted on AT&T's website. The Terms and Conditions and language on the GoPhone packaging constitute a valid binding contract.

AT&T asserts that Defendants have violated the Terms and Conditions by, *inter alia*, purchasing AT&T GoPhones with the intent that such phones will not be activated and used on AT&T's service, but instead with the intent to improperly unlock, repackage, and resell the phones, and by otherwise using the GoPhones.

As a result of Defendants' alleged involvement in the Illicit Bulk Retail Scheme, AT&T asserted claims against Defendants for breach of contract; federal trademark infringement; federal trademark dilution; federal trademark infringement and false advertising under 15 U.S.C. § 1125(a)(1)(A) and (B); unfair competition under Texas common law; contributory trademark infringement; tortious interference with business relationships and prospective advantage; tortious interference with contract; harm to AT&T's goodwill and business reputation; civil conspiracy; and unjust enrichment.

Based on the respective positions advocated by the parties and having reviewed the Complaint and file and being otherwise duly and fully advised in the premises, it is hereby

**ORDERED, ADJUDGED and DECREED** that:

2

1.     This Court has jurisdiction over all the parties and all of the claims set forth in AT&T's Amended Complaint.

2.     The Court finds that AT&T has the right to use and enforce said rights in the stylized AT&T and GOPHONE marks, which are used in connection with telecommunications products and services, as depicted below:





AT&T uses the AT&T Marks on and in connection with its telecommunications products and services. The AT&T and GOPHONE marks are valid, distinctive, protectable, famous, have acquired secondary meaning, and are associated exclusively with AT&T.

3.     The Court finds that Defendants' involvement in the Illicit Bulk Retail Scheme constitutes breach of contract; federal trademark infringement; federal trademark dilution; federal trademark infringement and false advertising under 15 U.S.C. § 1125(a)(1)(A) and (B); unfair competition under Texas common law; contributory trademark infringement; tortious interference with business relationships and prospective advantage; tortious interference with contract; harm to AT&T's goodwill and business reputation; civil conspiracy; and unjust enrichment.

4.     The Court finds that the Terms and Conditions and the language on the GoPhone packaging constitute a valid binding contract enforceable against Defendants. The Court finds that (a) facilitating others to use GoPhones in conjunction with service providers other than

3

AT&T, and (b) tampering with or altering, or facilitating or assisting others to tamper with or alter, GoPhones or the GoPhones' software constitute independent breaches of contract for which AT&T is entitled to relief.

5.    The Court further finds that Defendants' participation in the Illicit Bulk Retail Scheme has caused substantial and irreparable harm to AT&T for which there is no adequate remedy at law, and will continue to cause substantial and irreparable harm to AT&T unless enjoined.

6.    On review and consideration of all relevant factors, AT&T is entitled to damages and injunctive relief on the claims as set forth in the Amended Complaint.

7.    Final judgment is hereby entered, jointly and severally, against Defendants Wireless Exclusive USA, LLC and The Connection Communications, Inc. and in favor of the Plaintiffs AT&T Mobility LLC and AT&T Mobility II LLC, on all claims set forth in AT&T's Amended Complaint in the principal amount of FIVE MILLIONS DOLLARS AND ZERO CENTS ($5,000,000.00 (U.S.)), which shall bear interest at the legal rate, for which let execution issue forthwith.

8.    Wireless Exclusive USA, LLC, Moiz Khoja, The Connection Communications, Inc. and Sharjeel Surani, and each and all of his, her and its past and present respective officers, directors, successors, assigns, parents, subsidiaries, affiliates, related companies, predecessors-in-interest, agents, employees, heirs, personal representatives, beneficiaries, relatives, and all other persons or entities acting or purporting to act for him/her/it or on his/her/its behalf, including but not limited to any corporation, partnership, proprietorship or entity of any type that is in any way affiliated or associated with any Defendant or any Defendant's representatives, agents, assigns, parent entities, employees, independent contractors, associates, servants,

affiliated entities, and any and all persons and entities in active concert and participation with any Defendant who receive notice of this Order, shall be and hereby are PERMANENTLY ENJOINED from:

    a. purchasing, selling, unlocking, reflashing, altering, advertising, soliciting and/or shipping, directly or indirectly, any AT&T GoPhones or "Activation Materials," which consist of SIM cards, GoPhone airtime cards, User Guides, PIN numbers and/or other mechanism, process or materials used to activate service or acquire airtime in connection with a new activation;

    b. purchasing, selling, unlocking, reflashing, altering, advertising, soliciting and/or shipping, directly or indirectly, any AT&T wireless handset that Defendants know or should know bears any AT&T or GoPhone Trademark, any other trademark owned or used by AT&T. Unless expressly authorized by AT&T in writing, Defendants are enjoined from purchasing and/or selling, directly or indirectly, all models of GoPhones currently offered for sale by AT&T or that may be offered for sale in the future, as listed and updated from time to time on AT&T's website: http://www.att.com, regardless of whether such devices are in or out of their original packaging, or whether "locked," "unlocked," or otherwise modified in any way by any person;

    c. accessing, altering, erasing, tampering with, deleting or otherwise disabling the software contained in any GoPhone;

    d. facilitating or in any way assisting other persons or entities who Defendants know or should know are engaged in unlocking GoPhones and/or hacking, altering,

5

erasing, tampering with, deleting or otherwise disabling the software installed in GoPhones;

e.  facilitating or in any way assisting other persons or entities who Defendants know or should know are engaged in any of the acts prohibited under this Permanent Injunction, including, without limitation, the buying and/or selling of unlocked GoPhones; and

f.  knowingly using the AT&T or GoPhone Marks or any mark owned or used by AT&T, or that is likely to cause confusion with AT&T's marks, without AT&T's prior written authorization.

9.    The address of Defendant Moiz Khoja is 4253 Hunt Drive, #2007, Carrollton, Texas 75010.

10.    The address of Defendant Sharjeel Surani is 4253 Hunt Drive, #2007, Carrollton, Texas 75010.

11.    The last known address of Defendant Wireless Exclusive USA, LLC is 2548 Southwell, Dallas, Texas 75229.

12.    The address of Defendant The Connection Communications, Inc. is 10921 Shady Trail, #104, Dallas, Texas 75220.

13.    The address of Plaintiffs AT&T Mobility LLC and AT&T Mobility II LLC is 5565 Glenridge Connector, Suite 1700, Atlanta, GA 30342.

14.    The Court retains jurisdiction over this matter and the parties to this action in order to enforce any violation of the terms of this Permanent Injunction by a finding of contempt and an order for payment of compensatory damages to AT&T in an amount of Five Thousand Dollars and No Cents ($5,000.00 (U.S.)) for each AT&T prepaid phone or item of Activation

Exh. C - pg. 56

material that Defendant(s) are found to have purchased, sold, unlocked, reflashed, altered, advertised, solicited, activated, and/or shipped. The Court finds that these amounts are compensatory and reasonable estimations of the minimum damages suffered by AT&T for such a breach and will serve to compensate AT&T for its losses in the event a Defendant violates the terms of this Permanent Injunction. The Court also retains jurisdiction over this matter and the parties to this action to enforce the terms of the parties' settlement agreement and to award damages in Plaintiffs' favor against Defendants Moiz Khoja and Sharjeel Surani.

15.    The Court hereby finds, pursuant to Fed. R. Civ. P. 54(b), that there is no just reason for delay and orders that Judgment shall be entered against Defendants as set forth herein.

DONE AND ORDERED in Dallas, Texas, this 10th day of April, 2009.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

Copies furnished to:

James B. Baldinger, *counsel for Plaintiffs AT&T Mobility LLC and AT&T Mobility II LLC*

David Gibson, *counsel for Defendants Wireless Exclusive USA, LLC, Moiz Khoja, The Connection Communications, Inc. and Sharjeel Surani*

7

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AT&T MOBILITY LLC and AT&T MOBILITY II LLC, | § § § | |
| Plaintiffs, | § § | CASE NO.: 3:08-cv-00330-P |
| v. | § § | JURY TRIAL DEMANDED |
| ARENA TRADING, INC., a Texas Corporation; KHALID TAYOB; RUBINA TARIQ, also known as RUBY TARIQ; RUBYLINK; HAIDER KHOJA; MURAD KHOJA; MEHBOOB KHOJA; MUSKAAN INC., a Texas corporation; WALK & TALK WIRELESS; GIDEON GIDANIAN; WESTSIDE COMMUNICATIONS; AMERICAS WIRELESS; JOHN DOES 1-50; XYZ COMPANIES 1-50, | § § § § § § § § § § § | |
| Defendants. | § § | |

FINAL JUDGMENT AND PERMANENT INJUNCTION
AGAINST DEFENDANTS HAIDER KHOJA, MURAD KHOJA, MEHBOOB KHOJA,
MUSKAAN INC., AND WALK & TALK WIRELESS

Plaintiffs AT&T Mobility LLC and AT&T Mobility II LLC (collectively "AT&T"),

brought the above-captioned lawsuit against Defendants Haider Khoja, Murad Khoja, Mehboob

Khoja, Muskaan Inc., and Walk & Talk Wireless (collectively referred to as "Defendants"),

alleging that Defendants are engaged in an unlawful enterprise involving the acquisition, sale,

and alteration of large quantities of AT&T prepaid wireless telephones (referred to herein as

"GoPhones" or "Phones") purchased from retail outlets, the solicitation and payment of others to

bulk purchase Phones for Defendants' benefit, computer-hacking and erasing or otherwise

disabling software installed in the Phones, or selling the Phones to others who disable the

software, and ultimately selling or facilitating the sale of the altered Phones as new under the

1

14854208.1

AT&T trademarks for unauthorized use outside of the AT&T wireless system for profit, as well as the fraudulent activation and sale of associated GoPhone SIM cards and PIN kits for the unlawful acquisition of free airtime (the "Illicit Bulk Retail Scheme").

AT&T GoPhones are sold subject to terms and conditions ("Terms and Conditions") which conspicuously restrict and limit the sale and use of the GoPhones. These Terms and Conditions are set forth in printed inserts that are included in the packaging with every AT&T GoPhone and are posted on AT&T's website. The Terms and Conditions and language on the GoPhone packaging constitute a valid binding contract.

AT&T asserts that Defendants have violated the Terms and Conditions by, *inter alia*, purchasing AT&T GoPhones with the intent that such phones will not be activated and used on AT&T's service, but instead with the intent to improperly unlock, repackage, and resell the phones, and by otherwise using the GoPhones.

As a result of Defendants' alleged involvement in the Illicit Bulk Retail Scheme, AT&T asserted claims against Defendants for breach of contract; federal trademark infringement; federal trademark dilution; federal trademark infringement and false advertising under 15 U.S.C. § 1125(a)(1)(A) and (B); unfair competition under Texas common law; contributory trademark infringement; tortious interference with business relationships and prospective advantage; tortious interference with contract; harm to AT&T's goodwill and business reputation; civil conspiracy; and unjust enrichment.

Based on the respective positions advocated by the parties and having reviewed the Complaint and file and being otherwise duly and fully advised in the premises, it is hereby

2

14854208.1

**ORDERED, ADJUDGED** and **DECREED** that:

1.    This Court has jurisdiction over all the parties and all of the claims set forth in AT&T's Amended Complaint.

2.    The Court finds that AT&T has the right to use and enforce said rights in the stylized AT&T and GOPHONE marks, which are used in connection with telecommunications products and services, as depicted below:





AT&T uses the AT&T Marks on and in connection with its telecommunications products and services.  The AT&T and GOPHONE marks are valid, distinctive, protectable, famous, have acquired secondary meaning, and are associated exclusively with AT&T.

3.    The Court finds that Defendants' involvement in the Illicit Bulk Retail Scheme constitutes breach of contract; federal trademark infringement; federal trademark dilution; federal trademark infringement and false advertising under 15 U.S.C. § 1125(a)(1)(A) and (B); unfair competition under Texas common law; contributory trademark infringement; tortious interference with business relationships and prospective advantage; tortious interference with contract; harm to AT&T's goodwill and business reputation; civil conspiracy; and unjust enrichment.

4.    The Court finds that the Terms and Conditions and the language on the GoPhone packaging constitute a valid binding contract enforceable against Defendants.  The Court finds that (a) facilitating others to use GoPhones in conjunction with service providers other than

3

AT&T, and (b) tampering with or altering, or facilitating or assisting others to tamper with or alter, GoPhones or the GoPhones' software constitute independent breaches of contract for which AT&T is entitled to relief.

5.      The Court further finds that Defendants' participation in the Illicit Bulk Retail Scheme has caused substantial and irreparable harm to AT&T for which there is no adequate remedy at law, and will continue to cause substantial and irreparable harm to AT&T unless enjoined.

6.      On review and consideration of all relevant factors, AT&T is entitled to damages and injunctive relief on the claims as set forth in the Amended Complaint.

7.      Final judgment is hereby entered against Muskaan Inc. and in favor of the Plaintiffs AT&T Mobility LLC and AT&T Mobility II LLC, on all claims set forth in AT&T's Amended Complaint in the principal amount of FIVE MILLIONS DOLLARS AND ZERO CENTS ($5,000,000.00 (U.S.)), which shall bear interest at the legal rate, for which let execution issue forthwith.

8.      Haider Khoja, Murad Khoja, Mehboob Khoja, Muskaan Inc. and Walk & Talk Wireless, and each and all of his, her and its past and present respective officers, directors, successors, assigns, parents, subsidiaries, affiliates, related companies, predecessors-in-interest, agents, employees, heirs, personal representatives, beneficiaries, relatives, and all other persons or entities acting or purporting to act for him/her/it or on his/her/its behalf, including but not limited to any corporation, partnership, proprietorship or entity of any type that is in any way affiliated or associated with any Defendant or any Defendant's representatives, agents, assigns, parent entities, employees, independent contractors, associates, servants, affiliated entities, and

4

14854208.1

any and all persons and entities in active concert and participation with any Defendant who receive notice of this Order, shall be and hereby are PERMANENTLY ENJOINED from:

    a.  purchasing, selling, unlocking, reflashing, altering, advertising, soliciting and/or shipping, directly or indirectly, any AT&T GoPhones or "Activation Materials," which consist of SIM cards, GoPhone airtime cards, User Guides, PIN numbers and/or other mechanism, process or materials used to activate service or acquire airtime in connection with a new activation;

    b.  purchasing, selling, unlocking, reflashing, altering, advertising, soliciting and/or shipping, directly or indirectly, any AT&T wireless handset that Defendants know or should know bears any AT&T or GoPhone Trademark, any other trademark owned or used by AT&T. Unless expressly authorized by AT&T in writing, Defendants are enjoined from purchasing and/or selling, directly or indirectly, all models of GoPhones currently offered for sale by AT&T or that may be offered for sale in the future, as listed and updated from time to time on AT&T's website: http://www.att.com, regardless of whether such devices are in or out of their original packaging, or whether "locked," "unlocked," or otherwise modified in any way by any person;

    c.  accessing, altering, erasing, tampering with, deleting or otherwise disabling the software contained in any GoPhone;

    d.  facilitating or in any way assisting other persons or entities who Defendants know or should know are engaged in unlocking GoPhones and/or hacking, altering, erasing, tampering with, deleting or otherwise disabling the software installed in GoPhones;

5

14854208.1

    e.  facilitating or in any way assisting other persons or entities who Defendants know or should know are engaged in any of the acts prohibited under this Permanent Injunction, including, without limitation, the buying and/or selling of unlocked GoPhones; and

    f.  knowingly using the AT&T or GoPhone Marks or any mark owned or used by AT&T, or that is likely to cause confusion with AT&T's marks, without AT&T's prior written authorization.

    9.  The address of Defendant Haider Khoja is 1309 Greenway Park Drive, Carrollton, Texas 75007.

    10.  The address of Defendant Murad Khoja is 1309 Greenway Park Drive, Carrollton, Texas 75007.

    11.  The address of Defendant Mehboob Khoja is 1116 Creekstone Drive, Carrollton, Texas 75010.

    12.  The address of Defendant Muskaan Inc. is 1116 Creekstone Drive, Carrollton, Texas 75010.

    13.  The address of Defendant Walk & Talk Wireless is 1116 Creekstone Drive, Carrollton,

    14.  The address of Plaintiffs AT&T Mobility LLC and AT&T Mobility II LLC is 5565 Glenridge Connector, Suite 1700, Atlanta, GA 30342.

    15.  The Court retains jurisdiction over this matter and the parties to this action in order to enforce any violation of the terms of this Permanent Injunction by a finding of contempt and an order for payment of compensatory damages to AT&T in an amount of Five Thousand Dollars and No Cents ($5,000.00 (U.S.)) for each AT&T prepaid phone or item of Activation

14854208.1

Material that Defendant(s) are found to have purchased, sold, unlocked, reflashed, altered, advertised, solicited, activated, and/or shipped.   The Court finds that these amounts are compensatory and reasonable estimations of the minimum damages suffered by AT&T for such a breach and will serve to compensate AT&T for its losses in the event a Defendant violates the terms of this Permanent Injunction. The Court also retains jurisdiction over this matter and the parties to this action to enforce the terms of the parties' settlement agreement and to award damages in Plaintiffs' favor against Defendants Haider Khoja, Murad Khoja, Mehboob Khoja, and Walk & Talk Wireless.

16.    The Court hereby finds, pursuant to Fed. R. Civ. P. 54(b), that there is no just reason for delay and orders that Judgment shall be entered against Defendants as set forth herein.

DONE AND ORDERED in Dallas, Texas, this 7th day of April 2009.


JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE



Copies furnished to:

All counsel of record and pro se parties

14854208.1

Exh. C - pg. 64

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JAN 2 7 2009

CLERK, U.S. DISTRICT COURT
By _____
Deputy

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| AT&T MOBILITY LLC and AT&T INTELLECTUAL PROPERTY II L.P., | § § § | |
| Plaintiff | § § § | CASE NO.: **3:09–CV–0138** |
| v. | § § | |
| KING TRADING, INC., a Texas Corporation, d/b/a King Video; and AMIN NOORALI MUHAMMAD, individually, and d/b/a King Video, | § § § § § | |
| Defendants. | § § § § § | |

### FINAL JUDGMENT AND PERMANENT INJUNCTION
### AGAINST DEFENDANTS

Plaintiffs AT&T Mobility LLC and AT&T Intellectual Property II L.P. (collectively "AT&T"), brought the above-captioned lawsuit against Defendants, King Trading, Inc., a Texas Corporation, d/b/a King Video and Amin Noorali Muhammad, individually and d/b/a King Video, (collectively referred to as "Defendants"), alleging that Defendants are engaged in an unlawful enterprise involving the acquisition, sale, and alteration of large quantities of AT&T and GoPhone® branded wireless telephones ("GoPhones" or "Phones") and associated SIM cards and activation kits, purchased from retail outlets, the solicitation and payment of others to bulk purchase Phones for Defendants' benefit, computer-hacking and erasing or otherwise disabling software installed in the Phones, or selling the Phones to others who disable the software, and ultimately selling or facilitating the sale of the altered Phones as new under the AT&T trademarks for unauthorized use outside of the AT&T wireless system for profit, as well

Exh. C - pg. 65

as the fraudulent activation and sale of associated GoPhone SIM cards and PIN kits for the unlawful acquisition of free airtime (the "Illicit Bulk Retail Scheme").

AT&T GoPhones are sold subject to terms and conditions ("Terms and Conditions") which conspicuously restrict and limit the sale and use of the GoPhones. These Terms and Conditions are set forth in printed inserts that are included in the packaging with every AT&T GoPhone and are posted on AT&T's website. The Terms and Conditions and language on the GoPhone packaging constitute a valid binding contract.

AT&T asserts that Defendants have violated the Terms and Conditions by, *inter alia*, purchasing AT&T GoPhones with the intent that such phones will not be activated and used on AT&T's service, but instead with the intent to improperly unlock, repackage, and resell the phones, and by otherwise using the GoPhones.

As a result of Defendants' alleged involvement in the Illicit Bulk Retail Scheme, AT&T asserted claims against Defendants for breach of contract; federal trademark infringement; federal trademark dilution; federal trademark infringement and false advertising under 15 U.S.C. § 1125(a)(1)(A) and (B); unfair competition under Texas common law; contributory trademark infringement; tortious interference with business relationships and prospective advantage; tortious interference with contract; harm to AT&T's goodwill and business reputation; civil conspiracy; and unjust enrichment.

Based on the respective positions advocated by the parties and having reviewed the Complaint and file and being otherwise duly and fully advised in the premises, it is hereby

**ORDERED, ADJUDGED and DECREED** that:

2 of 7

1.    This Court has jurisdiction over all the parties and all of the claims set forth in AT&T's Amended Complaint.

2.    The Court finds that AT&T has the right to use and enforce said rights in the stylized AT&T and GOPHONE marks, which are used in connection with telecommunications products and services, as depicted below:





AT&T uses the AT&T Marks on and in connection with its telecommunications products and services. The AT&T and GOPHONE marks are valid, distinctive, protectable, famous, have acquired secondary meaning, and are associated exclusively with AT&T.

3.    The Court finds that Defendants' involvement in the Illicit Bulk Retail Scheme constitutes breach of contract; federal trademark infringement; federal trademark dilution; federal trademark infringement and false advertising under 15 U.S.C. § 1125(a)(1)(A) and (B); unfair competition under Texas common law; contributory trademark infringement; tortious interference with business relationships and prospective advantage; tortious interference with contract; harm to AT&T's goodwill and business reputation; civil conspiracy; and unjust enrichment.

4.    The Court finds that the Terms and Conditions and the language on the GoPhone packaging constitute a valid binding contract enforceable against Defendants. The Court finds that (a) facilitating others to use GoPhones in conjunction with service providers other than AT&T, and (b) tampering with or altering, or facilitating or assisting others to tamper with or

Exh. C - pg. 67

alter, GoPhones or the GoPhones' software constitute independent breaches of contract for which AT&T is entitled to relief.

5.     The Court further finds that Defendants' participation in the Illicit Bulk Retail Scheme has caused substantial and irreparable harm to AT&T for which there is no adequate remedy at law, and will continue to cause substantial and irreparable harm to AT&T unless enjoined.

6.     On review and consideration of all relevant factors, AT&T is entitled to damages and injunctive relief on the claims as set forth in the Amended Complaint.

7.     Final judgment is hereby entered, jointly and severally, against Defendants King Trading, Inc., a Texas Corporation, d/b/a King Video and Amin Noorali Muhammad, individually and d/b/a King Video, and in favor of the Plaintiffs AT&T Mobility LLC and AT&T Intellectual Property II L.P., on all claims set forth in AT&T's Amended Complaint in the principal amount of FIVE MILLIONS DOLLARS AND ZERO CENTS ($5,000,000.00 (U.S.)), which shall bear interest at the legal rate, for which let execution issue forthwith.

8.     If, after the Judgment is entered, it is discovered that the parties to this action have violated the terms of this Permanent Injunction, the Court will order the payment of compensatory damages to AT&T in the amount of Five Thousand Dollars and No Cents ($5,000.00 (U.S.)) for each AT&T phone and/or item of GoPhone-related materials or accessories purchased, sold, unlocked, reflashed, altered, advertised, solicited and/or shipped. The Court finds that these amounts are compensatory and reasonable estimations of the minimum damages suffered by AT&T for such a breach and will serve to compensate AT&T for its losses in the event a Defendant violates the terms of this Permanent Injunction.

Exh. C - pg. 68

9.    King Trading, Inc., a Texas Corporation, d/b/a King Video and Amin Noorali Muhammad, individually and d/b/a King Video, and each and all of his, her and its past and present respective officers, directors, successors, assigns, parents, subsidiaries, affiliates, related companies, predecessors-in-interest, agents, employees, heirs, personal representatives, beneficiaries, relatives, and all other persons or entities acting or purporting to act for him/her/it or on his/her/its behalf, including but not limited to any corporation, partnership, proprietorship or entity of any type that is in any way affiliated or associated with any Defendant or any Defendant's representatives, agents, assigns, parent entities, employees, independent contractors, associates, servants, affiliated entities, and any and all persons and entities in active concert and participation with any Defendant who receive notice of this Order, shall be and hereby are PERMANENTLY ENJOINED from:

    a.    purchasing, selling, unlocking, reflashing, altering, advertising, soliciting and/or shipping, directly or indirectly, any AT&T GoPhones or GoPhone-related materials or accessories, including activation kits, PIN numbers, user guides, and SIM cards;

    b.    purchasing, selling, unlocking, reflashing, altering, advertising, soliciting and/or shipping, directly or indirectly, any AT&T wireless handset that Defendants know or should know bears any AT&T or GoPhone Trademark, any other trademark owned or used by AT&T.  Unless expressly authorized by AT&T in writing, Defendants are enjoined from purchasing and/or selling, directly or indirectly, all models of GoPhones currently offered for sale by AT&T or that may be offered for sale in the future, as listed and updated from time to time on AT&T's website: http://www.att.com, regardless of whether such devices are in or out of their

Exh. C - pg. 69

original packaging, or whether "locked," "unlocked," or otherwise modified in any way by any person;

    c.  accessing, altering, erasing, tampering with, deleting or otherwise disabling the software contained in any GoPhone;

    d.  facilitating or in any way assisting other persons or entities who Defendants know or should know are engaged in unlocking GoPhones and/or hacking, altering, erasing, tampering with, deleting or otherwise disabling the software installed in GoPhones;

    e.  facilitating or in any way assisting other persons or entities who Defendants know or should know are engaged in any of the acts prohibited under this Permanent Injunction, including, without limitation, the buying and/or selling of unlocked GoPhones; and

    f.  knowingly using the AT&T or GoPhone Marks or any mark owned or used by AT&T, or that is likely to cause confusion with AT&T's marks, without AT&T's prior written authorization.

10.    The address of Defendant King Trading, Inc. is 2000 Old Denton, Suite 112, Carrollton, Texas 75007.

11.    The address of Defendant Amin Noorali Muhammad is 3153 Irvine Drive, Carrollton 72007.

12.    The address of Plaintiffs AT&T Mobility LLC and AT&T Intellectual Property II L.P. is 5565 Glenridge Connector, Suite 1700, Atlanta, Georgia 30342.

13.    The Court retains jurisdiction over this matter and the parties to this action in order to enforce any violation of the terms of this Permanent Injunction by a finding of contempt

Exh. C - pg. 70

and an order for payment of compensatory damages to AT&T in accordance with paragraph 8 of this Judgment.

14.    The prevailing party in any proceeding to enforce compliance with the terms of this Permanent Injunction shall be entitled to an award of its attorneys' fees and costs.

DONE AND ORDERED in Dallas, Texas, this 27th day of January, 2009.

UNITED STATES DISTRICT JUDGE

Copies furnished to:

James B. Baldinger, *counsel for Plaintiffs AT&T Mobility LLC and AT&T Intellectual Property II L.P.*

David Gibson, *counsel for Defendants King Trading, Inc., a Texas Corporation, d/b/a King Video and Amin Noorali Muhammad*

Exh. C - pg. 71

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

### Case Number: 08-20637-CIV-MORENO

AT&T MOBILITY LLC and AT&T MOBILITY
II LLC,

       Plaintiffs,

vs.

MIRANDA HOLDINGS CORP. d/b/a
INCOMTEL; HOME SECRETS CORP.; JOSUE
LEON; JOHN DOES 1-50; XYZ COMPANIES
1-50,

       Defendants.

_____/



CLOSED CIVIL CASE

## FINAL JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANTS

THIS CAUSE came before the Court upon the Parties' Stipulation for Entry of Final

Judgment and Permanent Injunction Against Defendants **(D.E. No. 50)**, filed on **July 1, 2008**.

Plaintiffs AT&T Mobility LLC and AT&T Mobility II LLC (collectively "AT&T"), brought the

above-captioned lawsuit against Defendants Miranda Holdings Corp., a Florida corporation, d/b/a

Incomtel, Jeremy Lara, individually and d/b/a Incomtel, Home Secrets Corp., and Josue Leon

(collectively referred to as "Defendants"), alleging that Defendants are engaged in an unlawful

enterprise involving the acquisition, sale, and alteration of large quantities of AT&T and

GoPhone® branded wireless telephones ("GoPhones" or "Phones") purchased from retail outlets,

the solicitation and payment of others to bulk purchase Phones for Defendants' benefit, computer

hacking and erasing or otherwise disabling software installed in the Phones essential for

consumers to access AT&T's prepaid wireless network, or selling the Phones to others who

disable the software, and ultimately selling or facilitating the ultimate sale of the altered Phones as new under the AT&T trademarks for unauthorized use outside of the AT&T wireless system for profit (the "Bulk Resale Venture").

AT&T GoPhones are sold subject to terms and conditions ("Terms and Conditions") which conspicuously restrict and limit the sale and use of the GoPhones. These Terms and Conditions are set forth in printed inserts that are included in the packaging with every AT&T GoPhone and are posted on AT&T's website. The Terms and Conditions and language on the GoPhone packaging constitute a valid binding contract.

AT&T asserts that Defendants have violated the Terms and Conditions by, *inter alia*, purchasing AT&T GoPhones with the intent that such phones will not be activated and used on AT&T's service, but instead with the intent to improperly unlock, repackage, and resell the phones, and by otherwise using the GoPhones.

As a result of Defendants' alleged involvement in the Bulk Resale Venture, AT&T asserted claims for breach of contract; federal trademark infringement and false advertising under 15 U.S.C. § 1125(a)(1)(A) and (B); unfair competition under Florida common law; contributory trademark infringement; tortious interference with business relationships and prospective advantages; unfair competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices in violation of section 501.204, Florida Statutes; civil conspiracy; unjust enrichment; and conspiracy to induce breach of contract. As to Defendant Leon, AT&T does not allege intentional acts.

Based on the respective positions advocated by the parties and having reviewed the Complaint and file and being otherwise duly and fully advised in the premises, it is hereby

-2-

**ORDERED, ADJUDGED and DECREED** that:

1.     This Court has jurisdiction over all the parties and all of the claims set forth in AT&T's complaint.

2.     The Court finds that AT&T has the right to use and enforce said rights in the stylized AT&T and GOPHONE marks, which are used in connection with telecommunications products and services, as depicted below:



AT&T uses the AT&T Marks on and in connection with its telecommunications products and services. The AT&T and GOPHONE marks are valid, distinctive, protectable, famous, have acquired secondary meaning, and are associated exclusively with AT&T.

3      The Court finds that Defendants' involvement in the Bulk Resale Venture constitutes breach of contract; federal trademark infringement under 15 U.S.C. § 1125(a)(1)(A) and (B); unfair competition under Florida common law; contributory trademark infringement; tortious interference with business relationships and prospective advantages; unfair competition, unconscionable acts or practices, and/or unfair or deceptive acts or practices in violation of section 501.204, Florida Statutes; civil conspiracy; unjust enrichment; and conspiracy to induce breach of contract.

4.     The Court finds that the Terms and Conditions and the language on the GoPhone packaging constitute a valid binding contract enforceable against Defendants. The Court finds that (a) facilitating others to use GoPhones in conjunction with service providers other than AT&T,

-3-

and (b) tampering with or altering, or facilitating or assisting others to tamper with or alter, GoPhones or the GoPhones' software constitute independent breaches of contract for which AT&T is entitled to relief.

    5.      The Court further finds that Defendants' participation in the Bulk Resale Venture has caused substantial and irreparable harm to AT&T for which there is no adequate remedy at law, and will continue to cause substantial and irreparable harm to AT&T unless enjoined.

    6.      On review and consideration of all relevant factors, AT&T is entitled to damages and injunctive relief on the claims as set forth in the Complaint.

    7.      Final judgment is hereby entered, jointly and severally, against Defendants Miranda Holdings Corp., a Florida corporation, d/b/a Incomtel, Jeremy Lara, individually and d/b/a Incomtel, Home Secrets Corp., and Josue Leon and in favor of the Plaintiffs AT&T Mobility LLC and AT&T Mobility II LLC, on all claims as set forth in AT&T's complaint in the principal amount of FIVE MILLION DOLLARS AND ZERO CENTS ($5,000,000.00), which shall bear interest at the legal rate, for which let execution issue forthwith. Judgment against Josue Leon does not include a finding of intent or malice and does not include any claim for an intentional tort.

    8.      If, after the Judgment is satisfied, it is discovered that the parties to this action have violated the terms of this Permanent Injunction, the Court will order the payment of compensatory damages to AT&T in the amount of FIVE THOUSAND DOLLARS AND ZERO CENTS ($5,000.00) for each AT&T handset that a Defendant is found to have purchased, sold or unlocked in violation of the Injunction. The Court finds that these amounts are compensatory and reasonable estimations of the minimum damages suffered by AT&T for such a breach and will serve to compensate AT&T for its losses in the event a Defendant violates the terms of this

-4-

Exh. C - pg. 75

Permanent Injunction after the monetary portion set forth in paragraph 6 of this Final Judgment has been satisfied.

9.     Miranda Holdings Corp. d/b/a Incomtel, Jeremy Lara, individually and d/b/a Incomtel, Home Secrets Corp., and Josue Leon, and each and all of his, her and its past and present respective officers, directors, successors, assigns, parents, subsidiaries, affiliates, related companies, predecessors-in-interest, agents, employees, heirs, personal representatives, beneficiaries, relatives, and all other persons or entities acting or purporting to act for him/her/it or on his/her/its behalf, including but not limited to any corporation, partnership, proprietorship or entity of any type that is in any way affiliated or associated with any Defendant or any Defendant's representatives, agents, assigns, parent entities, employees, independent contractors, associates, servants, affiliated entities, and any and all persons and entities in active concert and participation with any Defendant who receive notice of this Order, shall be and hereby are PERMANENTLY ENJOINED from:

a.     purchasing and/or selling any wireless mobile phone that they know or should know bears any AT&T or GoPhone Trademark, any other trademark owned or used by AT&T. Specifically, unless expressly authorized by AT&T in writing, Defendants are enjoined from purchasing and/or selling, directly or indirectly, all models of GoPhones currently offered for sale by AT&T or that may be offered for sale in the future, as listed and updated from time to time on AT&T's website: http://www.att.com, regardless of whether such devices are in or out of their original packaging, or whether "locked," "unlocked," or otherwise modified in any

way by any person except for Phones that were legitimately purchased at an AT&T or manufacturer auction.

   b.   unlocking of any GoPhone;

   c.   accessing, altering, erasing, tampering with, deleting or otherwise disabling the software contained in any GoPhone;

   d.   facilitating or in any way assisting other persons or entities who Defendants know or should know are engaged in unlocking GoPhones and/or hacking, altering, erasing, tampering with, deleting or otherwise disabling the software installed in GoPhones;

   e.   facilitating or in any way assisting other persons or entities who Defendants know or should know are engaged in any of the acts prohibited under this Permanent Injunction, including, without limitation, the buying and/or selling of unlocked GoPhones; and

   f.   knowingly using the AT&T or GoPhone Marks or any mark owned or used by AT&T, or that is likely to cause confusion with AT&T's marks, without AT&T's prior written authorization.

10.   The address of Defendant Miranda Holdings Corp., a Florida corporation, d/b/a Incomtel is 10900 NW 21st Street, Suite 170, Miami, Florida 33172.

11.   The address of Defendant Jeremy Lara, individually and d/b/a Incomtel is 10900 NW 21st Street, Suite 170, Miami, Florida 33172.

12.   The address of Defendant Home Secrets Corporation, a Florida corporation, is 7962 N.W. 116th Street, Miami, Florida 33178.

-6-

13.   The address of Defendant Josue Leon is 7962 NW 16th Street, Miami, FL 33178.

14.   The address of Plaintiffs AT&T Mobility LLC and AT&T Mobility II LLC is 5565 Glenridge Connector, Suite 1700, Atlanta, GA 30342.

15.   The Court retains jurisdiction over this matter and the parties to this action in order to enforce any violation of the terms of this Permanent Injunction by a finding of contempt and an order for payment of compensatory damages to AT&T in accordance with paragraph 7 of this Judgment.

16.   The prevailing party in any proceeding to enforce compliance with the terms of this Permanent Injunction shall be entitled to an award of its attorneys' fees and costs.

17.   This case is now CLOSED.  All pending motions are DENIED as moot.

DONE AND ORDERED in Chambers at Miami, Florida, this 9th day of July, 2008.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record

-7-

Exh. C - pg. 78

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| AT&T MOBILITY LLC and AT&T | § | |
| INTELLECTUAL PROPERTY II, L.P, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CASE NO. 3:08-CV-1462-M |
| v. | § | |
| | § | |
| AMINABANA M. HUSSAIN, a.k.a. | § | |
| AMINABANU M. HUSSAIN, individually, and | § | |
| d.b.a. WIRELESS SUPPLY; MANSOOR ALI | § | |
| M. HUSSAIN; NAVROZ ALI HUSSAIN; | § | |
| JOHN DOES 1-50; XYZ COMPANIES 1-50, | § | |
| | § | |
| Defendants. | | |

## AGREED FINAL JUDGMENT AND PERMANENT INJUNCTION
## AGAINST DEFENDANTS

Plaintiffs AT&T Mobility LLC and AT&T Intellectual Property II L.P. (collectively "AT&T"), brought the above-captioned lawsuit against Defendants, Aminabana M. Hussain, a.k.a. Aminabanu M. Hussain, individually, and d.b.a. Wireless Supply, Mansoor Ali M. Hussain, and Navroz Ali Hussain (collectively referred to as "Defendants"), alleging that Defendants are engaged in an unlawful enterprise involving the acquisition, sale, and alteration of large quantities of AT&T and GoPhone® branded wireless telephones ("GoPhones" or "Phones") purchased from retail outlets, the solicitation and payment of others to bulk purchase Phones for Defendants' benefit, computer hacking and erasing or otherwise disabling software installed in the Phones, or selling the Phones to others who disable the software, and ultimately selling or facilitating the sale of the altered Phones as new under the AT&T trademarks for unauthorized use outside of the AT&T wireless system for profit (the "Illicit Bulk Retail Scheme").

AT&T GoPhones are sold subject to terms and conditions ("Terms and Conditions")

14025612.1

which conspicuously restrict and limit the sale and use of the GoPhones. These Terms and Conditions are set forth in printed inserts that are included in the packaging with every AT&T GoPhone and are posted on AT&T's website. The Terms and Conditions and language on the GoPhone packaging constitute a valid binding contract.

AT&T asserts that Defendants have violated the Terms and Conditions by, *inter alia*, purchasing AT&T GoPhones with the intent that such phones will not be activated and used on AT&T's service, but instead with the intent to improperly unlock, repackage, and resell the phones, and by otherwise using the GoPhones.

As a result of Defendants' alleged involvement in the Illicit Bulk Retail Scheme, AT&T asserted claims against Defendants for breach of contract; infringement of federally registered trademarks under 15 U.S.C. § 1114; federal trademark dilution; federal trademark infringement and false advertising under 15 U.S.C. § 1125(a)(1)(A) and (B); unfair competition under Texas common law; contributory trademark infringement; tortious interference with business relationships and prospective advantages; tortious interference with contract; harm to AT&T's goodwill and business reputation; civil conspiracy; and unjust enrichment.

Based on the respective positions advocated by the parties and having reviewed the Complaint and file and being otherwise duly and fully advised in the premises, it is hereby

**ORDERED, ADJUDGED** and **DECREED** that:

1.    This Court has jurisdiction over all the parties and all of the claims set forth in AT&T's complaint.

2.    The Court finds that AT&T has the right to use and enforce said rights in the stylized AT&T and GOPHONE marks, which are used in connection with telecommunications products and services, as depicted below:

14025612.1

Exh. C - pg. 80





AT&T uses the AT&T Marks on and in connection with its telecommunications products and services. The AT&T and GOPHONE marks are valid, distinctive, protectable, famous, have acquired secondary meaning, and are associated exclusively with AT&T.

3.    The Court finds that Defendants' involvement in the Illicit Bulk Retail Scheme constitutes breach of contract; infringement of federally registered trademarks under 15 U.S.C. § 1114; federal trademark dilution; federal trademark infringement and false advertising under 15 U.S.C. § 1125(a)(1)(A) and (B); unfair competition under Texas common law; contributory trademark infringement; tortious interference with business relationships and prospective advantages; tortious interference with contract; harm to AT&T's goodwill and business reputation; civil conspiracy; and unjust enrichment.

4.    The Court finds that the Terms and Conditions and the language on the GoPhone packaging constitute a valid binding contract enforceable against Defendants. The Court finds that (a) facilitating others to use GoPhones in conjunction with service providers other than AT&T, and (b) tampering with or altering, or facilitating or assisting others to tamper with or alter, GoPhones or the GoPhones' software constitute independent breaches of contract for which AT&T is entitled to relief.

5.    The Court further finds that Defendants' participation in the Illicit Bulk Retail Scheme has caused substantial and irreparable harm to AT&T for which there is no adequate

3 of 7

Exh. C - pg. 81

remedy at law, and will continue to cause substantial and irreparable harm to AT&T unless enjoined.

6.    On review and consideration of all relevant factors, AT&T is entitled to damages and injunctive relief on the claims as set forth in the Complaint.

7.    Final judgment is hereby entered, jointly and severally, against Defendants, Aminabana M. Hussain, a.k.a. Aminabanu M. Hussain, individually, and d.b.a. Wireless Supply, Mansoor Ali M. Hussain, and Navroz Ali Hussain and in favor of the Plaintiffs AT&T Mobility LLC and AT&T Intellectual Property II L.P., on all claims set forth in AT&T's complaint in the principal amount of FIVE MILLIONS DOLLARS AND ZERO CENTS ($5,000,000.00 (U.S.)), which shall bear interest at the legal rate, for which let execution issue forthwith.

8.    If, after the Judgment is entered, it is discovered that either Defendant to this action have violated the terms of this Permanent Injunction, the Court will order the payment of compensatory damages to AT&T in the amount of Five Thousand Dollars and No Cents ($5,000.00 (U.S.)) for each AT&T phone and/or item of GoPhone-related materials or accessories purchased, sold, unlocked, reflashed, altered, advertised, solicited and/or shipped. The Court finds that these amounts are compensatory and reasonable estimations of the minimum damages suffered by AT&T for such a breach and will serve to compensate AT&T for its losses in the event a Defendant violates the terms of this Permanent Injunction.

9.    Aminabana M. Hussain, a.k.a. Aminabanu M. Hussain, individually, and d.b.a. Wireless Supply, Mansoor Ali M. Hussain, and Navroz Ali Hussain, and each and all of his, her and its past and present respective officers, directors, successors, assigns, parents, subsidiaries, affiliates, related companies, predecessors-in-interest, agents, employees, heirs, personal representatives, beneficiaries, relatives, and all other persons or entities acting or purporting to

14025612.1

act for him/her/it or on his/her/its behalf, including but not limited to any corporation, partnership, proprietorship or entity of any type that is in any way affiliated or associated with any Defendant or any Defendant's representatives, agents, assigns, parent entities, employees, independent contractors, associates, servants, affiliated entities, and any and all persons and entities in active concert and participation with any Defendant who receive notice of this Order, shall be and hereby are PERMANENTLY ENJOINED from:

  a. purchasing, selling, unlocking, reflashing, altering, advertising, soliciting and/or shipping, directly or indirectly, any AT&T GoPhones or GoPhone-related materials or accessories, including activation kits, PIN numbers, user guides, and SIM cards;

  b. purchasing, selling, unlocking, reflashing, altering, advertising, soliciting and/or shipping, directly or indirectly, any AT&T wireless handset that Defendants know or should know bears any AT&T or GoPhone Trademark, any other trademark owned or used by AT&T.  Unless expressly authorized by AT&T in writing, Defendants are enjoined from purchasing and/or selling, directly or indirectly, all models of GoPhones currently offered for sale by AT&T or that may be offered for sale in the future, as listed and updated from time to time on AT&T's website: http://www.att.com, regardless of whether such devices are in or out of their original packaging, or whether "locked," "unlocked," or otherwise modified in any way by any person;

  c. accessing, altering, erasing, tampering with, deleting or otherwise disabling the software contained in any GoPhone;

14025612.1

d.  facilitating or in any way assisting other persons or entities who Defendants know or should know are engaged in unlocking GoPhones and/or hacking, altering, erasing, tampering with, deleting or otherwise disabling the software installed in GoPhones;

e.  facilitating or in any way assisting other persons or entities who Defendants know or should know are engaged in any of the acts prohibited under this Permanent Injunction, including, without limitation, the buying and/or selling of unlocked GoPhones; and

f.  knowingly using the AT&T or GoPhone Marks or any mark owned or used by AT&T, or that is likely to cause confusion with AT&T's marks, without AT&T's prior written authorization.

10.  The address of Defendant Aminabanu M. Hussain is 4320 Fairway Drive # 4202, Carrollton, Texas, 75010.

11.  The address of Defendant Wireless Supply is 4320 Fairway Drive # 4202, Carrollton, Texas, 75010.

12.  The address of Defendant Mansoor Ali M. Hussain is 4320 Fairway Drive # 4202, Carrollton, Texas, 75010.

13.  The address of Defendant Navroz Ali Hussain is 4320 Fairway Drive # 4202, Carrollton, Texas, 75010.

14.  The address of Plaintiffs AT&T Mobility LLC and AT&T Intellectual Property II L.P. is 5565 Glenridge Connector, Suite 1700, Atlanta, GA 30342.

15.  The Court retains jurisdiction over this matter and the parties to this action in order to enforce any violation of the terms of this Permanent Injunction by a finding of contempt

14025612.1

Exh. C - pg. 84

and an order for payment of compensatory damages to AT&T in accordance with paragraph 8 of this Judgment.

16.     The prevailing party in any proceeding to enforce compliance with the terms of this Permanent Injunction shall be entitled to an award of its attorneys' fees and costs.

DONE AND ORDERED in Dallas, Texas, this 3rd day of October, 2008.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

Copies furnished to:

James B. Baldinger, *counsel for Plaintiffs AT&T Mobility LLC and AT&T Intellectual Property II L.*

David R. Gibson, *counsel for Defendants, Aminabanu M. Hussain, individually, and d.b.a. Wireless Supply, Mansoor Ali M. Hussain, and Navroz Ali Hussain*

14025612.1

# CASE CLOSED

**CASE NUMBER:    3:08-CV-1462-M**

**DATE:    October 3, 2008**

**TRIAL:  YES _____    NO xxxxx**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| T-MOBILE USA, INC, a | § | |
| a Delaware Corporation, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3: 07-CV-1661-B |
| | § | |
| PHONES-N-PHONES, INC., et al. | § | |
| | § | |
| Defendants. | § | |

## FINAL JUDGMENT AND PERMANENT INJUNCTION AGAINST
## DEFENDANTS PHONES-N-PHONES, INC. AND ASPAC, INC.

Plaintiff T-Mobile USA, Inc. ("T-Mobile"), brought the above-captioned lawsuit against, inter alia, Defendants Phones-N-Phones, Inc., Celina Sayani, Aspac, Inc., Murad Velani, and Naushad M. Sayani, asserting that Defendants are engaged in an unlawful enterprise involving the acquisition, sale, and counterfeiting of large quantities of T-Mobile prepaid wireless telephones ("T-Mobile Prepaid Handsets" or "Handsets") that causes substantial and irreparable harm to T-Mobile (the "Pre-Paid Phone Bulk Resale Venture").

T-Mobile asserts that Defendants acquire bulk quantities of T-Mobile Prepaid Handsets from retail stores, such as Wal-Mart or Target. T-Mobile further asserts that Defendants solicit others to purchase T-Mobile Prepaid Handsets in bulk for their own benefit. T-Mobile asserts that Defendants acquire the T-Mobile Prepaid Handsets with the actual or constructive knowledge and intent that the Handsets will not be activated for use on the T-Mobile prepaid wireless network and that the Handsets will be computer-hacked. The purpose of this hacking,

known as "unlocking," is to erase, remove and/or disable proprietary software installed in the Handsets, which enables the use of the T-Mobile Prepaid Handsets exclusively on T-Mobile's prepaid wireless system. T-Mobile asserts that the unlocked Handsets are then trafficked and resold overseas, at a premium, under the T-Mobile trademarks for unauthorized use outside of Plaintiff's prepaid wireless system.

T-Mobile asserts that its Prepaid Handsets are sold subject to terms and conditions ("Terms and Conditions") which restrict and limit the sale and use of T-Mobile Prepaid Handsets. These Terms and Conditions are set forth in printed inserts that are included in the packaging with every T-Mobile Phone, and are also available to the public on T-Mobile's website. The existence of Terms and Conditions is contained in printed warnings that are placed on the outside of the retail packaging of the Handsets. T-Mobile asserts the Terms and Conditions and language on the packaging constitute a valid binding contract.

The Terms and Conditions provide that purchasers of T-Mobile Prepaid Handsets agree, among other things: not to use the Handsets for a fraudulent purpose that "negatively impact[s] [T-Mobile's] customers, employees, business, ability to provide quality service, [and] reputation." T-Mobile Terms and Conditions, 7.

As a result of the Defendants' actions, T-Mobile has asserted claims against Defendants for breach of contract; federal trademark infringement and false advertising under 15 U.S.C. § 1125(a)(1)(A) and (B); unfair competition; contributory trademark infringement; tortious interference with business relationships and prospective advantages; harm to T-Mobile's goodwill and business reputation; civil conspiracy; and unjust enrichment. The Court, having reviewed

the Verified Amended Complaint and file and being otherwise duly advised in the premises, it is hereby

ORDERED, ADJUDGED and DECREED that:

1.    This Court has jurisdiction over the parties and all of the claims set forth in T-Mobile's Complaint.

2.    The Court finds that T-Mobile has the right to use and enforce said rights in the standard character mark T-Mobile and a stylized T-Mobile Mark (collectively, the "T-Mobile Marks") as depicted below:

$$\text{T}\cdot\cdot\text{Mobile}\cdot$$

T-Mobile uses the T-Mobile Marks on and in connection with its telecommunications products and services.  If proven that Defendants' use of the T-Mobile Marks was without authorization, such use has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of the counterfeit products, and the relationship between T-Mobile and Defendants.  If Plaintiff's allegations of Defendants' activities were proven, such actions would constitute false designation of origin, false descriptions and representations, and false advertising in commerce in violation of § 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) and (B).  Defendants knew or should have known that T-Mobile is the exclusive licensee of the T-Mobile Marks, therefore, if Plaintiff's allegations of Defendants' use were proven, Defendants did not and do not have any legal right to use the T-Mobile Marks on infringing products.

3

3.    The Court finds that if the allegations in Plaintiff's Complaint regarding the Terms and Conditions and the language on the packaging were proven, they would constitute a valid binding contract enforceable against Defendants. The Court finds that facilitating others to use T-Mobile Prepaid Handsets in conjunction with service providers other than T-Mobile; tampering with or altering T-Mobile Prepaid Handsets or the Handsets' software; and/or entering unauthorized PIN numbers in the Handsets for purposes of unlocking the Handsets or facilitating others in such acts, constitute independent breaches of contract for which T-Mobile is entitled to relief.

4.    The Court finds that the conduct set forth in the Complaint, if proven, would violate the following statutes: 15 U.S.C. § 1125(a)(1)(A) and (B) (federal trademark infringement and false advertising). The Court further finds that the conduct alleged in the Complaint, if proven, would constitute unfair competition under Texas common law; contributory trademark infringement; tortious interference with T-Mobile's business relationships and prospective advantages; civil conspiracy; and unjust enrichment and has caused substantial and irreparable harm to T-Mobile, and would continue to cause substantial and irreparable harm to T-Mobile unless enjoined.

5.    T-Mobile has suffered damages, including loss of goodwill and damage to its reputation, as a result of Defendants' conduct. T-Mobile is entitled to injunctive relief on the claims set forth in the Verified Amended Complaint.

6.    Final judgment is hereby entered jointly and severally against Defendants Phones-N-Phones, Inc. and Aspac, Inc. and in favor of the Plaintiff, T-Mobile USA, Inc., on all

4

of the claims set forth in T-Mobile's Verified Amended Complaint in the principal amount of Six

Million Four Hundred Ninety-One Thousand One Hundred Fifteen Dollars (US $6,491,115.00)

that shall bear interest at the legal rate for which let execution issue forthwith.

7.      Further, Phones-N-Phones, Inc. and Aspac, Inc. and their successors, assigns, parents,

subsidiaries, affiliates, related companies, predecessors-in-interest, representatives, agents,

employees, independent contractors, servants, and any and all persons and entities, in active

concert and participation with either of them, who receive notice of this order, shall be and

hereby are PERMANENTLY ENJOINED from:

      a.      Purchasing, selling and/or shipping any wireless mobile device acquired by any

      means not expressly authorized by T-Mobile that they know or should know bears the

      T-Mobile Marks or any marks likely to cause confusion with the T-Mobile Marks or any

      other trademark, service mark, trade name and/or trade dress owned or used by T-Mobile

      now or in the future (collectively, the "T-Mobile Handsets"). Specifically, they are

      enjoined from purchasing, selling, and/or shipping, directly or indirectly, all models of

      T-Mobile Handsets, regardless of whether such devices are new or used, whether in or out

      of their original packaging, or whether "locked," "unlocked," or otherwise modified in any

      way by any person unless expressly authorized by T-Mobile. This injunction applies to all

      currently available T-Mobile Handsets and those that may be offered for sale in the

      future.

      b.      unlocking of any T-Mobile Handset;

5

  c.  supplying T-Mobile Handsets not acquired in a manner expressly authorized by T-Mobile to or facilitating or in any way assisting other persons or entities who they know or should know are engaged in unlocking T-Mobile Handsets and/or hacking, altering, erasing, tampering with, deleting or otherwise disabling the software installed in T-Mobile Handsets;

  d.  supplying T-Mobile Handsets not acquired in a manner expressly authorized by T-Mobile to, or facilitating or assisting in any way, persons or entities who they know or should know are engaged in any of the acts prohibited under this permanent injunction including, without limitation, the buying, selling and/or shipping of locked or unlocked T-Mobile Handsets; and

  e.  knowingly using the T-Mobile Marks or any other trademark, service mark, trade name and/or trade dress owned or used by T-Mobile now or in the future, without T-Mobile's prior written authorization.

8.  The purchase, sale or shipment of any T-Mobile Handsets not acquired in a manner expressly authorized by T-Mobile without T-Mobile's prior written consent within and/or outside of the continental United States is and shall be deemed a presumptive violation of this permanent injunction.

9.  The last known address of Defendant Phones-N-Phones, Inc., a Texas corporation, is 1620 N. I-35E, Suite 307, Carrollton, Texas 75006.

10.  The last known address of Defendant Aspac, Inc., a Texas corporation, is 1620 N. I-35E, Suite 307, Carrollton, Texas 75006.

6

11.    The address of Plaintiff, T-Mobile USA, Inc. is 12920 S.E. 38th Street, Bellevue, Washington 98006.

12.    Defendants waive their right to appeal from the entry of this Final Judgment.

13.    The Court retains jurisdiction over this matter and the parties to this action in order to enforce the terms of this Final Judgment and Permanent Injunction.

14.    The prevailing party in any proceeding to enforce compliance with the terms of this Final Judgment and Permanent Injunction shall be entitled to an award of its attorneys' fees and costs.

15.    The Court hereby finds, pursuant to Fed. R. Civ. P. 54(b), that there is no just reason for delay and orders that Judgment shall be entered against Defendants as set forth herein.

_____    SO ORDERED.

SIGNED: July 30, 2008

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

7

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| T-MOBILE USA, INC, a a Delaware Corporation, | § § § | |
| Plaintiff, | § § | |
| V. | § § | CIVIL ACTION NO. 3: 07-CV-1661-B |
| PHONES-N-PHONES, INC., et al. | § § | |
| Defendants. | § | |

## PERMANENT INJUNCTION AGAINST DEFENDANTS
## CELINA SAYANI, NAUSHAD SAYANI, AND MURAD VELANI

Plaintiff T-Mobile USA, Inc. ("T-Mobile"), brought the above-captioned lawsuit against, inter alia, Defendants Phones-N-Phones, Inc., Celina Sayani, Aspac, Inc., Murad Velani, and Naushad M. Sayani, asserting that Defendants are engaged in an unlawful enterprise involving the acquisition, sale, and counterfeiting of large quantities of T-Mobile prepaid wireless telephones ("T-Mobile Prepaid Handsets" or "Handsets") that causes substantial and irreparable harm to T-Mobile.

T-Mobile asserts that Defendants acquire bulk quantities of T-Mobile Prepaid Handsets from retail stores, such as Wal-Mart or Target. T-Mobile further asserts that Defendants solicit others to purchase T-Mobile Prepaid Handsets in bulk for their own benefit. T-Mobile asserts that Defendants acquire the T-Mobile Prepaid Handsets with the actual or constructive knowledge and intent that the Handsets will not be activated for use on the T-Mobile prepaid wireless network and that the Handsets will be computer-hacked. The purpose of this hacking, known as "unlocking," is to erase, remove and/or disable proprietary software installed in the Handsets, which enables the use of the

T-Mobile Prepaid Handsets exclusively on T-Mobile's prepaid wireless system. T-Mobile asserts that the unlocked Handsets are then trafficked and resold overseas, at a premium, under the T-Mobile trademarks for unauthorized use outside of Plaintiff's prepaid wireless system.

T-Mobile asserts that its Prepaid Handsets are sold subject to terms and conditions ("Terms and Conditions") which restrict and limit the sale and use of T-Mobile Prepaid Handsets. These Terms and Conditions are set forth in printed inserts that are included in the packaging with every T-Mobile Phone, and are also available to the public on T-Mobile's website. The existence of Terms and Conditions is contained in printed warnings that are placed on the outside of the retail packaging of the Handsets. T-Mobile asserts the Terms and Conditions and language on the packaging constitute a valid binding contract.

The Terms and Conditions provide that purchasers of T-Mobile Prepaid Handsets agree, among other things: not to use the Handsets for a fraudulent purpose that "negatively impact[s] [T-Mobile's] customers, employees, business, ability to provide quality service, [and] reputation." T-Mobile Terms and Conditions, 7.

As a result of the Defendants' actions, T-Mobile has asserted claims against Defendants for breach of contract; federal trademark infringement and false advertising under 15 U.S.C. § 1125(a)(1)(A) and (B); unfair competition; contributory trademark infringement; tortious interference with business relationships and prospective advantages; harm to T-Mobile's goodwill and business reputation; civil conspiracy; and unjust enrichment. The Court, having reviewed the Verified Amended Complaint and file and being otherwise duly advised in the premises, it is hereby **ORDERED, ADJUDGED and DECREED that:**

1.      This Court has jurisdiction over the parties and all of the claims set forth in T-Mobile's Complaint.

2.    The Court finds that T-Mobile has the right to use and enforce said rights in the standard character mark T-Mobile and a stylized T-Mobile Mark (collectively, the "T-Mobile Marks") as depicted below:

**T· ·Mobile·**

T-Mobile uses the T-Mobile Marks on and in connection with its telecommunications products and services. If proven that Defendants' use of the T-Mobile Marks was without authorization, such use has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of the counterfeit products, and the relationship between T-Mobile and Defendants. If Plaintiff's allegations of Defendants' activities were proven, such actions would constitute false designation of origin, false descriptions and representations, and false advertising in commerce in violation of § 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) and (B). Defendants knew or should have known that T-Mobile is the exclusive licensee of the T-Mobile Marks, therefore, if Plaintiff's allegations of Defendants' use were proven, Defendants did not and do not have any legal right to use the T-Mobile Marks on infringing products.

3.    The Court finds that if the allegations in Plaintiff's Complaint regarding the Terms and Conditions and the language on the packaging were proven, they would constitute a valid binding contract enforceable against Defendants. The Court finds that facilitating others to use T-Mobile Prepaid Handsets in conjunction with service providers other than T-Mobile; tampering with or altering T-Mobile Prepaid Handsets or the Handsets' software; and/or entering unauthorized PIN numbers in the Handsets for purposes of unlocking the Handsets or facilitating others in such acts, constitute independent breaches of contract for which T-Mobile is entitled to relief.

3

4.    The Court finds that the conduct set forth in the Complaint, if proven, would violate the following statutes: 15 U.S.C. § 1125(a)(1)(A) and (B) (federal trademark infringement and false advertising). The Court further finds that the conduct alleged in the Complaint, if proven, would constitute unfair competition under Texas common law; contributory trademark infringement; tortious interference with T-Mobile's business relationships and prospective advantages; civil conspiracy; and unjust enrichment and has caused substantial and irreparable harm to T-Mobile, and would continue to cause substantial and irreparable harm to T-Mobile unless enjoined.

5.    T-Mobile has suffered damages, including loss of goodwill and damage to its reputation, as a result of Defendants' conduct. T-Mobile is entitled to injunctive relief on the claims set forth in the Verified Amended Complaint.

6.    Celina Sayani, Murad Velani, and Naushad M. Sayani and their successors, assigns, parents, subsidiaries, affiliates, related companies, predecessors-in-interest, representatives, agents, employees, independent contractors, servants, and any and all persons and entities, including relatives and associates, in active concert and participation with either of them, who receive notice of this order, shall be and hereby are PERMANENTLY ENJOINED from:

    a.    Purchasing, selling and/or shipping any wireless mobile device acquired by any means not expressly authorized by T-Mobile that they know or should know bears the T-Mobile Marks or any marks likely to cause confusion with the T-Mobile Marks or any other trademark, service mark, trade name and/or trade dress owned or used by T-Mobile now or in the future (collectively, the "T-Mobile Handsets"). Specifically, they are enjoined from purchasing, selling, and/or shipping, directly or indirectly, all models of T-Mobile Handsets, regardless of whether such devices are new or used, whether in or out of their original

4

packaging, or whether "locked," "unlocked," or otherwise modified in any way by any person unless expressly authorized by T-Mobile. This injunction applies to all currently available T-Mobile Handsets and those that may be offered for sale in the future.

b.    unlocking of any T-Mobile Handset;

c.    supplying T-Mobile Handsets not acquired in a manner expressly authorized by T-Mobile to or facilitating or in any way assisting other persons or entities who they know or should know are engaged in unlocking T-Mobile Handsets and/or hacking, altering, erasing, tampering with, deleting or otherwise disabling the software installed in T-Mobile Handsets;

d.    supplying T-Mobile Handsets not acquired in a manner expressly authorized by T-Mobile to, or facilitating or assisting in any way, persons or entities who they know or should know are engaged in any of the acts prohibited under this permanent injunction including, without limitation, the buying, selling and/or shipping of locked or unlocked T-Mobile Handsets; and

e.    knowingly using the T-Mobile Marks or any other trademark, service mark, trade name and/or trade dress owned or used by T-Mobile now or in the future, without T-Mobile's prior written authorization.

7.    The purchase, sale or shipment of any T-Mobile Handsets not acquired in a manner expressly authorized by T-Mobile without T-Mobile's prior written consent within and/or outside of the continental United States is and shall be deemed a presumptive violation of this permanent injunction.

8.    The address of Plaintiff, T-Mobile USA, Inc. is 12920 S.E. 38th Street, Bellevue, Washington

5

98006.

9.      The last known address of Defendant Celina Sayani is 4325 Rice Lane, Carrollton, Texas 75010.

10.      The last known address of Defendant Naushad M. Sayani is 4325 Rice Lane, Carrollton, Texas 75010.

11.      The last known address of Defendant Murad Velani is 3620 Huffines Boulevard, Carrollton, Texas 75010.

12.      Defendants waive their right to appeal from the entry of this Final Judgment.

13.      The Court retains jurisdiction over this matter and the parties to this action in order to enforce the terms of this Permanent Injunction.

14.      The prevailing party in any proceeding to enforce compliance with the terms of this Permanent Injunction shall be entitled to an award of its attorneys' fees and costs.

15.      The Court hereby finds, pursuant to Fed. R. Civ. P. 54(b), that there is no just reason for delay and orders that Judgment shall be entered against Defendants as set forth herein.

_____SO ORDERED.

SIGNED: July 30, 2008

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

6

Exh. C - pg. 99

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| T-MOBILE USA, INC., a<br>Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>RAFIQ WAZIR ALI, individually and d/b/a<br>FONE XCHANGE, and various XYZ<br>COMPANIES 1-50 and JOHN OR JANE<br>DOES 1-50 (UNIDENTIFIED),<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No: 4:08-cv-01260<br><br>JURY TRIAL DEMAND |

### FINAL JUDGMENT AND PERMANENT INJUNCTION AGAINST
### DEFENDANT RAFIQ WAZIR ALI, INDIVIDUALLY AND D/B/A FONE XCHANGE

Plaintiff T-Mobile USA, Inc. ("T-Mobile"), brought the above-captioned lawsuit against, *inter alia*, Defendant Rafiq Wazir Ali, individually and d/b/a Fone Xchange, asserting that Defendant is engaged in an unlawful enterprise involving the acquisition, sale, and counterfeiting of large quantities of T-Mobile prepaid wireless telephones ("T-Mobile Prepaid Handsets" or "Handsets") that causes substantial and irreparable harm to T-Mobile (the "Subsidy Theft Scheme").

T-Mobile asserts that Defendant perpetrates the Subsidy Theft Scheme by acquiring bulk quantities of T-Mobile Prepaid Handsets from retail stores such as Wal-Mart or Target. T-Mobile further asserts that Defendant solicits others to purchase T-Mobile Prepaid Handsets in bulk for his own benefit. T-Mobile asserts that Defendant acquires the T-Mobile Prepaid Handsets with the actual or constructive knowledge and intent that the Handsets will not be activated for use on the T-Mobile prepaid wireless network and that the Handsets will be computer-hacked. The purpose of this hacking, known as "unlocking," is to erase, remove

FINAL JUDGMENT AND PERMANENT INJUNCTION AGAINST
DEFENDANT RAFIQ WAZIR ALI, INDIVIDUALLY AND D/B/A FONE XCHANGE          Page 1

and/or disable proprietary software installed in the Handsets, which enables the use of the T-Mobile Prepaid Handsets exclusively on T-Mobile's prepaid wireless system. T-Mobile asserts that the unlocked Handsets are then trafficked and resold overseas, at a premium, under the T-Mobile trademarks for unauthorized use outside of the T-Mobile prepaid wireless system.

T-Mobile Prepaid Handsets are sold subject to terms and conditions ("Terms and Conditions") which restrict and limit the sale and use of T-Mobile Prepaid Handsets. These Terms and Conditions are set forth in printed inserts that are included in the packaging with every T-Mobile Phone, and are also available to the public on T-Mobile's website. The Terms and Conditions are referenced in printed warnings that are placed on the outside of the retail packaging of the Handsets. The Terms and Conditions and language on the packaging constitute a valid binding contract.

Pursuant to the Terms and Conditions and the language on the packaging, purchasers of T-Mobile Prepaid Handsets agree, among other things: not to use the Handsets for a fraudulent purpose that "negatively impact[s] [T-Mobile's] customers, employees, business, ability to provide quality service, [and] reputation." T-Mobile Terms and Conditions, ¶ 7.

As a result of the Subsidy Theft Scheme, T-Mobile has asserted claims against Defendant for breach of contract; federal trademark infringement and false advertising under 15 U.S.C. § 1125(a)(1)(A) and (B); unfair competition under Texas common law; contributory trademark infringement; tortious interference with business relationships and prospective advantages; harm to T-Mobile's goodwill and business reputation under TEX. BUS. & COM. CODE ANN. § 16.29 (Vernon 2007); civil conspiracy; unjust enrichment; and conspiracy to induce breach of contract. The Court, having reviewed the Complaint and file and being otherwise duly advised in the premises, it is hereby

FINAL JUDGMENT AND PERMANENT INJUNCTION AGAINST
DEFENDANT RAFIQ WAZIR ALI, INDIVIDUALLY AND D/B/A FONE XCHANGE          Page 2

ORDERED, ADJUDGED and DECREED that:

1.    This Court has jurisdiction over the parties and all of the claims set forth in T-Mobile's Complaint.

2.    The Court finds that T-Mobile has the right to use and enforce said rights in the standard character mark T-Mobile and a stylized T-Mobile Mark (collectively, the "T-Mobile Marks") as depicted below:

$$\textbf{T}\cdot\cdot\text{Mobile}\cdot$$

T-Mobile uses the T-Mobile Marks on and in connection with its telecommunications products and services. Defendant's use of the T-Mobile Marks without authorization in connection with the Subsidy Theft Scheme has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of the counterfeit products, and the relationship between T-Mobile and Defendant.  Defendant's activities constitute false designation of origin, false descriptions and representations, and false advertising in commerce in violation of § 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) and (B).  Defendant knew or should have known that T-Mobile is the exclusive licensee of the T-Mobile Marks and that Defendant had no legal right to use the T-Mobile Marks on infringing products.

3.    The Court finds that the Terms and Conditions and the language on the packaging constitute a valid binding contract enforceable against Defendant.   The Court finds that facilitating others to use T-Mobile Prepaid Handsets in conjunction with service providers other than T-Mobile; tampering with or altering T-Mobile Prepaid Handsets or the Handsets' software; and/or entering unauthorized PIN numbers in the Handsets for purposes of unlocking the Handsets or facilitating others in such acts, constitute independent breaches of contract for which T-Mobile is entitled to relief.

FINAL JUDGMENT AND PERMANENT INJUNCTION AGAINST
DEFENDANT RAFIQ WAZIR ALI, INDIVIDUALLY AND D/B/A FONE XCHANGE          Page 3

4.      The Court finds that the conduct alleged in the Complaint, if proven would violate the following statutes: 15 U.S.C. § 1125(a)(1)(A) and (B) (federal trademark infringement and false advertising) and TEX. BUS. & COM. CODE ANN. § 16.29 (Vernon 2007) (harm to T-Mobile's goodwill and business reputation). The Court further finds that the conduct alleged in the Complaint, if proven, would constitute unfair competition under Texas common law; contributory trademark infringement; tortious interference with T-Mobile's business relationships and prospective advantages; civil conspiracy; unjust enrichment; and conspiracy to induce breach of contract, and has caused substantial and irreparable harm to T-Mobile, and would continue to cause substantial and irreparable harm to T-Mobile unless enjoined.

5.      T-Mobile has suffered damages, including loss of goodwill and damage to its reputation, as a result of Defendant's conduct. T-Mobile is entitled to injunctive relief on the claims set forth in the Complaint.

6.      Final judgment is hereby entered against Defendant Rafiq Wazir Ali, individually and d/b/a Fone Xchange, and in favor of the Plaintiff, T-Mobile USA, Inc., on all of the claims set forth in T-Mobile's Complaint.

7.      Rafiq Wazir Ali, individually and d/b/a Fone Xchange, and his successors, assigns, parents, subsidiaries, affiliates, related companies, predecessors-in-interest, representatives, agents, employees, independent contractors, servants, and any and all persons and entities, including his relatives and associates, in active concert and participation with him, who receive notice of this order, shall be and hereby are PERMANENTLY ENJOINED from:

a.      Purchasing, selling and/or shipping any wireless mobile device that they know or should know bears the T-Mobile Marks or any marks likely to cause confusion with the T-Mobile Marks or any other trademark, service mark, trade name and/or trade dress owned or used by T-Mobile now or in the future

FINAL JUDGMENT AND PERMANENT INJUNCTION AGAINST
DEFENDANT RAFIQ WAZIR ALI, INDIVIDUALLY AND D/B/A FONE XCHANGE                    Page 4

(collectively, the "T-Mobile Handsets"). Specifically, they are enjoined from purchasing, selling, and/or shipping, directly or indirectly, all models of T-Mobile Handsets, regardless of whether such devices are new or used, whether in or out of their original packaging, or whether "locked," "unlocked," or otherwise modified in any way by any person. This injunction applies to all currently available T-Mobile Handsets and those that may be offered for sale in the future.

b.    unlocking of any T-Mobile Handset;

c.    supplying T-Mobile Handsets to or facilitating or in any way assisting other persons or entities who they know or should know are engaged in unlocking T-Mobile Handsets and/or hacking, altering, erasing, tampering with, deleting or otherwise disabling the software installed in T-Mobile Handsets;

d.    supplying T-Mobile Handsets to, or facilitating or assisting in any way, persons or entities who they know or should know are engaged in any of the acts prohibited under this permanent injunction including, without limitation, the buying, selling and/or shipping of locked or unlocked T-Mobile Handsets; and

e.    knowingly using the T-Mobile Marks or any other trademark, service mark, trade name and/or trade dress owned or used by T-Mobile now or in the future, without T-Mobile's prior written authorization.

8.    The purchase, sale or shipment of any T-Mobile Handsets without T-Mobile's prior written consent within and/or outside of the continental United States is and shall be deemed a presumptive violation of this permanent injunction.

9.    The last known address of Rafiq Wazir Ali is 3202 San Salvador Place, Katy, Texas 77494.

10. The address of Plaintiff, T-Mobile USA, Inc. is 12920 S.E. 38th Street, Bellevue, Washington 98006.

11. Defendant waives his right to appeal from the entry of this Final Judgment.

12. The Court retains jurisdiction over this matter and the parties to this action in order to enforce the terms of this Permanent Injunction by a finding of contempt and an order for payment of compensatory damages to T-Mobile USA, Inc. in an amount of not less than $5,000 for each T-Mobile Handset that a Defendant is found to have purchased, sold, altered, unlocked or shipped in violation of this injunction or a single damages award in the amount of $1,000,000.00, which ever is greater.

13. The prevailing party in any proceeding to enforce compliance with the terms of this Permanent Injunction shall be entitled to an award of its attorneys' fees and costs.

14. The Court hereby finds, pursuant to Fed. R. Civ. P. 54(b), that there is no just reason for delay and orders that Judgment shall be entered against Defendant as set forth herein.

Signed on this _____ day of _____, 2008.

_____
UNITED STATES DISTRICT JUDGE

Copies furnished to:
James B. Baldinger, *counsel for Plaintiff*
Bassey Akpaffiong, *counsel for Defendant*

FINAL JUDGMENT AND PERMANENT INJUNCTION AGAINST
DEFENDANT RAFIQ WAZIR ALI, INDIVIDUALLY AND D/B/A FONE XCHANGE    Page 6

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TRACFONE WIRELESS. INC..

     Plaintiff.

                             CASE NO.: 6:06-CV-01257-ORL-18-UAM

vs.

CLINTON RIEDEMAN d/b/a
LARRY'S CELL, LAWRENCE RIEDEMAN
d/b/a LARRY'S CELL, RIEDCOR. INC. d/b/a
LARRY'S CELL, and ROBIN KETCHAM
d/b/a LARRY'S CELL.

     Defendants.

_____/

## FINAL JUDGMENT AND PERMANENT INJUNCTION
## AGAINST DEFENDANT RIEDCOR, INC.

Plaintiff, TracFone Wireless, Inc. ("TracFone"), brought the above-captioned lawsuit

against Defendant, Riedcor, Inc. d/b/a Larry's Cell, ("Defendant"). asserting that Defendant was

engaged in an unlawful enterprise that involves the acquisition, sale and counterfeiting of large

quantities of TracFone prepaid wireless telephones ("TracFone Prepaid Phones" or "Phones")

purchased from various retail outlets such as Wal-Mart, Target and Sam's Club, the solicitation

and payment of others to bulk purchase TracFone Prepaid Phones for Defendant's benefit.

computer hacking and erasing or otherwise disabling the prepaid software installed in the

TracFone Prepaid Phones essential for consumers to access TracFone's prepaid wireless

network, or reselling the Phones to others who disable the software, and ultimately sell the

counterfeit Phones as new under incontestable TracFone trademarks for the unauthorized use

outside of the TracFone prepaid wireless system.

MLW2635271.2

TracFone asserted claims against the Defendant for circumvention of technological measures that control access to proprietary software and trafficking in services that circumvent technological measures protecting proprietary software under 17 U.S.C. § 1201, *et. seq.* as a violation of the Digital Millennium Copyright Act ("DMCA"), federal trademark infringement and unfair competition under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051, *et. seq.*, tortious interference with business relationships and prospective advantages business relationships between TracFone and its manufacturers, unfair competition and deceptive trade practices under § 501.204, Fla. Stat., and injury to business reputation and dilution of marks under § 495.151, Fla. Stat. Accordingly, it is hereby,

**ORDERED, ADJUDGED and DECREED** that:

1.     This Court has jurisdiction over all the parties and all of the claims set forth in TracFone's pleadings.

2.     The Court finds that TracFone owns all right, title, and interest in and to Incontestable United States Trademark Registration No. 2,114,692, issued November 18, 1997, for TracFone and Incontestable United States Trademark Registration No. 2,71,017, issued September 9, 2003, for TracFone (the "TracFone Trademarks"). The TracFone Trademarks are valid, incontestable, distinctive, protectable, famous, have acquired secondary meaning and are associated exclusively with TracFone.

3.     The Court finds that the Defendant has violated the following statutes: 17 U.S.C. § 1201 (circumvention of technological measures that control access to proprietary software under the DMCA and trafficking in services that circumvent technological measures protecting copyrighted software), 15 U.S.C. § 1114 (trademark infringement), 15 U.S.C. § 1125 (unfair competition), §§ 501.204 and 501.211, Fla. Stat. (unfair competition, deceptive trade practices

and false advertising) and § 495.151, Fla. Stat. (injury to business reputation and dilution of trademarks). The Court further finds that Defendant's conduct, alleged in the complaint, constitutes tortuous interference with TracFone's advantageous business relationship and has caused substantial harm to TracFone, and will continue to cause substantial harm to TracFone unless enjoined.

4.    On November 27, 2006, the Librarian of Congress, upon the recommendation of the Register of Copyrights, issued a Final Rule setting forth six (6) classes of copyrighted works that are exempt from the provisions of the DMCA, including:

> Computer programs in the form of firmware that enable wireless telephone handsets to connect to a wireless telephone communication network, when circumvention is accomplished for the sole purpose of lawfully connecting to a wireless telephone communication network.

71 Fed. Reg. 68472 (Nov. 27, 2006) (amending 37 C.F.R. § 201.40(b)). The Court finds that this new exemption does not absolve the Defendant of liability for his violations of the DMCA as alleged in Counts I through III of TracFone's complaint, because the Defendant's conduct as alleged in this case does not come within the scope of the new exemption. The Defendant's purchase and resale of the TracFone handsets was for the purpose of reselling those handsets for a profit, and not "for the sole purpose of lawfully connecting to a wireless telephone communication network." Because the exemption does not apply to the conduct alleged in this case, there is no need for the Court to address the validity of the exemption or the circumstances surrounding its enactment.

5.    TracFone has suffered damages, including loss of goodwill and damage to its reputation, as a result of the Defendant's conduct. TracFone is entitled to injunctive relief and damages on the claims set forth in the complaint.

MIA#2635272.2

Exh. C - pg. 108

6.    Final judgment is hereby entered against the Defendant, Riedcor, Inc., and in favor of the Plaintiff, TracFone Wireless, Inc., on all of the claims set forth in TracFone's complaint. Plaintiff, TracFone Wireless, Inc, a Florida corporation, 8390 NW 25th Street, Miami, FL 33122, shall recover from Defendant, Riedcor, Inc., a Florida corporation, 1722 West Acre Drive, St. Cloud, Florida 34769, the sum of TWO MILLION DOLLARS ($2,000,000.00), plus costs in the sum of one thousand two hundred dollars ($1,200.00), which shall bear interest at the legal rate, for which let execution issue.

7.    Defendant, Riedcor, Inc., and each and all of its representatives, agents, employees, independent contractors, relatives, associates, servants and any and all persons and entities in active concert and participation with Riedcor, Inc. who receive notice of this order shall be and hereby are PERMANENTLY ENJOINED from:

      a.  purchasing and/or selling any wireless mobile phone that they know or should know bears any TracFone Trademark, any other trademark owned or used by TracFone, or any other model of wireless mobile phone sold or marketed by TracFone ("TracFone Handsets"). Specifically, the Defendant is enjoined from purchasing and/or selling all models of TracFone Handsets currently offered for sale by TracFone, or that may be offered for sale in the future, as listed and updated from time to time on TracFone's website, http://tracfone.com/activation_pick_brand.jsp, including without limitation the following TracFone cellular handsets:

| | | |
|---|---|---|
| Motorola W370 | Motorola C155 | Nokia 1112 |
| Motorola C261 | Motorola C343 | Nokia 1600 |
| Motorola C139 | Nokia 2126 | Nokia 2285 |
| Motorola V176 | Nokia 2126i | LG 3280 |
| Motorola V170 | Nokia 2600 | LG CG225 |
| Motorola V171 | Nokia 1100 | LG 1500 |

   b.  reflashing and/or unlocking of any TracFone Handset;

   c.  accessing, altering, erasing, tampering with, deleting or otherwise disabling
       TracFone's proprietary prepaid cellular software contained within any and all
       models of TracFone Handsets:

   d.  facilitating or in any way assisting other persons or entities who Defendant knows
       or should know are engaged in reflashing and/or unlocking TracFone Handsets
       and/or hacking, altering, erasing, tampering with, deleting or otherwise disabling
       the software installed in TracFone Handsets:

   e.  facilitating or in any way assisting other persons or entities who Defendant knows
       or should know are engaged in any of the acts prohibited under this permanent
       injunction including, without limitation, the buying and/or selling of unlocked
       TracFone Handsets; and

   f.  knowingly using the TracFone Trademarks or any other trademark owned or used
       by TracFone, or that is likely to cause confusion with TracFone's Trademarks.
       without TracFone's prior written authorization.

   8.     The last known address of Defendant Riedcor, Inc. is 1722 West Acre Drive, St.
Cloud, Florida 34769.

   9.     The address of Plaintiff, TracFone Wireless, Inc.. is 8390 NW 25th Street, Miami.
FL 33122.

   10.    Defendant Riedcor, Inc. and TracFone waive their right to appeal from the entry
of this Final Judgment.

   11.    The Court retains jurisdiction over this matter and the parties to this action in
order to punish any violation of the terms of this Permanent Injunction by a finding of contempt

and a payment of damages to TracFone Wireless, Inc. in an amount of not less than $5,000 for each TracFone Handset that Defendant is found to have purchased, sold, or unlocked in violation of this injunction.

     12.    The prevailing party in any proceeding to enforce compliance with the terms of this Permanent Injunction shall be entitled to an award of its attorneys' fees and costs.

     13.    This case remains pending against the other Defendants named in TracFone's pleadings. The Court finds that there is no just reason for delay of the entry of judgment against Defendant, Riedcor, Inc., and therefore directs the Clerk to enter Judgment as set forth herein. *See* Fed. R. Civ. P. 54(b).

     DONE AND ORDERED in Orlando, Florida, this ___ day of _____, 2007.

 

                                  _____

                                  The Honorable G. Kendall Sharp
                                  United States District Judge

Copies furnished to:

James B. Baldinger, *Counsel for TracFone Wireless*
Jeffrey Blau, *Counsel for Defendant Robin Ketcham*
Frank Killgore, Jr. and Alyson Innes, *Counsel for Defendants Clinton Riedeman, Lawrence Riedeman and Reidcor, Inc.*

MIAMI#2635272.2

Exh. C - pg. 111

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TRACFONE WIRELESS. INC.,

     Plaintiff.

                          CASE NO.: 6:06-CV-01257-ORL-18-UAM

vs.

CLINTON RIEDEMAN d/b/a LARRY'S CELL.
LAWRENCE RIEDEMAN d/b/a LARRY'S CELL.
RIEDCOR, INC. d/b/a LARRY'S CELL. and
ROBIN KETCHAM d/b/a LARRY'S CELL.

     Defendants.
_____/

FINAL JUDGMENT AND PERMANENT INJUNCTION
AGAINST DEFENDANT ROBIN KETCHAM

Plaintiff. TracFone Wireless, Inc. ("TracFone"). brought the above-captioned lawsuit against among others Defendant Robin Ketcham d/b/a Larry's Cell. ("Defendant"). alleging that Defendant was engaged in an unlawful enterprise involving the acquisition. sale and alteration of large quantities of TracFone and TracFone's NET10 branded prepaid wireless telephones ("TracFone/NET10 Prepaid Phones" or "Phones") purchased from various retail outlets such as Wal-Mart. Target and Sam's Club, the solicitation and payment of others to bulk purchase TracFone/NET10 Prepaid Phones for Defendant's benefit. computer hacking and erasing or otherwise disabling the prepaid software ("TracFone/NET10 Prepaid Software") installed in the Phones essential for consumers to access TracFone's prepaid wireless network. or reselling the Phones to others who disable the software. and ultimately selling the altered Phones as new under TracFone's trademarks for the unauthorized use outside of the TracFone prepaid wireless system for profit (the "Bulk Resale Scheme").

As a result of Defendant's involvement in the Bulk Resale Scheme, TracFone asserted claims against the Defendant for Defendant's violation the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201 *et seq.*, Lanham Act, 15 U.S.C. § 1051 *et seq.*, Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.*, and Florida's anti-dilution statute, Fla. Stat. § 495.151, and Defendant's tortious interference with TracFone's business relationships and prospective advantages. On September 7, 2007, the Clerk of Court entered a default against Defendant and Defendant has failed to file a responsive pleading in this lawsuit to date. Accordingly, it is hereby,

**ORDERED, ADJUDGED and DECREED** that:

1.    This Court has jurisdiction over all the parties and all of the claims set forth in TracFone's complaint.

2.    The Court finds that TracFone owns all right, title, and interest in and to Incontestable United States Trademark Registration No. 2,114,692, issued November 18, 1997, for TracFone and Incontestable United States Trademark Registration No. 2,711,017, issued September 9, 2003, for TracFone (the "TracFone Trademarks"). The TracFone Trademarks are valid, incontestable, distinctive, protectable, famous, have acquired secondary meaning and are associated exclusively with TracFone. TracFone also holds a valid copyright on the TracFone Prepaid Software

3.    The Court finds that the Defendant has violated the following statutes: 17 U.S.C. § 1201 (circumvention of technological measures that control access to proprietary software under the DMCA and trafficking in services that circumvent technological measures protecting copyrighted software), 15 U.S.C. § 1114 (trademark infringement), 15 U.S.C. § 1125 (unfair competition), Fla. Stat. §§ 501.204 and 501.211 (unfair competition and deceptive trade practices

2

125187181

and false advertising) and Fla. Stat. § 495.151 (injury to business reputation and dilution of trademarks). The Court further finds that Defendant's conduct constitutes tortuous interference with TracFone's advantageous business relationships and prospective advantages and has caused substantial and irreparable harm to TracFone, and will continue to cause substantial and irreparable harm to TracFone unless enjoined.

4.      On November 27, 2006, the Librarian of Congress, upon the recommendation of the Register of Copyrights, issued a Final Rule setting forth six (6) classes of copyrighted works that are exempt from the provisions of the DMCA, including:

> Computer programs in the form of firmware that enable wireless telephone handsets to connect to a wireless telephone communication network, when circumvention is accomplished for the sole purpose of lawfully connecting to a wireless telephone communication network.

71 Fed. Reg. 68472 (Nov. 27, 2006) (amending 37 C.F.R. § 201.40(b)). The Court finds that this new exemption does not absolve the Defendant of liability for her violations of the DMCA as alleged in Counts I through III of TracFone's complaint, because the Defendant's conduct as alleged in this case does not come within the scope of the new exemption. The Defendant's purchase and resale of the TracFone handsets was for the purpose of reselling those handsets for a profit, and not "for the sole purpose of lawfully connecting to a wireless telephone communication network." Because the exemption does not apply to the conduct alleged in this case, there is no need for the Court to address the validity of the exemption or the circumstances surrounding its enactment.

5.      TracFone has suffered damages, including loss of goodwill and damage to its reputation, as a result of the Defendant's conduct. TracFone is entitled to injunctive relief and damages on the claims set forth in the complaint.

3

12518718 1

6.    Final judgment is hereby entered against the Defendant, Robin Ketcham, and in favor of the Plaintiff, TracFone Wireless, Inc., on all of the claims set forth in TracFone's complaint.

7.    Pursuant to 17 U.S.C. 1203(c)(3)(A), TracFone is entitled to recover statutory damages "of not less than $200 or more than $2,500" for each TracFone/NET10 Prepaid Phone Defendant altered, or sold as part of a conspiracy to alter, in furtherance of the Bulk Resale Scheme for Defendant's violation of the DMCA. The Court finds Defendant altered, or sold as part of a conspiracy to alter, five thousand one hundred and four (5,104) TracFone/NET10 Prepaid Phones in furtherance of the Bulk Resale Scheme. Final Judgment is therefore entered against Defendant, Robin Ketcham, and in favor of TracFone Wireless, Inc. in the principal amount of $ *1,020,800.00* , which shall bear interest at the legal rate, for which let execution issue.

8.    TracFone is also entitled to recover its costs and reasonable attorneys' fees incurred in bringing this action as a prevailing party pursuant to 17 U.S.C. 1203(b)(4)-(5) and Fla. Stat. § 501.2105(1). Should TracFone decide to pursue recovery of its reasonable attorneys' fees and costs. TracFone shall submit proof thereof within ten days of the date of this Order.

9.    Defendant, Robin Ketcham, and each and all of her representatives, agents, employees, independent contractors, relatives, associates, servants and any and all persons and entities in active concert and participation with them who receive notice of this order shall be and hereby are PERMANENTLY ENJOINED from:

        a.  purchasing and/or selling any wireless mobile phone that they know or should know bears any TracFone Trademark, any other trademark owned or used by TracFone, or any other model of wireless mobile phone sold or marketed by

4

TracFone ("TracFone/NET10 Handsets"). Specifically, the Defendant is enjoined from purchasing and/or selling all models of TracFone/NET10 Handsets currently offered for sale by TracFone, or that may be offered for sale in the future, as listed and updated from time to time on TracFone's and NET10's websites, http://tracfone.com/activation_pick_brand.jsp and www.net10.com. including without limitation the following TracFone/NET10 handsets:

| | | |
|---|---|---|
| Motorola W370 | Nokia 2126 | LG 3280 |
| Motorola C261 | Nokia 2126i | LG CG225 |
| Motorola C139 | Nokia 2600 | LG 1500 |
| Motorola V176 | Nokia 1100 | |
| Motorola V170 | Nokia 1112 | |
| Motorola V171 | Nokia 1600 | |
| Motorola C155 | Nokia 2285 | |
| Motorola C343 | | |

    b.   reflashing and/or unlocking of any TracFone/NET10 Handset;

    c.   accessing, altering, erasing, tampering with, deleting or otherwise disabling TracFone's proprietary prepaid cellular software contained within any and all models of TracFone/NET10 Handsets;

    d.   facilitating or in any way assisting other persons or entities who Defendant knows or should know are engaged in reflashing and/or unlocking TracFone/NET10 Handsets and/or hacking, altering, erasing, tampering with, deleting or otherwise disabling the software installed in TracFone/NET10 Handsets;

    e.   facilitating or in any way assisting other persons or entities who Defendant knows or should know are engaged in any of the acts prohibited under this permanent injunction including, without limitation, the buying and/or selling of unlocked TracFone/NET10 Handsets; and

5

1251871 1

    f.   knowingly using the TracFone Trademarks or any other trademark owned or used by TracFone, or that is likely to cause confusion with TracFone's Trademarks, without TracFone's prior written authorization.

    10.   The last known address of Defendant Robin Ketcham is 1721 Shady Leaf Drive, Valrico, FL 33594.

    11.   The address of Plaintiff, TracFone Wireless, Inc. is 9700 N.W. 112th Avenue, Miami, Florida 33178.

    12.   The Court retains jurisdiction over this matter and the parties to this action in order to punish any violation of the terms of this Permanent Injunction by a finding of contempt and a payment of damages to TracFone Wireless, Inc. in an amount of not less than $5,000 for each TracFone/NET10 Handset that Defendant is found to have purchased, sold, or unlocked in violation of this injunction.

    13.   The prevailing party in any proceeding to enforce compliance with the terms of this Permanent Injunction shall be entitled to an award of its attorneys' fees and costs.

DONE AND ORDERED in Orlando, Florida, this ___ day of _____, 200_.

The Honorable G. Kendall Sharp
United States District Judge

Copies furnished to:

James B. Baldinger, *Counsel for TracFone Wireless*
Jeffrey Blau, *Counsel for Defendant Robin Ketcham*
Frank Killgore, Jr., *Counsel for Defendants Clinton Riedeman, Lawrence Riedeman and Riedecor, Inc.*

6

12518718.1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TRACFONE WIRELESS, INC., a Florida corporation, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CASE NO.: 3-07-CV-1495-N |
| JAMES RAY THOMAS, JR. a/k/a Jim Thomas Hollis a/k/a James L. Ford, individually; JOHN DOES 1-50; and XYZ COMPANIES 1-50, | § § § § | JURY TRIAL DEMANDED |
| Defendants. | § § | |

FINAL JUDGMENT AND PERMANENT
INJUNCTION AGAINST DEFENDANT

Plaintiff, TracFone Wireless, Inc. ("TracFone"), brought the above-captioned lawsuit against Defendant, James Ray Thomas, Jr. a/k/a Jim Thomas Hollis a/k/a James L. Ford, individually ("Defendant"). TracFone alleges that Defendant is engaged in an unlawful enterprise involving the acquisition, sale and alteration of large quantities of TracFone and TracFone's NET10 branded prepaid wireless telephones ("TracFone/NET10 Prepaid Phones" or "Phones") purchased from various retail outlets such as Wal-Mart, Target and Sam's Club, the solicitation and payment of others to bulk purchase TracFone/NET10 Prepaid Phones for Defendant's benefit, computer hacking and erasing or otherwise disabling the prepaid software ("TracFone/NET10 Prepaid Software") installed in the Phones essential for consumers to access TracFone's prepaid wireless network, or reselling the Phones to others who disable the software, and ultimately selling the altered Phones as new under TracFone's trademarks for the unauthorized use outside of the TracFone prepaid wireless system for profit (the "Bulk Resale Scheme").

As a result of Defendant's involvement in the Bulk Resale Scheme, TracFone asserted

claims against the Defendant for breach of contract; federal trademark infringement under 15 U.S.C. § 1114; federal unfair competition under 15 U.S.C. § 1125(a); common law unfair competition; contributory trademark infringement; copyright infringement under Title 17 of the United States Code; circumvention of technological measures that control access to copyrighted software and trafficking in services that circumvent technological measures protecting copyrighted software under 17 U.S.C. § 1201, *et. seq.* as a violation of the Digital Millennium Copyright Act ("DMCA"); tortious interference with business relationships and prospective advantages; tortious interference with contract; dilution of TracFone's trademarks under Tex. Code. Ann. § 16.29; civil conspiracy; and unjust enrichment.

On November 14, 2007, the Clerk of Court entered a Default against Defendant and Defendant has failed to file a responsive pleading in this lawsuit to date. Further, at TacFone's request, the Court dismisses without prejudice all claims against Defendants John Does 1-50 and XYZ Companies 1-50. Accordingly, it is hereby,

**ORDERED, ADJUDGED and DECREED** that:

1.    This Court has jurisdiction over all the parties and all of the claims set forth in TracFone's complaint.

2.    The Court finds that TracFone owns all right, title, and interest in and to Incontestable United States Trademark Registration No. 2,114,692, issued November 18, 1997, for TracFone and Incontestable United States Trademark Registration No. 2,71,017, issued September 9, 2003, for TracFone (the "TracFone Trademarks"). The TracFone Trademarks are valid, incontestable, distinctive, protectable, famous, have acquired secondary meaning and are

2

associated exclusively with TracFone. TracFone also holds a valid copyright on the TracFone Prepaid Software.

3.     The Court finds that the Defendant's involvement in the Bulk Resale Scheme constitutes breach of contract; federal trademark infringement under 15 U.S.C. § 1114; federal unfair competition under 15 U.S.C. § 1125(a); common law unfair competition; contributory trademark infringement; copyright infringement under Title 17 of the United States Code; circumvention of technological measures that control access to copyrighted software and trafficking in services that circumvent technological measures protecting copyrighted software under 17 U.S.C. § 1201, *et. seq.* as a violation of the Digital Millennium Copyright Act ("DMCA"); tortious interference with business relationships and prospective advantages; tortious interference with contract; dilution of TracFone's trademarks under Tex. Code. Ann. § 16.29; civil conspiracy; and unjust enrichment.

4.     The Court further finds that Defendant's participation in the Bulk Resale Scheme has caused substantial and irreparable harm to TracFone, and will continue to cause substantial and irreparable harm to TracFone unless enjoined.

5.     TracFone is entitled to injunctive relief and damages on the claims set forth in the Complaint.

6.     On November 27, 2006, the Librarian of Congress, upon the recommendation of the Register of Copyrights, issued a Final Rule setting forth six (6) classes of copyrighted works that are exempt from the provisions of the DMCA, including:

3

Computer programs in the form of firmware that enable wireless telephone handsets to connect to a wireless telephone communication network, when circumvention is accomplished for the sole purpose of lawfully connecting to a wireless telephone communication network.

71 Fed. Reg. 68472 (Nov. 27, 2006) (amending 37 C.F.R. § 201.40(b)). The Court finds that this new exemption does not absolve the Defendant of liability for his violations of the DMCA as alleged in TracFone's complaint, because the Defendant's conduct as alleged in this case does not come within the scope of the new exemption. The Defendant's purchase and resale of the TracFone handsets was for the purpose of reselling those handsets for a profit, and not "for the sole purpose of lawfully connecting to a wireless telephone communication network." Because the exemption does not apply to the conduct alleged in this case, there is no need for the Court to address the validity of the exemption or the circumstances surrounding its enactment.

       7.     Final judgment is hereby entered against the Defendant, James Ray Thomas, Jr. a/k/a Jim Thomas Hollis a/k/a James L. Ford, individually, and in favor of the Plaintiff, TracFone Wireless, Inc., on all of the claims set forth in TracFone's complaint.

       8.     Pursuant to 17 U.S.C. 1203(c)(3)(A), TracFone is entitled to recover statutory damages "of not less than $200 or more than $2,500" for each TracFone/NET10 Prepaid Phone Defendant altered, or sold as part of a conspiracy to alter, in furtherance of the Bulk Resale Scheme for Defendant's violation of the DMCA. The Court finds Defendant altered, or sold as part of a conspiracy to alter, five thousand two hundred and eighty-three (5,283) TracFone/NET10 Prepaid Phones in furtherance of the Bulk Resale Scheme in violation of the DMCA. Final Judgment is therefore entered against Defendant

4

and in favor of TracFone Wireless, Inc. in the principal amount of $1,056,600, which shall bear interest at the legal rate, for which let execution issue forthwith.

9.     TracFone is also entitled to recover its costs and reasonable attorneys' fees incurred in bringing this action as a prevailing party pursuant to 17 U.S.C. 1203(b)(4)-(5).   Should TracFone decide to pursue recovery of its reasonable attorneys' fees and costs, TracFone shall submit proof thereof within ten days of the date of this Order.

10.     Defendant, and each and all of his representatives, agents, employees, independent contractors, relatives, associates, servants and any and all persons and entities in active concert and participation with them who receive notice of this order shall be and hereby are PERMANENTLY ENJOINED from:

a.  purchasing and/or selling any wireless mobile phone that they know or should know bears any TracFone Trademark, any other trademark owned or used by TracFone, or any other model of wireless mobile phone sold or marketed by TracFone ("TracFone/NET10 Handsets").  Specifically, the Defendant is enjoined from purchasing and/or selling all models of TracFone/NET10 Handsets currently offered for sale by TracFone, or that may be offered for sale in the future, as listed and updated from time to time on TracFone's and NET10's websites, http://tracfone.com/activation_pick_brand.jsp   and   www.net10.com,   including without limitation the following TracFone/NET10 handsets:

| | | |
|---|---|---|
| Motorola W370 | Nokia 2126 | LG 3280 |
| Motorola C261 | Nokia 2126i | LG CG225 |
| Motorola C139 | Nokia 2600 | LG 1500 |
| Motorola V176 | Nokia 1100 | |
| Motorola V170 | Nokia 1112 | |
| Motorola V171 | Nokia 1600 | |

5

Motorola C155            Nokia 2285
Motorola C343

b.    reflashing and/or unlocking of any TracFone/NET10 Handset;

c.    accessing, altering, erasing, tampering with, deleting or otherwise disabling TracFone's proprietary prepaid cellular software contained within any and all models of TracFone/NET10 Handsets;

d.    facilitating or in any way assisting other persons or entities who Defendant knows or should know are engaged in reflashing and/or unlocking TracFone/NET10 Handsets and/or hacking, altering, erasing, tampering with, deleting or otherwise disabling the software installed in TracFone/NET10 Handsets;

e.    facilitating or in any way assisting other persons or entities who Defendant knows or should know are engaged in any of the acts prohibited under this permanent injunction including, without limitation, the buying and/or selling of unlocked TracFone/NET10 Handsets; and

f.    knowingly using the TracFone Trademarks or any other trademark owned or used by TracFone, or that is likely to cause confusion with TracFone's Trademarks, without TracFone's prior written authorization.

11.    The last known address of Defendant James Ray Thomas, Jr. a/k/a Jim Thomas Hollis a/k/a James L. Ford, is 1957 Greenwood Lane, Newcastle, Oklahoma, 73065.

12.    The address of Plaintiff, TracFone Wireless, Inc. is 9700 N.W. 112th Avenue, Miami, Florida 33178.

6

Exh. C - pg. 123

13.    The Court retains jurisdiction over this matter and the parties to this action in order to punish any violation of the terms of this Permanent Injunction by a finding of contempt and a payment of damages to TracFone Wireless, Inc. for each TracFone/NET10 Handset that Defendant is found to have purchased, sold, or unlocked in violation of this injunction.

14.    The prevailing party in any proceeding to enforce compliance with the terms of this Permanent Injunction shall be entitled to an award of its attorneys' fees and costs.

15.    All relief not expressly granted is denied.    This is a Final Judgment.

Signed March 5, 2008.

THE HONORABLE DAVID C. GODBEY
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel and pro se litigants of record.

7

Exh. C - pg. 124

THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 07-22216-CIV-SEITZ/O'SULLIVAN

TRACFONE WIRELESS, INC., a
Florida corporation,

      Plaintiff,

v.

SHAKEEL CHOTHAI, individually and d/b/a
Chothai Trading; PLANET CELLULAR, INC.,
a California corporation; JOHN DOES 1 – 50; and
XYZ COMPANIES 1-50,

      Defendants.

_____/

## STIPULATED FINAL JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANTS, PLANET CELLULAR, INC. AND SHAKEEL CHOTHAI

Plaintiff, TracFone Wireless, Inc. ("TracFone") has sued Defendants, Planet Cellular, Inc., a California corporation, ("Planet Cellular"), and Shakeel Chothai, individually and d/b/a Chothai Trading ("Chothai") (Planet Cellular and Chothai are collectively referred to as "Defendants"). Plaintiff alleges that the Defendants are engaged in an unlawful enterprise involving the acquisition, sale and alteration of large quantities of TracFone and TracFone's NET10 branded prepaid wireless telephones ("TracFone/NET10 Prepaid Phones" or "Phones") purchased from various retail outlets such as Wal-Mart, Target and Sam's Club. Plaintiff asserts that Defendants have solicited and paid others to bulk purchase TracFone/NET10 Prepaid Phones for Defendants' benefit, have engaged in computer hacking and erasing or otherwise disabling the prepaid software ("TracFone/NET10 Prepaid Software") installed in the Phones essential for consumers to access TracFone's prepaid wireless network, or reselling the Phones to others who disable the software, and ultimately selling the altered Phones as new under TracFone's trademarks for the unauthorized use outside of the TracFone prepaid wireless system for profit (the "Bulk Resale Scheme").

TracFone/NET10 Prepaid Phones are sold subject to terms and conditions ("Terms and Conditions") which conspicuously restrict and limit the sale and use of TracFone/NET10 Prepaid Phones. These Terms and Conditions are set forth in printed inserts that are included in the packaging with every TracFone Phone, and are also available to the public on TracFone's website. The Terms and Conditions are also referenced in printed warnings that are placed on the outside of the retail packaging of the Phones. The Terms and Conditions and language on the packaging constitute a valid binding contract.

Pursuant to the Terms and Conditions and the language on the packaging, purchasers of TracFone/NET10 Prepaid Phones agree: (a) to use the Phones only in conjunction with the TracFone/NET10 prepaid wireless service; (b) not to tamper with or alter TracFone/NET10 Prepaid Phones or the Phones' software, enter unauthorized PIN numbers in the Phones, engage in any other unauthorized or illegal use of the Phones or the TracFone/NET10 service, or assist others in such acts; and (c) not to export any TracFone/NET10 Prepaid Phones outside of the TracFone/NET10 wireless system coverage area ("Coverage Area"). In violation of the Terms and Conditions, Defendants have, among other things, unlawfully exported TracFone/NET10 Prepaid Phones to foreign countries outside of the Coverage area or knowingly facilitated others who have done so; facilitated others to use the Phones without the TracFone/NET10 prepaid wireless service; and altered TracFone/NET10 Prepaid Phones and the Phones' software or facilitated others who have done so.

As a result of Defendants' involvement in the Bulk Resale Scheme, Plaintiff asserted claims against Defendants for: (1) Breach of Contract; (2) Federal Trademark Infringement in violation of 15 U.S.C. § 1114.; (3) Federal Unfair Competition in violation of 15 U.S.C. § 1125(A); (4) Common Law Unfair Competition; (5) Contributory Trademark Infringement; (6)

Copyright Infringement of Software in violation of Title 17 of the United States Code; (7) Circumvention of Technological Measures That Control Access to Copyrighted Software and Trafficking in Services That Circumvent Technological Measures Protecting Copyrighted Software in violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201, *et seq.*; (8) Tortious Interference with Business Relationships and Prospective Advantage; (9) Tortious Interference with Contract; (10) Unfair Competition and False Advertising in violation of § 501.204, Fla. Stat.; (11) Harm to TracFone's Goodwill and Business Reputation in violation of § 495.151, Fla. Stat.; (12) Civil Conspiracy; and (13) Unjust Enrichment.

On July 18, 2008, the parties stipulated to the entry of a Final Judgment and Permanent Injunction [DE-85], which would make the following Findings of Fact and Conclusions of Law by the Court:

1.    This Court has jurisdiction over all the parties and all of the claims set forth in TracFone's complaint.

2.    TracFone owns all right, title, and interest in and to United States Trademark Registration No. 2,114,692, issued on November 18, 1997 and based on a first use date of June 30, 1996; United States Trademark Registration No. 2,761,017, issued on September 9, 2003 and based on a first use date of December 2000; United States Trademark Registration No. 3,224,929, issued on April 3, 2007 and based on a first use date of December 31, 2005; United States Trademark Registration No. 3,222,623, issued on March 27, 2007 and based on a first use date of December 31, 2005; United States Trademark Registration No. 3,118,250, on July 18, 2006 and based on a first use date of March 1, 2005; United States Trademark Registration No. 3,255,754, issued on June 26, 2007 and based on a first use date of December 31, 2005; United States Trademark Registration No. 3,253,506, issued on June 19, 2007 and based on a first use

3

Exh. C - pg. 127

date of December 31, 2005; and United States Trademark Registration No. 3,251,389, issued on June 12, 2007 and based on a first use date of December 31, 2005 (collectively the "TracFone Trademarks").

3.    The TracFone Trademarks are valid, distinctive, protectable, famous, have acquired secondary meaning and are associated exclusively with TracFone. The Court finds that the trademark registered under Registration No. 2,114,692 is incontestable.

4.    TracFone holds a valid and enforceable copyright registration, TX 6-515-894, on the TracFone Prepaid Software.

5.    Defendants' involvement in the Bulk Resale Scheme constitutes Breach of Contract; Federal Trademark Infringement in violation of 15 U.S.C. § 1114.; Federal Unfair Competition in violation of 15 U.S.C. § 1125(A); Common Law Unfair Competition; Contributory Trademark Infringement; Copyright Infringement of Software in violation of Title 17 of the United States Code; Circumvention of Technological Measures That Control Access to Copyrighted Software and Trafficking in Services That Circumvent Technological Measures Protecting Copyrighted Software in violation of the DMCA, 17 U.S.C. § 1201, *et seq.*; Tortious Interference with Business Relationships and Prospective Advantage; Tortious Interference with Contract; Unfair Competition and False Advertising in violation of § 501.204, Fla. Stat.; Harm to TracFone's Goodwill and Business Reputation in violation of § 495.151, Fla. Stat.; Civil Conspiracy; and Unjust Enrichment.

6.    The Terms and Conditions constitute a valid binding contract enforceable against Defendants. The Court finds that (a) facilitating others to use TracFone/NET10 Prepaid Phones in conjunction with service providers other than TracFone, (b) tampering with or altering TracFone/NET10 Prepaid Phones or the Phones' software, entering unauthorized PIN numbers

4

in the Phones for purposes of unlocking or reflashing the Phones, or facilitating others in such acts, and/or (c) exporting TracFone/NET10 Prepaid Phones outside of the Coverage Area, or assisting others in such acts, respectively, constitute independent breaches of contract for which TracFone is entitled to relief.

7.    Defendants' participation in the Bulk Resale Scheme has caused substantial and irreparable harm to TracFone, and will continue to cause substantial and irreparable harm to TracFone unless enjoined.

8.    TracFone is entitled to injunctive relief and damages on the claims set forth in the Complaint.

9.    On November 27, 2006, the Librarian of Congress, upon the recommendation of the Register of Copyrights, issued a Final Rule setting forth six (6) classes of copyrighted works that are exempt from the provisions of the DMCA, including:

> Computer programs in the form of firmware that enable wireless telephone handsets to connect to a wireless telephone communication network, when circumvention is accomplished for the sole purpose of lawfully connecting to a wireless telephone communication network.

71 Fed. Reg. 68472 (Nov. 27, 2006) (amending 37 C.F.R. § 201.40(b)). The Court finds that this new exemption does not absolve the Defendants of liability for their violations of the DMCA as alleged in TracFone's complaint, because the Defendants' conduct as alleged in this case does not come within the scope of the new exemption. The Defendants' purchase and resale of the TracFone handsets was for the purpose of reselling those handsets for a profit, and not "for the sole purpose of lawfully connecting to a wireless telephone communication network." Because the exemption does not apply to the conduct alleged in this case, there is no need for the Court to address the validity of the exemption or the circumstances surrounding its enactment.

5

Therefore, based on these Findings of Fact and Conclusions of Law, it is hereby

**ORDERED** that:

**A.     FINAL JUDGMENT**

Final judgment is hereby entered, jointly and severally, against Defendants, Planet Cellular, Inc., a California corporation, and Shakeel Chothai, individually and d/b/a Chothai Trading, and in favor of the Plaintiff, TracFone Wireless, Inc., on all of the claims set forth in TracFone's complaint, in the principal amount of FIVE MILLION DOLLARS AND ZERO CENTS ($5,000,000.00), which shall bear interest at the legal rate, for which let execution issue forthwith.

**B.     PERMANENT INJUNCTION**

Defendants, and each and all of their past and present respective officers, directors, successors, assigns, parents, subsidiaries, affiliates, related companies, predecessors-in-interest, agents, employees, attorneys, accountants, investigators, consultants, heirs, personal representatives, beneficiaries, relatives, and all other persons or entities acting or purporting to act for him/her/it or on his/her/its behalf, including but not limited to any corporation, partnership, proprietorship or entity of any type that is in any way affiliated or associated with any Defendant or any Defendant's representatives, agents, assigns, parent entities, employees, independent contractors, accountants, attorneys, associates, servants, affiliated entities, and any and all persons and entities in active concert and participation with any Defendant who receive notice of this Order, shall be and hereby are PERMANENTLY ENJOINED from:

        i.      purchasing and/or selling any wireless mobile phone that they know or should know currently bears, or did so at one time, any TracFone Trademark or any other trademark owned or used by TracFone or NET10 ("TracFone/NET10 Handsets"). Specifically,

6

the Defendants are enjoined from purchasing and/or selling all models of TracFone/NET10
Handsets currently offered for sale by TracFone, or that may be offered for sale in the future, as
listed and updated from time to time on TracFone's and NET10's websites,
http://tracfone.com/activation_pick_brand.jsp and www.net10.com, including without limitation
the following TracFone/NET10 Handsets:

| | |
|---|---|
| Motorola W175 | Nokia 2126 |
| Motorola W260g | Nokia 2126i |
| Motorola W376g | Nokia 2600 |
| Motorola W370R | Nokia 1100 |
| Motorola W370 | Nokia 1112 |
| Motorola W375 | Nokia 1221 |
| Motorola C261 | Nokia 1600 |
| Motorola C139 | Nokia 2285 |
| PINK Motorola C139 | LG 400G |
| Motorola V176 | LG 3280 |
| Motorola V170 | LG CG225 |
| Motorola V171 | LG 1500 |
| Motorola C155 | LG 200C |
| Motorola C343 | Kyocera K126C |
| Motorola V60i | |

    ii.    reflashing and/or unlocking of any TracFone/NET10 Handset;

    iii.    accessing, altering, erasing, tampering with, deleting or otherwise
disabling TracFone's proprietary prepaid cellular software contained within any and all
models of TracFone/NET10 Handsets;

    iv.    facilitating or in any way assisting other persons or entities who
Defendants know or should know are engaged in reflashing and/or unlocking
TracFone/NET10 Handsets and/or hacking, altering, erasing, tampering with, deleting or
otherwise disabling the software installed in TracFone/NET10 Handsets;

    v.    facilitating or in any way assisting other persons or entities who
Defendants know or should know are engaged in any of the acts prohibited under this

permanent injunction including, without limitation, the buying and/or selling of unlocked TracFone/NET10 Handsets; and

vi.    knowingly using the TracFone Trademarks or any other trademark owned or used by TracFone, or that is likely to cause confusion with TracFone's Trademarks, without TracFone's prior written authorization.

**C.    CONTACT INFORMATION**

i.    The last known address of Defendant, Planet Cellular, Inc., a California corporation, is 15421 Carmenita Road, Suite C, Santa Fe Springs, CA 90670.

ii.    The last known address of Defendant, Shakeel Chothai, individually and d/b/a Chothai Trading, is 3684 Watseka Avenue, #204, Los Angeles, California 90034.

iii.    The address of Plaintiff, TracFone Wireless, Inc. is 9700 N.W. 112th Avenue, Miami, Florida 33178.

**D.    RETENTION OF JURISDICTION**

The Court shall retain jurisdiction over this matter and the parties to this action in order to enforce any violation of the terms of this Permanent Injunction by a finding of contempt and an order for payment of compensatory damages to TracFone Wireless, Inc.

**E.    COMPLIANCE**

The prevailing party in any proceeding to enforce compliance with the terms of this Permanent Injunction shall be entitled to an award of its attorneys' fees and costs.

DONE AND ORDERED in Miami, Florida, this 22nd day of July, 2008.

_____
PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:    All Counsel of Record/*pro se* parties

8

Exh. C - pg. 132

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No.: 07-CIV-23348  COOKE/BANDSTRA

TRACFONE WIRELESS, INC., a Delaware corporation,

      *Plaintiff,*

v.

MIRANDA HOLDINGS CORP., a Florida corporation, d/b/a Incomtel,
JEREMY LARA, individually, and d/b/a CELLPHONES WHOLESALE, INC., a Florida
corporation,
PABLO MARTIN AVELLANEDA, individually,
JOHN DOES 1-50, and XYZ COMPANIES 1-50,

      *Defendants.*

_____/

## FINAL JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANTS

Plaintiff, TracFone Wireless, Inc. ("TracFone"), brought the above-captioned lawsuit
against Defendants, Miranda Holdings Corp., a Florida corporation, d/b/a Incomtel ("Miranda"),
Jeremy Lara, individually and d/b/a Incomtel ("Lara"), Cellphones Wholesale, Inc., a Florida
corporation ("CWI"), and Pablo Martin Avellaneda ("Avellaneda") (Miranda, Lara, CWI, and
Avellaneda are collectively referred to as "Defendants"), alleging that the Defendants are
engaged in an unlawful enterprise involving the acquisition, sale and alteration of large quantities
of TracFone and TracFone's NET10 branded prepaid wireless telephones ("TracFone/NET10
Prepaid Phones" or "Phones") purchased from various retail outlets such as Wal-Mart, Target
and Sam's Club, the solicitation and payment of others to bulk purchase TracFone/NET10
Prepaid Phones for Defendants' benefit, computer hacking and erasing or otherwise disabling the
prepaid software ("TracFone/NET10 Prepaid Software") installed in the Phones essential for
consumers to access TracFone's prepaid wireless network, or reselling the Phones to others who
disable the software, and ultimately selling the altered Phones as new under TracFone's
trademarks for the unauthorized use outside of the TracFone prepaid wireless system for profit
(the "Bulk Resale Venture").

TracFone/NET10 Prepaid Phones are sold subject to terms and conditions ("Terms and

Conditions") which conspicuously restrict and limit the sale and use of TracFone/NET10 Prepaid Phones. These Terms and Conditions are set forth in printed inserts that are included in the packaging with every TracFone Phone, and are also available to the public on TracFone's website. The Terms and Conditions are also referenced in printed warnings that are placed on the outside of the retail packaging of the Phones. The Terms and Conditions and language on the packaging constitute a valid binding contract.

Pursuant to the Terms and Conditions and the language on the packaging, purchasers of TracFone/NET10 Prepaid Phones agree: (a) to use the Phones only in conjunction with the TracFone/NET10 prepaid wireless service; (b) not to tamper with or alter TracFone/NET10 Prepaid Phones or the Phones' software, enter unauthorized PIN numbers in the Phones, engage in any other unauthorized or illegal use of the Phones or the TracFone/NET10 service, or assist others in such acts; and (c) not to export any TracFone/NET10 Prepaid Phones outside of the TracFone/NET10 wireless system coverage area ("Coverage Area"). In violation of the Terms and Conditions, TracFone alleges that Defendants have, among other things, unlawfully exported TracFone/NET10 Prepaid Phones to foreign countries outside of the Coverage area or knowingly facilitated others who have done so; facilitated others to use the Phones without the TracFone/NET10 prepaid wireless service; and altered TracFone/NET10 Prepaid Phones and the Phones' software or facilitated others who have done so.

As a result of Defendants' alleged involvement in the Bulk Resale Venture, TracFone asserted claims against the Defendants for breach of contract; federal trademark infringement under 15 U.S.C. § 1114; federal unfair competition under 15 U.S.C. § 1125(a); common law unfair competition; contributory trademark infringement; copyright infringement under Title 17 of the United States Code; circumvention of copyrighted software protection systems and trafficking in circumvent technology under 17 U.S.C. § 1201, *et. seq.* as a violation of the Digital Millennium Copyright Act ("DMCA"); unfair competition and false advertising under Fla. Stat. 501.204;; civil conspiracy; conspiracy to induce breach of contract; and unjust enrichment.

Accordingly, it is hereby **ORDERED, ADJUDGED** and **DECREED** that:

1. This Court has jurisdiction over all the parties and all of the claims set forth in TracFone's complaint.

2. The Complaint states valid claims upon which relief may be granted against the

Defendants for: breach of contract; federal trademark infringement under 15 U.S.C. § 1114; federal unfair competition under 15 U.S.C. § 1125(a); common law unfair competition; contributory trademark infringement; copyright infringement under Title 17 of the United States Code; circumvention of copyrighted software protection systems and trafficking in circumvent technology under 17 U.S.C. § 1201, *et. seq.* as a violation of the DMCA; unfair competition and false advertising under Fla. Stat. 501.204;; civil conspiracy; conspiracy to induce breach of contract; and unjust enrichment.

    3. The permanent injunction will not disserve the public interest.

    4. The parties, in their Amended Stipulation for Entry of Final Judgment and Permanent Injunction Against Defendants, have stipulated and agreed:

    That the Terms and Conditions constitute a valid binding contract enforceable against Defendants. That (a) facilitating others to use TracFone/NET10 Prepaid Phones in conjunction with service providers other than TracFone, (b) tampering with or altering TracFone/NET10 Prepaid Phones or the Phones' software, entering unauthorized PIN numbers in the Phones for purposes of unlocking or reflashing the Phones, or facilitating others in such acts, and/or (c) exporting TracFone/NET10 Prepaid Phones outside of the Coverage Area, or assisting others in such acts, respectively, constitute independent breaches of contract for which TracFone is entitled to relief.

    That Defendants' participation in the Bulk Resale Venture has caused substantial and irreparable harm to TracFone, and will continue to cause substantial and irreparable harm to TracFone unless enjoined.

    TracFone is entitled to injunctive relief and damages on the claims set forth in the Complaint.

    On November 27, 2006, the Librarian of Congress, upon the recommendation of the Register of Copyrights, issued a Final Rule setting forth six (6) classes of copyrighted works

3

Exh. C - pg. 135

that are exempt from the provisions of the DMCA, including: Computer programs in the form of

firmware that enable wireless telephone handsets to connect to a wireless telephone

communication network, when circumvention is accomplished for the sole purpose of lawfully

connecting to a wireless telephone communication network. 71 Fed. Reg. 68472 (Nov. 27, 2006)

(amending 37 C.F.R. § 201.40(b)). This new exemption does not absolve the Defendants of

liability for their violations of the DMCA as alleged in TracFone's complaint, because the

Defendants' conduct as alleged in this case does not come within the scope of the new

exemption. The Defendants' purchase and resale of the TracFone handsets was for the purpose of

reselling those handsets for a profit, and not "for the sole purpose of lawfully connecting to a

wireless telephone communication network." Because the exemption does not apply to the

conduct alleged in this case, there is no need for the Court to address the validity of the

exemption or the circumstances surrounding its enactment.

     5. **Final judgment is hereby entered, jointly and severally, against Defendants,**

Miranda Holdings Corp., a Florida corporation, d/b/a Incomtel, Jeremy Lara, individually and

d/b/a Incomtel, Cellphones Wholesale, Inc., a Florida corporation, and Pablo Martin Avellaneda,

and in favor of the Plaintiff, TracFone Wireless, Inc., on all of the claims set forth in TracFone's

complaint, in the principal amount of FIVE MILLION DOLLARS AND ZERO CENTS

($5,000,000.00), which shall bear interest at the legal rate, for which let execution issue

forthwith.

     6. If after the Judgment is satisfied, it is discovered that the parties to this action

have violated the terms of this Permanent Injunction, the Court will order the payment of

compensatory damages to TracFone Wireless, Inc. in the amount of FIVE THOUSAND

4

Exh. C - pg. 136

DOLLARS AND ZERO CENTS ($5,000.00) for Each TracFone/NET10 handset that a

Defendant is found to have purchased, sold or unlocked in violation of this Injunction. The

Court finds that these amounts are compensatory and will serve to compensate TracFone for its

losses in the event a Defendant violates the terms of this Permanent Injunction after the monetary

portion set forth in paragraph 10 of the Final Judgment herein has been satisfied.

       7. Defendants, and each and all of his, her and its past and present respective

officers, directors, successors, assigns, parents, subsidiaries, affiliates, related companies,

predecessors-in-interest, agents, employees, heirs, personal representatives, beneficiaries,

relatives, and all other persons or entities acting or purporting to act for him/her/it or on

his/her/its behalf, including but not limited to any corporation, partnership, proprietorship or

entity of any type that is in any way affiliated or associated with any Defendant or any

Defendant's representatives, agents, assigns, parent entities, employees, independent contractors,

associates, servants, affiliated entities, and any and all persons and entities in active concert and

participation with any Defendant who receive notice of this Order, shall be and hereby are

**PERMANENTLY ENJOINED** from:

            a.    purchasing and/or selling any wireless mobile phone that they know or

               should know bears any TracFone Trademark, any other trademark owned

               or used by TracFone, or any other model of wireless mobile phone sold or

               marketed by TracFone ("TracFone/NET10 Handsets"). Specifically, the

               Defendants are enjoined from purchasing and/or selling all models of

               TracFone/NET10 Handsets currently offered for sale by TracFone, or that

               may be offered for sale in the future, as listed and updated from time to

5

Exh. C - pg. 137

time on TracFone's and NET10's websites,

http://tracfone.com/activation_pick_brand.jsp and www.net10.com,

including without limitation the following TracFone/NET10 handsets:

    Motorola W370

    Motorola C261

    Motorola C139

    Motorola V176

    Motorola V170

    Motorola V171

    Motorola C155

    Motorola C343

    Nokia 2126

    Nokia 2126i

    Nokia 2600

    Nokia 1100

    Nokia 1112

    Nokia 1600

    Nokia 2285

    LG 3280

    LG CG225

    LG 1500

6

Exh. C - pg. 138

b.    reflashing and/or unlocking of any TracFone/NET10 Handset;

c.    accessing, altering, erasing, tampering with, deleting or otherwise disabling TracFone's proprietary prepaid cellular software contained within any and all models of TracFone/NET10 Handsets;

d.    facilitating or in any way assisting other persons or entities who Defendants know or should know are engaged in reflashing and/or unlocking TracFone/NET10 Handsets and/or hacking, altering, erasing, tampering with, deleting or otherwise disabling the software installed in TracFone/NET10 Handsets;

e.    facilitating or in any way assisting other persons or entities who Defendants know or should know are engaged in any of the acts prohibited under this permanent injunction including, without limitation, the buying and/or selling of unlocked TracFone/NET10 Handsets; and

f.    knowingly using the TracFone Trademarks or any other trademark owned or used by TracFone, or that is likely to cause confusion with TracFone's Trademarks, without TracFone's prior written authorization.

8. The address of Defendant, Miranda Holdings Corp., a Florida corporation, is 10900 NW 21st Street, Suite 170, Miami, Florida 33172.

9. The address of Defendant, Jeremy Lara, individually and d/b/a Incomtel, is 10900 NW 21st Street, Suite 170, Miami, Florida 33172.

10. The address of Defendant, Cellphones Wholesale, Inc., a Florida corporation, is 5800 Logan Drive, Plano, Texas 75094.

7

11. The address of Defendant, Pablo Martin Avellaneda, is 10900 NW 21st Street, Suite 170, Miami, Florida 33172.

12. The address of Plaintiff, TracFone Wireless, Inc. is 9700 NW 112th Avenue, Miami, Florida 33178.

13. The Court retains jurisdiction over this matter and the parties to this action in order to enforce any violation of the terms of this Permanent Injunction by a finding of contempt. The prevailing party in any proceeding to enforce compliance with the terms of this Permanent Injunction shall be entitled to an award of its attorneys' fees and costs.

All pending motions are denied as moot, and the Clerk shall close this case.

**DONE and ORDERED** in chambers, Miami, Florida, this 29th day of July 2008.


_Marcia G. Cooke_
MARCIA G. COOKE
United States District Judge


Copies furnished to:

*The Hon. Ted E. Bandstra*

*Counsel of Record*


8

**CLOSED
CIVIL
CASE**

Image reflects quality of original submission

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-20012-CIV-ALTONAGA/Turnoff

NOKIA CORPORATION
a Finnish corporation,

    Plaintiff,

vs.

PAN OCEAN COMMUNICATIONS, INC.,
SAMAR MUNIR, and SYED M. HUSSAIN

    Defendants.

_____/

## FINAL JUDGMENT AND PERMANENT INJUNCTION

Plaintiff Nokia Corporation ("Nokia"), filed a Complaint on January 4, 2006 asserting that Defendants Pan Ocean Communications, Inc., Samar Munir, and Syed M. Hussain (collectively "the Pan Ocean Defendants") are purchasing NOKIA 1100 and 2600 TracFone prepaid wireless telephones from retail stores such as Wal-Mart, Target or Sam's Club; hacking into and erasing or disabling the TracFone proprietary prepaid software that enables consumers to access TracFone's prepaid wireless service, and then reselling the wireless telephones as new for use on other wireless carriers' networks/systems and in some cases, packaging the phones in counterfeit packaging bearing the NOKIA trademark. Based on that conduct, the Complaint asserts claims against the Pan Ocean Defendants for federal trademark infringement and unfair competition under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051, *et seq.*, injury to business reputation and dilution of mark under

Exh. C - pg. 141

Fla. Stat. § 495.151 *et seq.*, unfair competition and deceptive trade practices under Fla. Stat.

§ 501.204 *et seq.* Together with the filing of the Complaint, on January 4, 2006, Nokia filed

a motion for preliminary injunction and expedited discovery with supporting declarations and

exhibits and accompanying memoranda of law. The Pan Ocean Defendants have denied the

allegations of Nokia's Complaint,

       The Court having considered the Complaint, declaration and exhibits, memoranda of

law, and further evidence submitted therewith, and the parties' stipulation regarding entry of

this order, it is hereby:

### ORDERED, ADJUDGED, and DECREED that:

    1     This Court has jurisdiction over all the parties and all of the claims for

trademark counterfeiting, trademark infringement, false designation of origin, and trademark

dilution under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051, *et seq.*; and the

related causes of action under the common law and statutory law of the State of Florida,

namely, Fla. Stat. § 495.151 *et seq.*, and Florida's Deceptive and Unfair Trade Practices Act,

Fla. Stat. § 501.204 *et seq.*, asserted in the above action.

    2.    Plaintiff owns all right, title, and interest in and to the trademark NOKIA,

including U.S. Trademark Registration Nos. 2,676,153 and No. 1,570,492 for the mark

NOKIA, among other registrations which registrations are valid, subsisting and in full force

and effect (the "NOKIA Trademark").

    3.    The Pan Ocean Defendants understand and acknowledge that Nokia is the

owner of the NOKIA Trademark, and recognize and acknowledge the validity of the NOKIA

Trademark and that such NOKIA Trademark is distinctive, protectable, famous, has acquired

2

Exh. C - pg. 142

secondary meaning and is associated exclusively with Nokia. The Pan Ocean Defendants shall not challenge or in any way contest the validity or protectability of the NOKIA Trademark.

4.     The Pan Ocean Defendants and any of their representatives, subsidiaries, related or affiliated entities, agents, servants, officers, directors and employees, and any and all persons and entities in active concert and participation with them who receive notice of this order by personal service or otherwise, shall be and hereby are permanently enjoined from:

     i.    engaging in the alteration or unlocking of any new wireless mobile phone manufactured by Nokia ("Nokia phone").

     ii.    knowingly facilitating or in any way assisting other persons or entities that the Pan Ocean Defendants knew or should know are engaged in altering or unlocking any Nokia wireless phone;

     iii.    using the trademark NOKIA, or any other mark that is likely to cause confusion therewith as proscribed by the Lanham Act, 15 U.S.C. § 1051 *et seq.* and the case precedent thereunder, without authorization;

     iv.    knowingly misrepresenting the nature or quality of any Nokia products offered, marketed, or sold by the Pan Ocean Defendants (Pan Ocean Defendants may reasonably rely upon the representations by third parties made to them in this regard, so long as reliance is in good faith);

3

    v.     selling used and/or reconditioned Nokia mobile phones or facilitating or in any way assisting other persons or entities that the Pan Ocean Defendants knew or should have known were engaged in selling used and/or reconditioned Nokia mobile phones that do not comply with the legal parameters set forth in *Prestonettes, Inc. v. Coty*, 264 U.S. 359 (1924) and its progeny (Pan Ocean Defendants may reasonably rely upon the representations by third parties made to them in this regard, so long as reliance is in good faith);

    vi.    knowingly misrepresenting any used products as new or in any way infringing on Nokia's trademarks or misrepresenting that Nokia warrants the used and/or reconditioned phones (Pan Ocean Defendants may reasonably rely upon the representations by third parties made to them in this regard so long as reliance is in good faith) ;

    vii.   knowingly dealing in any way with counterfeit Nokia products including, but not limited to counterfeit NOKIA boxes as shown in Exhibit C to the Complaint;

    viii.  shall not purchase, distribute or sell NOKIA products that the Pan Ocean Defendants acquired, obtained or purchased outside the United States, nor shall the Pan Ocean Defendants purchase, distribute, or sell gray market NOKIA products that are materially different from authorized NOKIA products meant for sale in the United States. *See Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*, 952 F.2d 44 (2nd Cir. 1991);

4

Case 1:06-cv-20012-CMA    Document 51    Entered on FLSD Docket 08/09/2006    Page 5 of 5

ix.    shall not purchase, distribute or sell new genuine NOKIA products that are not packaged in their original packaging.

5.    This Final Judgment and Permanent Injunction on Consent shall be binding on the Pan Ocean Defendants, their successors and assigns.

6.    Each party waives its right to appeal from the entry of this Final Judgment.

7.    This Court hereby retains jurisdiction over this matter and the parties to this action in order to punish any violation of the terms of this Final Judgment and Permanent Injunction by a finding of contempt.

8.    The prevailing party in any proceeding to enforce compliance with the terms of this Final Judgment and Permanent Injunction shall be entitled to an award of its attorneys' fees and costs incurred thereby.

**DONE AND ORDERED** in chambers at Miami, Florida, this _8_ day of August, 2006.

_Cecilia M. Altonaga_
**HON. CECILIA M. ALTONAGA**
**United States District Judge**

Copies to:    Robert S. Weisbein, Counsel for Plaintiff
              A. George Gutierrez, Counsel for Defendants

5

Exh. C - pg. 145

EXHIBIT D



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

VIRGIN MOBILE USA, LLC,                 )
                                        )
        *Plaintiff,*                    )
                                        )
v.                                      )       CIVIL   ACTION   NO.   H-06-2444
                                        )
WORLD MMP INC., conducting business as  )
UNICOMM WIRELESS, MUHAMMAD              )
"Mubi" MUBASHIR, ABDUL QADIR            )
PAREKH, and ABDUL WAHAB MOOSA,          )
                                        )
        *Defendants.*                   )

## MEMORANDUM OPINION AND ORDER OF CONTEMPT

The issue before the court is whether Defendants should be held in civil contempt for violating the Court's August 10, 2006, Order of Final Judgment and Agreed Permanent Injunction ("Permanent Injunction Order") (Doc. 22). For the reasons set out below,[1] the court finds the clear and convincing evidence shows Defendants acted in direct violation of the Permanent Injunction Order. The court, therefore, holds all Defendants in civil contempt.

I.          Background and Relevant Facts

In early 2006, Plaintiff Virgin Mobile USA, LLC ("Virgin Mobile") discovered numerous third parties engaging in the unlawful sale of its cellular phone handsets. The basic scheme involved purchasing Virgin Mobile handsets in bulk at a preferential price, disabling certain security features, reselling the handsets at retail value or higher, and then pocketing the difference. During the course of its investigation, Virgin Mobile learned that Defendants World MMP Inc., conducting business as Unicomm Wireless, Muhammad "Mubi" Mubashir, Abdul Quadir Parekh, and Abdul Wahab Moosa (collectively, "Defendants" or "Unicomm") were engaged in the same scheme involving Virgin Mobile's Kyocera K10 Royale handsets. Virgin

---

[1] Pursuant to Fed. R. Civ. P. 52(a), this memorandum opinion and order constitutes the court's findings of fact and conclusions of law.

-1-

Mobile filed suit seeking injunctive relief and damages. Within weeks of the suit's initiation, the parties agreed to a permanent injunction barring Defendants from dealing in Virgin Mobile products. Accordingly, the court issued its order of permanent injunction, enjoining Defendants

> from purchasing, offering to purchase, reselling, *offering to resell*, shipping, and tampering with the software, of or inducing or soliciting any other person or entity to purchase, offer to purchase, resell, *offer to resell*, ship, and tamper with the software, of any Virgin Mobile wireless handset, including without limitation the Kyocera K10 wireless handset.

Permanent Injunction Order (Doc. 22) (emphasis added). The permanent injunction constituted the final judgment in this action, and the court expressly retained jurisdiction to enforce the injunction. *Id.*

Subsequently, Virgin Mobile enlisted the aid of expert fraud investigators to discover additional bulk schemes and to monitor compliance with this and other relevant permanent injunctions.[2] The fraud team posted online advertisements that purported to seek purchase of the (unlawfully) sold handsets. On December 7, 2006, a Virgin Mobile fraud analyst posted an ad entitled "WTB[3] Kyocera New." The ad included the message, "Buying Kyocera New Stock," with instructions to call or e-mail regarding the "inventory available." *See* Pl. Hr'g. Ex. 1. The very same day, Defendant Abdul Quadir Parekh ("Parekh"), operating as Unicomm Wireless, contacted the agent about the ad. Parekh claimed to "[h]ave in stock 300 pcs[4] [in] bulk packaging [for] $29.00" and inquired into the buyer's interest in "other phones." Pl. Hr'g. Ex. 2. Using the pseudonym "Daniel Morgan," the fraud investigator replied to Parekh's email to determine the model for sale. *See* Pl. Hr'g. Ex. 3. Apologizing for forgetting the "main thing,"

---

[2] There have been a myriad of permanent injunctions issued across the United States relating to other parties engaged in similar conduct. *See, e.g. Virgin Mobile USA, LLC v. SNS Comm'cns*, No. 06-Civ-5060 (S.D. N. Y.); *Virgin Mobile USA v. EMTC USA, Corp.*, No. 06-21787-CIV-DLF (S.D. Fla); *Virgin Mobile USA, LLC v. Solarcomm Wireless*, No. CV-06-1861 (D. Ariz.); *Virgin Mobile USA, LLC v. Iser*, No 06-cv0434 (N.D. Okla.); *Virgin Mobile USA, LLC v. Houston Teklink Inc.*, NO. 06-cv-02766 (S.D. Tex.); *Virgin Mobile USA, LLC v. Trade Vision Inc.*, No. H-06-cv-2960 (S.D. Tex.); *Virgin Mobile USA, LLC v. Thirwani*, Civ. A. No. 2:06-cv-2504 (D. Ariz.); *Virgin Mobile USA, LLC v. Chapman*, Civ. A. No. 2:06-cv-2664 (D. Ariz.); *Virgin Mobile USA, LLC v. Freelance Marketing Inc.*, No. 3:06-cv-0217 (S.D. Ohio); *Virgin Mobile USA, LLC v. TXT Technology, Inc.*, No. 06-7485 (C.D. Cal.); and *Virgin Mobile USA, LLC v. Van Loc Dealer, et al.*, No.06-1039 (W.D. Wash).

[3] "WTB" is apparently the accepted parlance for "want to buy."

[4] Pieces

-2-

Parekh wrote back and declared the inventory was "K9 Virgin Mobile Oyester [sic]." Pl. Hr'g Ex. 4. The investigator feigned interest and asked if the price could be negotiated to $28.00. Pl. Hr'g. Ex. 5. Parekh replied that he could "do $28.00" but was "sold out" of that particular Virgin Mobile model; however, he claimed that 200-300 more were arriving the following week. Pl. Hr'g Ex. 6. The investigator and Parekh exchanged several more emails before the "deal" was terminated and the ruse revealed.

Plaintiff immediately requested entry of an order to show cause why Defendants should not be held in contempt (Doc. 23) for violating the Permanent Injunction Order. On January 23, 2007, a show cause hearing was held and evidence heard on the matter. Defendants did not and could not dispute the exchange of emails; however, Muhammad "Mubi" Mubashir ("Mubi"), Abdul Wahab Moosa ("Moosa"), and Parekh each testified in turn to clarify the situation. Mubi, former president of Unicomm claimed he had sold his shares on September 24, 2006, and was no longer affiliated with the company. Moosa, current president of Unicomm, testified unequivocally that Unicomm had not purchased or sold any Virgin Mobile product. Moreover, he claimed the "simple explanation" for the emails is that they constituted a sales technique to "lure" the customer in and offer "other products." He dismissed Parekh's emails as "mere puffing" and not a true "offer to sell" any Virgin Mobile products. Parekh corroborated Moosa's testimony. Parekh explained he did not "offer to sell" any Virgin Mobile products because Unicomm no longer carried such products. Because he never intended to actually sell any Virgin Mobile products, he believed that no "offer to sell" had been made. According to his testimony, Parekh just "wanted to give the impression of legitimacy" and to "probe" the buyer's interest.

Plaintiff argues that the Permanent Injunction Order prohibited "offering to resell" any Virgin Mobile product without limitation or qualification. As such, Defendants are in direct violation of a court order and subject to civil contempt. The court agrees.

II.      <u>Legal Standard on Civil Contempt</u>

-3-

A party moving for civil contempt must demonstrate by clear and convincing evidence: (1) that a valid court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order. *F.D.I.C. v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995) (citing *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992)); *see also Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380, 382 (5th Cir. 1999). In the civil contempt context, clear and convincing evidence requires proof "so clear, direct, weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case." *United States v. Cornerstone Wealth Corp.*, No. 3:98-cv-0601-D, 2006 U.S. Dist. LEXIS 8294, at *5-6 (N.D. Tex. March 3, 2006) (quoting *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995).

III.    Analysis

Under the "clear, direct, weighty and convincing" evidence, the Defendants have acted in direct contradiction of the court's order. Even crediting Defendants' testimony concerning Unicomm not having purchased, tampered, or resold any Virgin Mobile handset since the permanent injunction, the totality of the evidence indicates Parekh's exchange with the undercover agent constituted an "offer of sale." Parekh initiated the contact. He declared the inventory was "K9 Virgin Mobile Oyester [sic]," and he negotiated a price ($28.00). Moreover, Parekh and Moosa's arguments to the contrary are unpersuasive. Parekh's intent, whether to probe the buyer's interest or to fraudulently misrepresent, is not determinative. A finding of contempt is not predicated on the willfulness of the contemnor's actions, *See Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000). Rather, the court must examine whether the contemnor actually failed to comply with the court's order. *Id.* When Parekh, of his own volition, initiated contact with a potential buyer and offered to sell "new Kyocera" in bulk, he and Unicomm were directly violating the Permanent Injunction Order.

Mubi claims he is no longer associated with Unicomm and should not be liable for the violation of the court's order. Mubi testified that he had resigned as CEO and sold his one-third interest in Unicomm for about $40,000 or $50,000 on September 24, 2006. Payment was due

-4-

in installments, but Mubi received all the checks (postdated the 15th and the 30th of every month) in September. Therefore, asserts Mubi, his ties with Unicomm were broken well before any violation. The court does not agree. By his own admission, Mubi deposited the last postdated check on December 30, 2006, proving the existence of a financial link between himself and Unicomm past the December 7th violation. Unicomm's own website continues to list Mubi as "Management," and other selling websites provide similar information. *See* Pl. Hr'g. Exs. 12 and 13. The link between Mubi and Unicomm is not as tenuous as Mubi alleges. Moreover, the court doubts the December 7th violation was an isolated incident. The evidence supports a finding Parekh's "sales technique" was common at Unicomm. This fact implies that violations of the court's order occurred numerous times between August 10th and December 7th, while Mubi was still president of Unicomm. Like Parekh and Moose, Mubi has failed to provide an adequate defense to the direct violations of the Permanent Injunction Order.

IV.        Conclusion

Accordingly, it is hereby

ORDERED that all Defendants are held in contempt of the Court's Order of Final Judgment and Agreed Permanent Injunction (Doc. 22);

ORDERED that Defendants comply with the Court's Order of Final Judgment and Agreed Permanent Injunction (Doc. 22);

ORDERED that Defendants provide a complete accounting of net profits, if any, derived from the sell of Virgin Mobile handsets since the entry of permanent injunction on August 10, 2006. This accounting will be made no later than 20 days following entry of this order of contempt;

ORDERED that Defendants deliver to Plaintiff all Virgin Mobile handsets in Defendants' possession. Delivery of the Virgin Mobile handsets, if any, will occur no later than 10 days following entry of this order of contempt;

ORDERED that Defendants pay the direct, out-of-pocket costs, including attorney's fees, associated with Plaintiff's efforts to enforce the permanent injunction. Plaintiff

- 5 -

will file an itemized list of its costs within 10 days following entry of this order. These costs will be taxed against Defendants upon final approval by the court; It is further

ORDERED that the parties shall withdraw from the Clerk the evidence and shall maintain it for purposes of appeal.

SIGNED at Houston, Texas, this 29th day of January, 2007.


MELINDA HARMON
UNITED STATES DISTRICT JUDGE

- 6 -

Exh. D - pg. 151

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE                                    §
                                         §    CASE NO. H-06-2444
MUHAMMAD "MUBI" MUBASHIR                 §

UNITED STATES' APPLICATION TO HOLD
MUHAMMAD "MUBI" MUBASHIR IN CRIMINAL CONTEMPT OF COURT

The United States of America, through Donald J. DeGabrielle, Jr., United States Attorney

for the Southern District of Texas, applies to the court, pursuant to the provisions of Rule 42(b) of

the federal Rules of Criminal Procedure, to find MUHAMMAD "MUBI" MUBASHIR in criminal

contempt of court, in violation of Title 18, United States Code, Section 401(3), for the following

reasons:

1.    On July 24, 2006 a complaint was filed in the United States District Court for the

Southern District of Texas by Virgin Mobile USA, LLC (Virgin Mobile), against World MMP, Inc.,

Muhammad Mubi Mubashir (Mubashir), Abdul Qadir Parekh, and Abdul Wahab Moosa.  The case

was assigned to United States District Judge Melinda Harmon under this case number.  The

complaint essentially alleged that the defendants were acquiring, for unauthorized, non-personal use,

significant quantities of Virgin Mobile wireless handsets sold through retail stores at prices below

their cost for the benefit of Virgin Mobile's customers.  The complaint then alleged that the

defendants would resell the handsets, which bear the Virgin Mobile logo, in bulk to customers both

in the United States and abroad.  As part of this scheme, copyrighted locking software that is

installed in each handset to limit its use to Virgin Mobile service- which enables Virgin Mobile to

offer the handsets at substantially lower prices than it would otherwise be able to offer, is hacked into

and modified, erased, or otherwise altered so that the handsets will operate on wireless services other

than Virgin Mobile's, in contravention of the terms governing the handsets purchase, and in violation of the Digital Millenium Copyright Act, 17 U.S.C. Section 1201, et. seq.

2.    On August 10, 2006 a Final Judgment and Agreed Permanent Injunction was entered in the case.  The court ordered that the defendants, including MUBASHIR, were permanently enjoined from purchasing, offering to purchase, reselling, offering to resell, shipping, and tampering with the software, or of inducing or soliciting any other person or entity to purchase, offer to purchase, resell, offer to resell, ship, and tamper with the software of any Virgin Mobile wireless handset, including without limitation the Kyocera K10 wireless handset.

3.    On January 29, 2007, after a hearing, the court held the defendants in contempt of the court's previously entered Final Judgement and Agreed Permanent Injunction.  The defendant was present with counsel at the hearing.  Specifically, the court found that the defendants, operating as Unicomm Wireless, posted online advertisements seeking to purchase Virgin Mobile handsets in violation of the court's orders.  The court further found that the defendants violated the order and injunction by offering to sell the handsets to an undercover investigator that feigned interest in the defendants' offers.

4.    On the afternoon of May 9, 2007, SA Overholt and CBP Officer Edward DeGout examined a shipment at Eagle Global Logistics (EGL) being exported by AMERICAS WIRELESS (MUBASHIR) to Yeng Fung Trading Company in Hong Kong. Examination revealed that the shipment contained forty-six (46) Virgin Mobile cellular phones, Nokia model 2115i. The phones displayed the Virgin Mobile name and logo. The shipment was placed on hold.

5.    On May 10, 2007, SA Overholt, TFO Robertson, CBP Officers DeGout and Mark Moralez picked up the shipment containing Virgin Mobile phones from EGL and transported them

2

to the CBP Air Cargo Office for inventory. Inventory of the shipment and review of the documents revealed forty-six Nokia 2115i (Virgin Mobile) cellular phones were purchased on 4-1-07 by AMERICAS WIRELESS (MUBASHIR) from Marivel YACOUB, 10503 Elderpond, San Antonio, TX 78254, telephone 210-771-2912 for $35.00 each for a total of $1,610.00. Other cellular phones were purchased on the same invoice for a grand total of $38,218.00.

6.     On June 7, 2007, MUBASHIR contacted SA Overholt in reference to the shipment detained on May 10, 2007. SA Overholt and MUBASHIR went over the invoices he provided for the shipment. SA Overholt went down the list of phone models from Invoice #279, dated April 11, 2007. SA Overholt asked MUBASHIR who the providers were for each phone model, which he provided. When it came to the NK 2115, MUBASHIR advised that the carrier was Metro PCS and Virgin Mobile. SA Overholt advised MUBASHIR that the Nokia website identifies Virgin Mobile as the exclusive carrier for the NK2115. MUBASHIR was advised that the possession or distribution of Virgin Mobile phones is in violation of the court order obtained by Virgin Mobile. MUBASHIR advised that it was a mistake that those 46 Virgin Mobile phones were in the shipment. SA Overholt asked MUBASHIR where he obtained the phones and he advised that he purchased them from Marivel YACOUB in San Antonio and that YACOUB brought the shipment to his residence. MUBASHIR requested that SA Overholt only seize the 46 Virgin Mobile phones out of the shipment of 4,000 so that he could forward the remaining phones to Hong Kong. SA Overholt advised MUBASHIR that he would be notified when the shipment is seized.

7.     On June 28, 2007, SA Overholt and ACTF Officer Robertson interviewed MUBASHIR and Muhammad FURKAN at AMERICAS WIRELESS' new location, 12763 Capricorn Drive, Suite 700, Sugar Land, Texas 77477. AMERICAS WIRELESS was not identified

3

on the front of the building. Officers drove around the building and observed the overhead door open for Suite 700. Two unidentified men were seen working in the warehouse, which contained numerous boxes. Officers entered the warehouse and requested to speak to MUBASHIR or FURKAN. One of the unidentified men entered the office area and returned with FURKAN. FURKAN escorted officers to a room he described as his and MUBASHIR'S office. FURKAN contacted MUBASHIR via cellular telephone at his residence. MUBASHIR advised that he would be at the office in approximately 15 minutes.

8.    While waiting for MUBASHIR, officers spoke with FURKAN about the initial shipment containing 1654 Virgin Mobile handsets that were seized by CBP Officer Taylor on July 20, 2006. FURKAN advised that several runners purchase the phones and sell them to him. FURKAN accessed his laptop computer to provide information on the runners, whom he has previously and currently conducts business with on a regular basis. FURKAN was asked if he had any unlocking devices that he could show officers. FURKAN replied that they do not have any, because they don't do that anymore.

9.    When MUBASHIR entered the office, FURKAN closed his laptop. MUBASHIR advised officers that FURKAN had nothing to do with unlocking the phones from the first seized shipment and that it was done at UNICOMM. MUBASHIR was asked how long it would take to unlock a phone. He stated that it would take 3 to 5 minutes to re-flash a normal phone and 15 to 20 minutes for a Blackberry. MUBASHIR advised that they never re-flashed phones at home or at the Regency Square office location. The re-flashing occurred at the Parkersburg location (UNICOMM).

10.    MUBASHIR was asked to explain how the unlocking devices work on handsets. MUBASHIR directed FURKAN to get the unlocking device. FURKAN retrieved a black device off

4

of the top of his desk that was covered by documents. The device was a cable, approximately 12 inches long and split off into a Y at one end. The label on the device identified SKYSTAR. MUBASHIR advised that they are only in the process of unlocking Cingular phones. FURKAN left the office and returned moments later with a flip phone that he identified as a Cingular phone. FURKAN turned the phone on, connected the cable to the phone and stated, "it's done". FURKAN advised that the new technology unlocks the phones automatically. Officers asked to photograph the unlocking device, but MUBASHIR replied "no".

11.     Officers discussed the recent shipment of handsets being exported to Hong Kong. MUBASHIR advised that the phones were delivered to his residence at 15706 Springfield Drive, Sugar Land, TX 77478. MUBASHIR stated that he orders specific phones and that the vendors sometimes bring others he didn't order. The latest shipment, which included the Virgin Mobile phones, was ordered from the ICE STATION/PLO WIRELESS in San Antonio. The owners were identified as Shiraz and Marivel YACOUB. YACOUB delivered the phones to MUBASHIR'S brother, Iqbal Jever MUDASIR. MUBASHIR advised that all of the phones were supposed to be new, not used. MUBASHIR advised YACOUB that he did not want the Virgin Mobile phones and stated that YACOUB dropped them off at his house and then came by the office to collect a check.

12.     While talking to officers about the current shipment, MUBASHIR accessed his computer and printed a letter that he sent to PLO Wireless, 10503 Elderpond, San Antonio, TX 78254. The letter is advising PLO that AMERICAS WIRELESS has checked the phones and batteries that they delivered to them and that the quality was not as good as expected. MUBASHIR advised that he agreed to buy brand new phones and that AMERICAS WIRELESS has stopped payment on check #2249 issued on 6/15/07 in the amount of $7282.50.

5

13.    The invoice from YACOUB to AMERICAS WIRELESS, dated 4/1/2007, lists 46 Nokia 2115 at $35.00 each, for a total of $1,610.00. The invoice from AMERICAS WIRELESS to YEN FUNG TRADING COMPANY, dated 04/11/2007, identifies these phones as 46 NK 2115 at $42.00 each, for a total of $1,932.00.

14.    MUBASHIR stated he didn't want the phones and that he wasn't going to sell them. He stated that there were only 46 phones and that he would make enough money from the others to make up for the cost. MUBASHIR advised that he intended to discard the phones, but FURKAN packed the shipment and included them without his knowledge. FURKAN advised that he had to pack the shipment in a hurry because the EGL driver was en-route to pick it up.

15.    On July 16, 2007, CBP Officer Taylor effected a seizure of 46 used Virgin Mobile cellular phones. Some of the phones were re-programmed for use on service providers other than Virgin Mobile.

16.    On July 27, 2007, MUBASHIR appeared at the ACTF office to pick up eleven (11) boxes of T-mobile and Verizon cellular phones and three (3) boxes of ear buds. These items were not seized, just detained for investigation.

17.    On September 18, 2007, a deposition was taken by Tracfone, in which MUBASHIR stated that AMERICAS WIRELESS owns one (1) desktop and two (2) laptop computers that are used to conduct daily business, such as accounting and invoicing.  Also at that deposition MUBASHIR admitted that he was responsible for sales at AMERICAS WIRELESS.

18.    The United States contends that Muhammad "Mubi" Mubashir should be held in criminal contempt of court pursuant to Title 18, United States Code, Section 401(3) because the shipment that he ordered to be sent to Yeng Fung Trading Company in Hong Kong, China on May

6

9, 2007 violated the court's order issued on August 10, 2006 by United States District Judge Melinda

Harmon in H-06-CV-2444. Specifically, the United States submits that Mubashir violated the

court's order by purchasing, selling, offering to resell, shipping and tampering with the 46 Virgin

mobile cell phones that the defendant received from PLO Wireless in San Antonio, Texas. Finally,

the United States contends that the defendant violated the provisions of Title 17, United States Code,

Section 1201, et. seq., and Title 18, United States Code, Section 2, by attempting to ship modified

or "reflashed" Virgin Mobile telephones to Hong Kong. Finally, since the conduct committed by

the defendant that violated the court's order is contemptible and violates the criminal laws of the

United States, the government contends that the defendant should be punished by the court for the

contempt consistent with the penalty provisions of 17 U.S.C. 1201, et. seq., which provides for a

range of punishment of not more than 5 years imprisonment and/or a fine not to exceed $500,000

or twice the amount of the gain/loss, followed by a term of supervised release of up to 3 years.

The United States respectfully requests that this court issue an order to MUBASHIR

requiring him to personally appear, and that the United States Marshal for the Southern District of

Texas be directed to bring MUBASHIR before this court to show cause why he should not be

punished for criminal contempt, in violation of Title 18, United States Code, Section 401(3).

Respectfully submitted,

DONALD J. DeGABRIELLE, JR.
United States Attorney


_____
Jay Hileman
Assistant United States Attorney
(713)567-9391

7

Exh. D - pg. 158

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

IN RE                                    §
                                         §    **CASE NO. H-06-2444**
**MUHAMMAD "MUBI" MUBASHIR**             §

<u>**ORDER TO APPEAR AND SHOW CAUSE**</u>

The court reviewed the United States' Application to Hold Muhammad "Mubi" Mubashir

in Criminal Contempt and finds that reasonable cause exists for believing Mubashir is guilty of

criminal contempt of court, in violation of Title 18, United States Code, Section 401(3).

It is ordered that Mubashir be brought before the court on _____

to show cause why he should not be held in criminal contempt.

Signed at Houston, Texas on _____, 2007.

_____
United States District Judge

Exh. D - pg. 159

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Christina A. Snyder and the assigned discovery Magistrate Judge is Carla Woehrle.

The case number on all documents filed with the Court should read as follows:

## CV09- 6131 CAS (CWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

======================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
AT&T Mobility LLC and AT&T Intellectual Property II, L.P.

**DEFENDANTS**
C-Tech Wholesale, Inc. and Hassan Chaalan

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Michele A. Powers
Alston & Bird LLP
333 South Hope Street, Sixteenth Floor
Los Angeles, CA 90071
(213) 576-1000; (213) 576-1100

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in this State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT: $** More than 75,000.00.

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 U.S.C. § 1114 and 28 U.S.C. § 1125.

**VII. NATURE OF SUIT** (Place an X in one box only.)

OTHER STATUTES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Act
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Info. Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise
REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

TORTS PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Fed. Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury-Med Malpractice
☐ 365 Personal Injury-Product Liability
☐ 368 Asbestos Personal Injury Product Liability
IMMIGRATION
☐ 462 Naturalization Application
☐ 463 Habeas Corpus-Alien Detainee
☐ 465 Other Immigration Actions

TORTS PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability
BANKRUPTCY
☐ 22 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157
CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 445 American with Disabilities – Employment
☐ 446 American with Disabilities – Other
☐ 440 Other Civil Rights

PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence Habeas Corpus
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus/Other
☐ 550 Civil Rights
☐ 555 Prison Condition
FORFEITURE / PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety /Health
☐ 690 Other

LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act
PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☒ 840 Trademark
SOCIAL SECURITY
☐ 61 HIA(1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW 405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))
FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS-Third Party 26 USC 7609

FOR OFFICE USE ONLY:  Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)
LEGAL02/31469779v1

CIVIL COVER SHEET

Page 1 of 2

CV09-06131

American LegalNet, Inc
www.FormsWorkflow.com

CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☒ Yes

If yes, list case number(s): Please see attachment.

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)
☐ A. Arise from the same or closely related transactions, happenings, or events; or
☒ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☒ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☒ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Atlanta, Georgia - all Plaintiffs |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County - all Defendants |  |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County |  |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____ Date 8/21/09

Michele A. Powers (SBN 174779)

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com

AT&T MOBILITY LLC, ET AL., V. C-TECH WHOLESALE, INC.

Attachment To VIII(B).  Related Cases

- AT&T Mobility LLC and AT&T Intellectual Property II, L.P. v. Delta Games, Inc.; Mohamad Farhat; Hassan Matar; and DOES 1-10, Case No: CV 09-02581 SGL (SSx) now pending before the Honorable Stephen G. Larson;

- AT&T Mobility LLC and AT&T Intellectual Property II, L.P. v. S&D Cellular, Inc., d/b/a SND Cellular Inc.; Dilip Daswani, et al., CV-09-0806 PA (JTLx) now pending before the Honorable Stephen G. Larson;

- T-Mobile USA, Inc. v. California Products International, Inc. et. al., Case No. CV-08-3502 SGL (SSx), now pending before the Honorable Stephen G. Larson;

- T-Mobile USA, Inc. v. Delta Games, et al., Case No. CV08-01110 SGL (SSx), now pending before the Honorable Stephen G. Larson;

- T-Mobile USA, Inc v. Platform Enterprises, et al., Case No. SACV08-0444-SGL  (JCRx),  now  pending  before  the Honorable Stephen G. Larson.

- TracFone Wireless v. California Products International, Inc., et al., Case No. 08-cv-01877 SGL (SSx), now pending before the Honorable Stephen G. Larson;

- TracFone Wireless v. C-Tech Wholesale, Inc., et al., Case No. 8:08-cv-00964 SGL (SSx), now pending before the Honorable Stephen G. Larson;

- TracFone Wireless v. Delta Games, Inc., et al., Case No. 08-cv-495 SGL (SSx), now pending before the Honorable Stephen G. Larson;

- TracFone Wireless v. Platform Enterprises, et al., Case No. 8:07-cv-01460 SGL (MGLx), now pending before the Honorable Stephen G. Larson; and

- AT&T Mobility LLC and AT&T Intellectual Property II, L.P. v. California Products International, Inc.; Mohamad Khalil; and Does 1-10, Case No. Case No. 09-CV-03333 PA (FMOx), now pending before the Honorable Stephen G. Larson.